| | |
|---|---|
| Hon. Thomas P. Griesa, U.S.D.J.<br>Daniel Patrick Moynihan<br>United States Courthouse<br>Courtroom 26B<br>500 Pearl St.<br>New York, NY 10007-1312 | HICHAM AZKOUR<br>93 Pitt Street,<br>Apt. 3B<br>New York, NY 10002<br><br>Email: hicham.azkour@gmail.com |

April 25, 2014

**Via ECF**

**Re:** *Azkour v. BRC, et al.*, <u>13-CV-5878(TPG)</u>

Dear Judge Griesa:

    HICHAM AZKOUR, pro se plaintiff ("Plaintiff") in the above-referenced matter, respectfully requests that this Court rule on his request dated December 17, 2013. *See* <u>Docket Entries Nos. 16 and 17.</u>

    As this Court has been made aware on April 21, 2014, *see* <u>Docket Entry No. 23</u>, Rule 35(a) of the Federal Rule of Civil Procedure 35(a) provides that, for good cause shown, a district court "may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control." These requirements for a Rule 35 examination are met where the party seeking the examination makes an affirmative showing that each condition as to which the examination is sought is really and genuinely in

1

controversy, and that good cause exists for ordering the examination. *Schlagenhauf v. Holder,* 379 U.S. 104, 108 (1964).

Plaintifff already made an affirmative showing in his prior pleadings that his mental health is in controversy. *See* Docket Entries Nos. 16 and 17. He also submitted to this Court a psychiatric evaluation by defendant Angela Kedzior, where she assessed that he is an individual with *severe psychotic mental impairments*. Moreover, Plaintiff has contended that his alleged mental impairments have also been maliciously caused by the defendants' negligent infliction of emotional distress. By reviewing defendant Kedzior's evaluation, this Court may admit that Plaintiff's impairments constitute more than a "garden variety" emotional distress. His alleged impairments, according to defendant Kedzior's evaluation, constitute a serious, disabling mental illness and her incorrect diagnosis is already causing Plaintiff additional damages, which we will not discuss here. Generally, courts have held that for a plaintiff's mental status to be in controversy, he must allege more than "garden variety" emotional distress. *Turner v. Imperial Stores,* 161 F.R.D. 89, 97 (S.D. Cal. 1995). "Courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) the plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) the plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Id.* at 95.

2

Here, Plaintiff alleges in his Complaint that the defendants negligently inflicted upon him emotional distress. *See* Complaint at ¶¶ 240-256. Therefore, this Court should Order a Rule 35 psychiatric examination because it is clear that the present matter cannot be, by far, distinguishable on the mental health issue from both *Hodges v. Keane,* 145 F.R.D. 332 (S.D.N.Y. 1993), which involved a diagnosed paranoid schizophrenic whose medical condition may have affected his trial testimony, and *Duncan v. Upjohn,* 155 F.R.D. 23 (D. Conn. 1994), a negligence action wherein the plaintiff claimed the defendant's psychiatric drug caused such severe mental injury that the plaintiff needed to be institutionalized. There is nothing before this Court suggesting that Plaintiff, in the instant matter, has ever been institutionalized. Yet, the psychiatric evaluation submitted to this Court indicates that Plaintiff was diagnosed with *severe mental disorders accompanied with psychotic features.* The cases cited by Plaintiff, whether in the present letter or in his memorandum of law at Docket Entry No. 17, should lead the Court to the conclusion that Plaintiff should be compelled to undergo an *independent* psychiatric examination.

Not only does Plaintiff need medical examination, but he also needs legal representation. Considering (1) the fact that Plaintiff is mentally ill, (2) the fact that Plaintiff has brought a claim of housing discrimination and, as such, 42 U.S.C. § 3613(b)(1) explicitly prescribes legal representation, (3) the fact that Plaintiff is entitled to a jury trial on all disputed issues related to any legal relief herein, (3) the fact that he would not be able to determine himself if he would be able to further prosecute this matter as a pro se litigant, and (4) the fact that he does not possess the intellectual and mental capacity to stand trial, this Court is prayed to appoint a pro bono counsel, with an undivided loyalty, to assume the zealous representation of Plaintiff in the instant matter.

As the Court is well aware, mentally ill individuals are entitled to legal representation pursuant to Article 47 of the New York Mental Hygiene Law ("NYMHYL"). At all relevant times, Plaintiff lived in a facility as defined by NYMHYL § 1.03-6:

> "Facility" means any place in which services for the mentally disabled are provided and includes but is not limited to a psychiatric center, developmental center, institute, clinic, ward, institution, or building, except that in the case of a hospital as defined in article twenty-eight of the public health law it shall mean only a ward, wing, unit, or part thereof which is operated for the purpose of providing services for the mentally disabled. It shall not include a place where the services rendered consist solely of non-residential services for the mentally disabled which are exempt from the requirement for an operating certificate under article sixteen, thirty-one or thirty-two of this chapter, nor shall it include domestic care and comfort to a person in the home.

The facility where Plaintiff lived is managed and operated by defendant Bowery Residents' Committee, Inc. Moreover, the opinion of the U.S. Court of Appeals for the Second Circuit in *Tucker v. BRC*, No. 99-9364, 95 Fed. Appx. 386; 2004 U.S. App. LEXIS 7964 (April 22, 2004), Summary Order attached hereto, recommends the appointment of pro bono counsel in controversies or appeals where the plaintiff is mentally ill, engages in inappropriate behavior, and files frivolous, inconsistent pleadings. This Court has determined on numerous occasions that mentally ill people submissions are frivolous and dismissed them without due consideration and review. The Second Circuit "certainly understand[s] the frustration of [this Court], with its busy docket, in a case such as this."

Now, it is clear that the U.S. Court of Appeals issued a summary order or a mandate, *see* Summary Order attached hereto, requiring that this Court appoint pro bono counsel for the mentally ill, rather than summarily dismiss their complaints.

4

In the instant matter, if this Court keeps on ignoring Plaintiff's legitimate requests and motions, a request for the issuance of a writ of mandamus is the only appropriate remedy when the district court ignores the Second Circuit's mandates. *See Blasband v. Rales,* 979 F.2d 324, 328-29 (3rd Cir.1992). It would not be in the interests of any party to have the wheels of justice automatically come to a halt while this Court's decision in ignoring Plaintiff's pleadings is not warranted by any laws, regulations, or precedents. Parties in civil cases, especially in the Southern District of New York, are already facing too many delays because of the increasing volume and complexity of the cases. *See* The Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.* (mandating that federal courts create civil delay reduction plans to help alleviate the backlog). By a provision of the Civil Justice Reform Act of 1990, namely 28 U.S.C. § 476(a)[1], the Director of the Administrative Office of the United States Courts must report to the public, for each judicial officer and by case name, those motions that have been pending for *more than six months* and the number and names of cases that *have not been*

---

[1] 28 U.S.C. § 476(a) states:

> (a) The Director of the Administrative Office of the United States Courts shall prepare a semiannual report, available to the public, that discloses for each judicial officer—
>
> (1) the number of motions that have been pending for more than six months and the name of each case in which such motion has been pending;
> (2) the number of bench trials that have been submitted for more than six months and the name of each case in which such trials are under submission; and
> (3) (3) the number and names of cases that have not been terminated within three years after filing.
>
> (b) To ensure uniformity of reporting, the standards for categorization or characterization of judicial actions to be prescribed in accordance with section 481 of this title shall apply to the semiannual report prepared under subsection (a).

5

*terminated within three years after filing*. In this action, this Court's Order, Docket Entry No. 8, has been ignored for almost 6 months and Plaintiff's motion for the appointment of counsel and request for medical examination has been pending since December 17, 2013.

Although Plaintiff, on the February 26, 2014 conference, has heretofore fairly presented some of his arguments to this Court, whether regarding the role of defendant BRC *as state actor* pursuant to Section 43 of the New York Social Services Law or the discrimination violations as proscribed by HIPAA[2], *see Nichols v. Prudential Ins. Co. of Am.,* 406 F.3d 98, 106 (2d Cir.2005), this Court has not used anything to review Plaintiff's arguments and requests but inaction – absolute inaction. Inaction is not a valid exercise of discretion. *Id.* at 109.

Finally, Plaintiff believes that the Court's decision to grant leave for the defendants to dismiss Plaintiff's Complaint without affording him an opportunity of amendment speaks of sinister intentions. Dismissal of a pro se complaint without giving the plaintiff a chance to replead is inappropriate. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.") (internal quotation marks omitted). In addition, the Second Circuit has often counseled against dismissing an action without giving the plaintiff notice and an opportunity to be heard. *See, e.g.*, *Giano v. Goord*, 250 F.3d 146, 151 (2d Cir. 2001); *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir. 1999).

---

[2] This Court is reminded that defendant BRC has been investigated by the U.S. Department of Health and Human Services ("HHS") and found in violation of HIPAA. We will provide the Court with the HHS investigation report when completed.

**WHEREFORE**, for the reasons set forth above, Plaintiff respectfully requests that the Court (1) Order the defendants to comply with the Court Order at Docket Entry No. 8; (2) Grant Plaintiff leave to amend his Complaint and add parties; (3) Order Plaintiff to be subjected to a Rule 35 medical examination to determine the status of his mental health; and (4) appoint pro bono counsel to represent Plaintiff.

Respectfully submitted,

HICHAM AZKOUR, pro se

