# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------X
HICHAM AZKOUR,                                        :
                                                      :    Civil Action No.:13 CV 5878
                        Plaintiff,                    :
                                                      :
                                                      :
        -against-                                     :
                                                      :
                                                      :
BOWERY RESIDENTS' COMMITTEE, INC.;                    :
LAWRENCE a/k/a MUZZY ROSENBLATT;                     :
JANET FORTE; KEVIN MARTIN; TEREEN                     :
LLEWELYN-MILLER, ANGELA KEDZIOR;                      :
JOHN DOE 1-5; JANE DOE 1-5,                           :
                                                      :
                        Defendants.                   :
-----------------------------------------------------------------X
```

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

RUBIN, FIORELLA & FRIEDMAN LLP
630 Third Avenue
New York, New York 10017
(212) 953-2381
shalber@rubinfiorella.com
*Attorneys for Defendant*
BOWERY RESIDENTS' COMMITTEE,
INC., LAWRENCE a/k/a MUZZY
ROSENBLATT, JANET FORTE; KEVIN
MARTIN, TEREEN LLEWELYN-MILLER
and ANGELA KEDZIOR

Of counsel:
Shelley R. Halber, Esq.
Mandie R. Forman, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

LEGAL STANDARD APPLICABLE TO DEFENDANTS' MOTION

    1.    Dismissal Pursuant to Rule 12 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    Conversion to a Rule 56 Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    3.    Dismissal pursuant to Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I

    DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS
    DISMISSING PLAINTIFF'S CONSTITUTIONAL CLAIMS WHERE THEY
    CONTAIN INSUFFICIENT FACTS TO SUPPORT A CLAIM PLAUSIBLE
    ON ITS FACE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Plaintiff's 42 U.s.c. § 1981 Claim Fails as Plaintiff Is Not a Member of a Racial
        Minority Nor Has He Alleged Any Facts Which  Demonstrate Defendants'
        Intention to Discriminate Against Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.    Plaintiff is not a member of a racial minority . . . . . . . . . . . . . . . . . . 10

        2.    Plaintiff has not alleged facts to support an inference of intentional
            discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    Plaintiff's 42 U.s.c. § 1983 Claim Fails as Defendants Are Not State Actors
        and There Can Be No Finding That Defendants Were Acting under Color
        of State Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.    BRC's receipt of funding does not make it a State Actor . . . . . . . . . . . 15

        2.    BRC does not act jointly with any State Agency . . . . . . . . . . . . . . . . . . 17

        3.    BRC does not perform a Public Function . . . . . . . . . . . . . . . . . . . . . . 23

        4.    BRC does not act under the power of the State . . . . . . . . . . . . . . . . . 24

C.      Plaintiff's 42 U.s.c. § 1985 Claim Fails as Plaintiff Has Not Pled
        Any Facts to Support the Existence of a Conspiracy, Acts in
        Furtherance of That Conspiracy, or That Such a Conspiracy Was
        Motivated by Invidious Discriminatory Amicus .......................... 25

D.      Plaintiff's 42 U.s.c. § 1986 Claim Fails as Plaintiff Has Not Pled
        the Requisite Facts to Support it ..................................... 29

E.      Plaintiff's 42 U.s.c. 2000d Claim Fails as Plaintiff Has Pled the Requisite
        Facts to Support it .................................................. 30

F.      Plaintiff's 42 U.s.c. § 3604 Claims Fail since Plaintiff Is Not a Member
        of a Racial Minority Nor Has He Alleged Any Facts Which  Demonstrate
        Defendants' Took Any Adverse Action with Respect to His Housing with
        an Intention to Discriminate ......................................... 34

        1.      Plaintiff is not a member of a protected class .................... 35

        2.      Defendants do not control Plaintiff's supportive housing
                determination ............................................... 35

        3.      Plaintiff does not allege disparate treatment or disparate impact ...... 36

G.      Plaintiff's 42 U.s.c. § 3617 Claims Fail since Plaintiff Has Not Alleged
        Engagement in a Protected Activity, That Defendants Were Aware of That
        Activity, That Defendants Took Adverse Action Against Plaintiff, and That
        There Is a Casual Connection Between the Activity and the Adverse Action ... 38

POINT II

        WHERE ALL OF PLAINTIFF'S CONSTITUTIONAL LAW CLAIMS FAIL,
        THIS COURT MAY DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION
        OVER HIS REMAINING STATE LAW CLAIMS ........................... 39

        1.      Plaintiff has no claim for Negligent Infliction of Emotional Distress ......... 40

        2.      Plaintiff has no claim for Gross Negligence ........................... 41

CONCLUSION ......................................................... 42

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of the motion by BOWERY RESIDENTS' COMMITTEE, INC. (hereinafter "BRC"), LAWRENCE a/k/a MUZZY ROSENBLATT, JANET FORTE, KEVIN MARTIN, TEREEN LLEWELYN-MILLER and ANGELA KEDZIOR (hereinafter "BRC Defendants"), for an Order pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure for judgment upon the pleadings or, in the alternative, granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to BRC and BRC Defendants (collectively "Defendants"), dismissing Plaintiff, Hicham Azkour's (hereinafter "Plaintiff") complaint.  Briefly, and as will be discussed at length below, Defendants should be granted judgment dismissing the complaint where Plaintiff has failed to allege the requisite factual support for his claims, and instead does nothing more than raise speculation that Defendants somehow discriminated against him on the basis of his race, ethnicity, religion or national origin. A review of Plaintiff's allegations reveals conclusory, speculative and vague assertions that Defendants conspired to discriminate against him or intentionally discriminated against him. The bulk of Plaintiff's claim revolve around his claimed failure to receive public assistance benefits, proper housing and his personal records. As Defendants attest, BRC does not control Plaintiff's receipt of these items; they are controlled by the DHS[1] or the HRA[2], or a combination of both agencies. In that respect, Plaintiff has no claim against Defendants on these issues, and the corresponding claims against Defendants should be dismissed.

In addition, to the extent that Plaintiff claims Defendants failed to protect his person and his

---

[1] City of New York Department of Homeless Services.

[2] City of New York Human Resources Administration.

property from theft by other BRC clients due to Defendants' racial motivations, not only is there absolutely no factual support for such a notion, Defendants have no duty to act as Plaintiff's personal protector and have no police power to do so. Plaintiff was informed at intake into BRC's Jack Ryan Residence that he is responsible for his own property and his person. It is Defendants position that these claims are frivolous and malicious and were brought for no other reason than to harass Defendants. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, in its entirety.

## STATEMENT OF FACTS

The Court is respectfully referred to Defendants' Local Rule 56.1 Statement of Uncontested Material Facts submitted on behalf of the within motion.

## ARGUMENT

## <u>LEGAL STANDARD APPLICABLE TO DEFENDANTS' MOTION</u>

1. <u>Dismissal Pursuant to Rule 12 (c)</u>

Rule 12(c) provides that after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed.R.Civ.P. 12 (c). On a 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (*quoting Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153

(2d Cir. 2002)).

To survive a motion for judgment on the pleadings, a plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed.Rules Civ.Proc.Rule 12(c). Under the two-pronged approach to evaluating the sufficiency of a complaint on a motion for judgment on the pleadings, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; at the second step, a court should determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal,* 129 S.Ct. at 1949. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.* at 1949–50. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. *Id.* at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* at 1949. Thus, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008).

Under 28 U.S.C. § 1915(e)(2)(B), the *in forma pauperis* statute, the Court is required to dismiss a complaint if the Court determines that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

4

2007). "An action is frivolous if it lacks an arguable basis in law or fact—i.e., if it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [that] are clearly baseless.' " *Boyle v. Town of Hammond*, 375 F. App'x 85, 86 (2d Cir. 2010) (*quoting Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

###   2.   **Conversion to a Rule 56 Motion**

When material outside the complaint is presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion...." Fed.R.Civ.P. 12(d). For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)*(quoting Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)); Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext*, 62 F.3d at 72. Accordingly, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12 [(b)(6)] motion into one under Rule 56 is largely dissipated."*Cortec*, 949 F.2d at 4; *see also Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of

which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

### 3.   <u>Dismissal pursuant to Rule 56</u>

Federal Rule of Civil Procedure 56 (c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.' " *United States v. All Right, Title & Interest in Real Property, etc.,* 901 F.2d 288, 290 (2d Cir. 1990) (quoting *Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir. 1988), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the case identifies the material facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir. 1991). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S.

at 323, 106 S.Ct. at 2552. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once a motion for summary judgment is properly made, the burden shifts to the nonmoving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (*quoting* Fed.R.Civ.P. 56(e)). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & H. Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (*quoting Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991).

## POINT I

### DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS DISMISSING PLAINTIFF'S CONSTITUTIONAL CLAIMS WHERE THEY CONTAIN INSUFFICIENT FACTS TO SUPPORT A CLAIM PLAUSIBLE ON ITS FACE

Plaintiff alleges constitutional violations under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985 (3), 42 U.S.C. § 1986, 42 U.S.C. § 2000d, 42 U.S.C. § 3604, 42 U.S.C. § 3617. Plaintiff also alleges New York state law claims sounding in Gross Negligence and Negligent Infliction of Emotional Distress. Defendants will address the grounds for dismissal of Plaintiff's constitutional claims and then turn to Plaintiff's New York state law claims.

As an initial matter, Defendants respectively requests that the BRC Defendants, MUZZY ROSENBLATT, JANET FORTE; KEVIN MARTIN, TEREEN LLEWELYN-MILLER and

ANGELA KEDZIOR be dismissed in their individual capacities. Plaintiff's allegations as to the individual BRC Defendants are not sufficient to state a claim for relief. (Complaint, ¶¶ 74, 78, 103, 105). Any actions that these individuals took with respect to Plaintiff was in their corporate, not personal, capacity. (Complaint, ¶¶ 74, 78, 103, 105). The complaint fails to allege that the individual defendants assumed any personal obligations concerning Plaintiff's claims. Moreover, it is abundantly clear that the BRC defendants cannot be held personally liable for the debts, liabilities or obligations of BRC. *See T.D. Bank, N.A. etc. v. Halcyon Jets, Inc.,* 99 A.D.3d 431, 951 N.Y.S.2d 724 (1st Dep't 2012). Moreover, it is fundamental that a corporate officer cannot be held liable on a contract between the corporation and a third-party unless the corporate officer assumes a personal obligation in the contract itself. *Id.* Accordingly, Defendants' motion to dismiss the BRC Defendants as individual defendants should be granted.

## A. PLAINTIFF'S 42 U.S.C. § 1981 CLAIM FAILS AS PLAINTIFF IS NOT A MEMBER OF A RACIAL MINORITY NOR HAS HE ALLEGED ANY FACTS WHICH DEMONSTRATE DEFENDANTS' INTENTION TO DISCRIMINATE AGAINST HIM

42 U.S.C. § 1981 provides in relevant part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C.A. § 1981 (1994). To state a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant, and (3) the discrimination concerned one or more of the activities enumerated in the statute ...." *Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085 (2nd Cir. 1993). "Essential to an action under section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially

8

motivated." *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988). In order to survive a motion to dismiss a section 1981 claim, a "plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). It is not enough for a plaintiff to recite mere conclusory accusations. *Id.*; *Albert,* 851 F.2d at 572.

In support of Plaintiff's claim under 42 U.S.C. § 1981, Plaintiff alleges that Defendants intentionally discriminated against him because he is an Arab (Complaint, ¶ 112), by: 1) denying him the benefits and privileges under his contract with BRC (Complaint, ¶ 112)[3]; 2) by failing to refer him to housing facilities (Complaint, ¶ 113); 3) by denying him access to his medical and other records (Complaint, ¶ 115); 4) by denying him access to the NYPD to report the theft of his stolen property and participate in the police investigation (Complaint, ¶ 116, 117)[4]; 5) by denying him access to other agencies to reports violations that affect his well being as a resident, (Complaint, ¶ 118); 6) by denying the security of his person and belongings (Complaint, ¶ 120) 7) by failing to refer him to permanent housing for mentally balanced individuals (Complaint, ¶ 121), and 8) by fraudulently diagnosing plaintiff for its own financial gain (Complaint, ¶ 122).

Plaintiff also complains that Defendants unlawfully retaliated against him when he

---

[3] Plaintiff does not define what he means by 'contract.' Therefore, Defendants are assuming he means the documents he signed which are required by the DHS as a condition for his participation in the program constituting: 1) his DHS Rules and Responsibilities (Halber Decl, Exhibit B, Forte Aff, Exhibit 3 (hereinafter "Forte Aff")); 2) his Jack Ryan Residence Intake Agreement (Forte Aff, Exhibit 5); 3) his Client Acknowledgment of Responsibility Form (Forte Aff, Exhibit 6); 4) Agreement to Pursue Supportive Housing (Forte Aff, Exhibit 7), and 5) his HRA waivers (Forte Aff, Exhibit 9).

[4] This allegation likely refers to the alleged theft of Plaintiff's laptop computer (*See* Complaint, ¶ 66).

complained to DHS and OASAS[5] about racial bias by: 9) allowing other BRC clients to break into his locker (Complaint, ¶ 131); 10) by removing him prematurely to another residence so he could not participate in the police investigation of his stolen laptop (Complaint, ¶ 132); 11) by moving him prior to his HUD scheduled date so he was not able to secure prior to his move-out date, as all residents would, his DSS furniture allowance (Complaint, ¶ 134), which caused him to sleep "on a bare mattress without any sheets, pillow or blanket."(Complaint, ¶ 135).

### 1.   Plaintiff is not a member of a racial minority

Plaintiffs allegations are essentially that BRC has discriminated against him and treated him differently than other White clients because he is an Arab. As an initial matter, Plaintiff is misinformed about his racial classification. While Plaintiff claims that his race is Arab (Complaint ¶¶ 109-122), he claims his color is "White." (Complaint, ¶ 174). Specifically, plaintiff refers to himself as a "White Muslim Arab Moroccan."(Complaint, ¶ 212). This Court may take Judicial Notice of race classifications located on the website of the United States Census Bureau.[6] The Census defines "White" as "[a] person having origins in any of the original peoples of Europe, the Middle East, or North Africa." In light of this definition, Plaintiff's race, as a Moroccan from North Africa, is "White." This statute, which is for the protection of persons other than "white citizens" does not apply. 42 U.S.C.A. § 1981; *see Rodriguez v. City of New York*, 13-cv-6552, 2014 WL 1399415, (E.D.N.Y. 2014) (holding that an African-American female NYPD officer, arguing disparate treatment by the Police Department in promoting only White females, was a member of

---

[5] New York State Office of Alcoholism and Substance Abuse Services.

[6] http://www.census.gov/population/race/about/.

a protected class for purposes of a 42 U.S.C. § 1981 claim). Plaintiff is White, and therefore he is

not a member of a protected class. His claim fails on this ground alone.

### 2.    Plaintiff has not alleged facts to support an inference of intentional discrimination

The only allegation here which arguably shows an attempt to claim that Defendants treated

Plaintiff differently than other clients (whose races have not been specified) concerns his claim that

he was prematurely moved from the Jack Ryan Residence to Los Vecinos "so he was not able to

secure prior to his move-out date, as all residents would, his DSS furniture allowance."(Complaint,

¶ 134). However, even this claim, unsupported by the requisite facts, does not meet the standard.

In order [t]o support a claim of selective enforcement [a plaintiff] must allege purposeful and

systematic discrimination by specifying instances in which [he was] singled out for unlawful

oppression in contrast to others similarly situated." *Albert v. Carovano*, 851 F.2d at 573; *see also*

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989) ("[Plaintiff's] obligation

was to identify and relate specific instances where persons situated similarly 'in all aspects' were

treated differently ..."). In this case, plaintiff has failed to indicate any other instance where another

individual, similarly situated to himself "in all aspects" received different treatment by Defendants.

To that end, Plaintiff does not describe one instance where another client received his furniture

allowance before moving to his DHS designated supportive housing facility. Moreover, this

allowance is not within Defendant's control, it is handled by the HRA. (*See* Halber Decl, Exhibit C,

Shilson Aff, ¶ 4).[7] Plaintiff was informed that tenants apply for the HRA allowance when they move

in to Los Vecinos. (*See* Shilson Aff, ¶ 4). Therefore, Defendants could not have treated Plaintiff

---

[7] Ms. Shilson's Affidavit is hereinafter referred to as (Shilson Aff, ___).

differently with respect an allowance that they did not control.

Plaintiff's claim also fails on the separate ground that in order to state a claim under § 1981, there must be evidence that "defendant was motivated by racial animus." *See Bentley v. Mobil Gas Station,* 12-CV-6586, 2014 WL 1478697, *2 (W.D.N.Y. April 15, 2014). In *Bently, supra,* Plaintiff claimed he was wrongfully banned from a gas station because he was African American. *Id.* at *1. The Court found that there was no evidence of racial animus against plaintiff, but rather defendant had an issue with the way that the plaintiff had comported himself while at the gas station. *Id.* at *2. There was no mention of plaintiff's race during his discussions with the store employees, nor was there any allegation that plaintiff's race was discussed over the course of his 15 years as a patron of the store. *Id.* Further, there was no claim that plaintiff had actually been banned from the store as he returned two days after allegedly being informed he was banned. *Id.* Lastly, plaintiff made no claim that any other African American had been subjected to similar action. *Id.*

Similarly, in this case, there are no facts to support Plaintiff's claim that Defendants, motivated by the fact that Plaintiff is an Arab[8], failed to provide him with the benefits of his contract with Defendants, or failed to submit his housing application properly, or failed to provide him access to his medical records, or failed to cooperate with the police when his laptop was allegedly stolen, or fraudulently diagnosed him for financial gain, or retaliated against him when he complained to state agencies, or moved him out prematurely to another residence so he would not have access to public benefits through the HRA. Rather the evidence points to the fact that Defendants provided

---

[8] Or alternatively, although not alleged by Plaintiff- motivated by the fact that Plaintiff is White.

him with all the benefits he was entitled to while he resided at the Jack Ryan Residence. (Forte Aff, ¶ 9 and 10). Defendants submitted his housing application to the DHS for its determination once all of his documentation was obtained. (Forte Aff, ¶ 9). Defendants cooperated with police and investigated Plaintiff's concerns (Halber Decl, Exhibit E, Thomas Aff, ¶ 4-6 and Halber Decl, Exhibit D, Kelley Aff, ¶ 4).[9] With regard to Plaintiff's record request, Defendants made his entire chart available through the DHS, which contained all records of whatever nature, within two weeks of his request. (Forte Aff, ¶ 15). Defendants made no assessment of his mental condition for financial gain. (Forte Aff, ¶ 5, 9 n.5). Nor did Defendants retaliate against him by moving him before he could obtain a housing allowance. (Shilson Aff, ¶ 3).

Plaintiff has not pointed to one instance where he can show that any of these alleged actions took place because Defendants were racially motivated by the fact that he is an Arab (or White). Without more, accusations of race-based discrimination and unequal treatment will not survive a motion to dismiss. *See Odom v. Columbia University,* 906 F.Supp. 188, 105 Ed. Law Rep. 491(S.D.N.Y. 1995) (dismissing Plaintiff's § 1981 claim against the University where there was no factual evidence for her claims that she was discriminated against because she is African-American). Based on the foregoing, Plaintiff's claim pursuant to 42 U.S.C. § 1981 should be dismissed.

**B.   PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FAILS AS DEFENDANTS ARE NOT STATE ACTORS AND THERE CAN BE NO FINDING THAT DEFENDANTS WERE ACTING UNDER COLOR OF STATE LAW.**

42 U.S.C. § 1983 provides in relevant part : "Every person who, under color of any statute,

---

[9] Mr. Thomas's and Mr. Kelley's Affidavits are hereinafter referred to as (Thomas Aff, ¶ __) and (Kelley Aff, ¶ ____), respectively.

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

In order to state a claim under Section 1983, a plaintiff must demonstrate that the defendant who deprived him of a constitutional right was either a state actor, or a private individual or entity who acted "under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). This is referred to as the "state action" requirement. *Ciambriello*, 292 F.3d at 323. Here, BRC is a private not-for-profit entity. (Forte Aff, ¶ 5). Thus, it is clearly is not a state actor, nor does Plaintiff allege that it is. (Complaint ¶ 123). Therefore, Defendants could only be held liable for civil rights violations if they are found to have acted "under color of state law"—meaning, there is evidence that they conspired, or engaged in joint activity, with state actors. *See Briscoe v. LaHue*, 460 U.S. 325, 330 n. 7, 103 S.Ct. 1108, 75 L.Ed.2d 96 (need year); *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 271 (2d Cir.1999); *Barrett v. United Hospital,* 376 F. Supp. 791, 797 (S.D.N.Y. 1974), aff'd, 506 F.2d 1395 (2d Cir. 1974). (In order to subject private institutions to 1983's prohibitions, it must be shown that the State is significantly involved with the institution, that the State is involved with the activity that caused the injury and that the State's involvement aids, encourages or connotes approval of the complained-of conduct).

14

1.     **BRC's receipt of funding does not make it a State Actor**

Generally, receipt of money from the state is not, without much more, enough to make the recipient an agency or instrumentality of the government for purposes of Section 1983 liability. 14A C.J.S. Civil Rights § 371, *citing Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000). The context in which this rule is stated is that where particular activity is engaged in as individual action or as private conduct, it does not become state action or action taken under color of law merely because the funding of the activity is to some extent by the state. *Id.* To find state action from the public funding of a private institution, the funding must be significant, there must be a nexus with the complained-of conduct and the funding must further the unconstitutional activity. *Id., citing Barrett v. United Hospital,* 376 F. Supp. 791 (S.D.N.Y. 1974), *aff'd,* 506 F.2d 1395 (2d Cir. 1974).

Here, despite that fact that BRC does receive funding from the DHS, among other agencies, that funding is not specifically tailored to any of the alleged unconstitutional activities complained of by Plaintiff. Moreover, Plaintiff does not allege, and cannot prove that Defendants used its funding specifically to act in conspiracy with, or engage in any joint activity with the DHS to further the denial of plaintiff's constitutional rights. This is because BRC is not a decision-making body and has no police power to enforce the rules and regulations of the DHS (or the HRA). (Forte Aff, ¶ 13, 5). BRC merely provides the clients, which have been selected by the DHS, with the rights, rules and obligations of the DHS and the HRA, but it is up to the clients to comply for their own self-betterment. (Forte Aff, ¶ 6). Therefore, to the extent that Plaintiff complains of any action or lack of action with regard to his housing determinations or his receipt of benefits; these issues not do not reflect any decisions by Defendants. (Forte Aff, ¶ 7). However, for the purposes of dispelling any notion that Defendants were acting under color of state law with regard to these allegations, they will

15

dispel each claim in turn.

In support of Plaintiff's claim under 42 U.S.C. § 1983, Plaintiff alleges that Defendants: 1) acted with disregard to his mental health (Complaint, ¶ 149); 2) subjected Plaintiff to an environment where he became a victim of crimes perpetuated by other BRC clients (Complaint, ¶ 151); 3) did nothing to protect Plaintiff from these alleged criminal acts (Complaint, ¶ 152-153), and 4) and watched as other BRC clients were violent to Plaintiff (Complaint, ¶ 154). Consistent with his allegations under 42 U.S.C. § 1981, Plaintiff also alleges that Defendants are liable under this statute for the failure to provide his medical records (Complaint, ¶ 155), and for the theft of his laptop by other BRC clients. (Complaint, ¶ 158).

As mentioned above, BRC is not a state entity, therefore, in order for Defendants to be held liable for a violation of ¶ 1983, there must be some evidence that they "conspired, or engaged in joint activity, with state actors." *Briscoe v. LaHue*, 460 U.S. at 330 n. 7. There are three tests for determining that despite the fact that the accused actor is not a state entity, state action may nonetheless exist; they are 1) the "joint action" test; 2) the "public function" test or 3) the "state compulsion" test. *See Sybalski v. Independent Group Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (articulating three tests formulated by the Supreme Court for determining the existence of state action). "It is not enough, however, for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon the plaintiff; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action." Id. at 257-58, (*quoting United States v. Int'l Bd. of Teamsters*, 941 F.2d 1292, 1296 (2d Cir.1991)) (emphasis in original).

### 2.      BRC does not act jointly with any State Agency

Under the joint action test, the actions of a private entity will be considered attributable to the state where "the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Sybalski*, 546 F.3d at 257 (*quoting Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2000)). Plaintiff will not be able to meet this standard with regard to his claims. The reason is because Plaintiff's claims either exclusively involve State agencies that did not involve BRC, or involve BRC (because the alleged conduct occurred on BRC premises), but then did not involve any state agency. There are no claims which involve a joint activity by both BRC and a state agency.

With the understanding that Defendants must interpret Plaintiff's claims to raise the strongest arguments they suggest[10], BRC has aired on the side of caution and included all of Plaintiff's factual allegations within this analysis to demonstrate that there is no potential claim in this case which could be deemed state action. For the purposes of this analysis, plaintiff's allegations will be divided up into two categories: 1) allegations that do not involve Defendants, and should be dismissed outright as brought against an improper party, and 2) actions that involve Defendants to the extent they occurred at BRC's premises, but have no factual support and no basis at law.

With regard to the allegations that do not involve Defendants and should be dismissed outright,[11] plaintiff claims that Defendants: 1)  have violated his contract to provide him with

---

[10] *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471 (2d Cir. 2006).

[11] Defendants recognize that Plaintiff re-asserts many of the same allegations under several different causes of action. For the sake of a complete analysis, Defendants will enumerate the claims again.

appropriate housing (Complaint ¶ 7, 113, 121, 186, 210, 211, 213-221; 224-228); 2) have denied his receipt of benefits on the grounds of his race, color and national origin (Complaint ¶ 177, 201, 202); 3 ) have subjected him to inhumane treatment;[12] and 4) have denied him access to his "Chart" containing his medical records pursuant to his request on July 1, 2013. (Complaint, ¶ 76, 115, 180).

Under the first category of claims, a joint action analysis is not required as BRC could never be found to be acting "under color of state law," where it does not make the decisions as to these issues. Again, Defendants are not involved in the decision as to where Plaintiff will be placed in supportive housing and to which benefits Plaintiff will be entitled. (Forte Aff, ¶ 7, 9). That decision is made by the HRA and the DHS and then communicated to BRC. (Forte Aff, ¶ 9). Further, BRC does not determine which individuals, regardless of their race, color, or ethnicity, get to live in its facilities or receive its treatment. The DHS makes that determination. (Forte Aff, ¶ 6). The only role BRC plays in the process is to assist the client in filling out the forms accurately and truthfully and to assist the client in obtaining the necessary benefits and documentation for the DHS and the HRA to make the client's supportive housing placement. (Forte, ¶ 7). BRC also does not make the determinations as to which benefits a client will be entitled, or from various public entities. For example, despite plaintiff's claim to the contrary, BRC has no involvement with the HRA's furniture allowance. (Shilson Aff, ¶ 4). Plaintiff was informed that clients apply for the furniture allowance when they move to Los Vecinos, his HRA and DHS designated supportive housing facility. (Shilson Aff, ¶ 4). Therefore, there is nothing unusual or uncustomary about the fact that Plaintiff applied for

---

[12] No factual allegations are specifically tailored to this claim. Again, to the extent that defendant must interpret these claims to raise the strongest arguments they suggest, defendant will assume that Plaintiff's allegations regarding his failure to obtain a furniture allowance when he moved to Los Vecinos form the basis of his inhumane treatment claim.

the housing allowance after he moved.[13] Plaintiff's claim that Defendants interfered with his right to this benefit is misplaced. Rather, Defendants tried to actively assist plaintiff in securing this benefit, but he declined that assistance. (Shilson Aff, ¶ 5).

There are no facts which demonstrate that Defendants had any involvement with the HRA and DHS decisions to place Plaintiff at Los Vecinos, as opposed to another facility. Moreover, Defendants' assistance in submitting Plaintiff's application is insufficient to constitute 'state action' under the joint action test. *Sybalski,* 546 F.3d at 259.

With regard to the allegations that involve Defendants to the extent they occurred at BRC's premises, but have no factual support and no basis at law, Plaintiff claims that Defendants: 1) have conspired with the DHS[14] and other shelter clients to deny his rights and intimidate him (Complaint, ¶ 49, 52, 53, 54, 64, 65); 2) have contributed to the loss of his laptop computer (Complaint,¶ 198, 116, 118, 181), which has caused him emotional distress (Complaint, ¶ 238-239, and 240-256)[15]; 3) refused to cooperate with the Police and refused to give him a copy of any investigation report arising out of the alleged theft of his laptop computer on June 26, 2013 (Complaint ¶ 72, 74, 117, 132); 4) have also denied him access to his "Chart" containing his medical records pursuant to his request on July 1, 2013 (Complaint ¶ 76, 115, 180); and 5) have fraudulently diagnosed him for its own financial gain (Complaint, ¶ 122).

Under the second category of claims, assuming for the sake of argument that a joint action

---

[13] Plaintiff had previously resided at the Jack Ryan residence where his designated space consisted of a bed and locker space. He only required furniture upon his move to Los Vecinos, since he received his own room.

[14] City of New York Department of Homeless Services.

analysis is required, these allegations would not meet the standard. Plaintiff claims that Defendants conspired with the DHS and other shelter clients to deny his rights and intimidate him. First, Plaintiff proffers no facts to support a claim that Defendants conspired with the DHS, and no facts exist. Second, with regard to Plaintiff's claim that Defendants conspired with other shelter clients, Plaintiff claims are vague-- but to the extent this claim has anything to do with Plaintiff's allegation that Defendants allowed other shelter clients to perpetrate violence against Plaintiff (Complaint, ¶ 49, 52, 53, 54, 64, 65, 164), or that Defendants allowed the theft of his laptop computer (Complaint, ¶ 66, 198), which has caused him emotional distress (Complaint, ¶ 238-239, and 240-256), and then refused to cooperate with the Police (Complaint, ¶ 72, 74, 117, 132), Defendants will address each claim in turn. BRC does not contract with the NYPD to provide law enforcement services, nor does it have employees empowered with police power. (Forte Aff, ¶ 13). BRC employs methods of diplomacy and mediation to resolve disputes among its clients. (Forte Aff, ¶ 13). Further, there are certainly no facts to support a claim that Defendants acted jointly with a state agency to deny Plaintiff police protection.

With respect to Plaintiff's claimed theft of his laptop, there is absolutely no evidence whatsoever that Defendants or BRC employees encouraged or assisted other clients in stealing Plaintiff's laptop or that the DHS or any other state agency was involved. Plaintiff reported to BRC employee, Todd Kelley, that he left the laptop out in his bed area. (Kelley Aff, ¶ 3). Clients are warned when they sign the Intake Agreement, not:

> "to use dorm outlets. Personal electronics may be charged in the clients's assigned lounge. If the client chooses to charge the item in one of the common areas, the power must be off and he must monitor it during the entire time it is charging. The program is not responsible for theft." (*See* Forte Affidavit, Exhibit 5).

Of course, Plaintiff later claimed he left it in his locker and that clients somehow broke in without tampering with the lock. (Complaint, ¶ 66).When the NYPD learned that Plaintiff had plugged his computer into an outlet in the dormitory area of the Residence and left the computer unattended, they declined to review the camera footage (which only captures the common hallways), and advised that further investigation was futile. (Thomas Aff, ¶ 5). A police report was not issued in connection with this alleged incident. (Thomas Aff, ¶ 5). BRC employees questioned the clients Plaintiff alleged could have been involved (Thomas Aff, ¶ 3-4, Kelley Aff, ¶ 4), and reviewed the camera surveillance footage of the hallways, but the footage did not reveal any actions, behavior or persons which could be connected to the alleged theft. (Thomas Aff, ¶ 6). BRC employee, Jason Thomas, questioned some additional clients, but no one, including Plaintiff, could identify anyone involved. (Thomas Aff, ¶ 6). Mr. Thomas did not submit any formal documentation about the incident, and Plaintiff never asked for a copy of any documentation submitted. (Thomas Aff, ¶ 6, Kelley Aff, ¶ 5, and Forte Aff, ¶ 12).

There is also no support for Plaintiff's claim that he was denied access to his records, including medical records pursuant to his request on July 1, 2013 (Complaint ¶ 76, 115, 180), and certainly no evidence that Defendants conspired with the DHS to deny Plaintiff his records. DHS has a prescribed protocol that BRC must follow when a client requests his "chart" or files relative to his residence at BRC. (Forte Aff, ¶ 14, and Records Access Protocol is annexed hereto as Exhibit 14). The chart/files include both HIPPA protected and non-HIPPA protected records. (Forte Aff, ¶ 14). Except for the HIPPA protected records, the rest of the documents that comprise the chart/files are the property of DHS (Forte Aff, ¶ 14). Thus, BRC is prohibited from distributing the entire

chart/files directly to the client, if that is the request that is made. (Forte Aff, ¶ 14). If a client requests the chart/files, the records are provided to DHS by BRC. DHS then contacts the resident to advise of the availability of the records for pick-up. (Forte Aff, ¶ 14).

On August 27, 2013, the DHS advised Plaintiff to pick up his records, where they were located and the identification he needed to obtain same.  (Forte Aff, ¶ 19, and Exhibit 20). Plaintiff admits receipt and responded to this correspondence on August 29, 2013, advising the DHS to stop contacting him regarding receipt of his file. (Forte Aff, ¶ 19, and Exhibit 21). At that time, BRC had no reason to believe that Plaintiff had not obtained a copy of his Chart and/or medical records as it had provided all documentation to the DHS as was the policy and procedure.  (Forte Aff, ¶ 20).

Significantly, as to the issue of a complaint to Department of Health and Human Services regarding Plaintiff's failure to receive his records, the Jack Ryan Residence made Plaintiff's entire Chart, including his HIPPA protected records, available through the DHS as of July 2013. (Forte Aff, ¶ 21). His HIPPA protected records were also provided for his pick-up at his present residence, Los Vecinos. Plaintiff continues to refuse to obtain these records. Plaintiff refuses to obtain his chart from the DHS. ((Forte Aff, ¶ 21, and Shilson Aff, ¶ 6).

Lastly, Plaintiff claims Defendants fraudulently diagnosed him with mental illness for its own financial gain (Complaint, ¶ 122). First, Plaintiff does not state how this alleged conduct is pursuant to a conspiracy with the DHS, or any other state agency. Second, there are no facts to support such a claim. BRC's completes psychiatric evaluations of its clients as required by HRA in support of the client's supportive housing applications, and for no other reason. (Forte Aff, ¶ 9 n. 5). BRC's contract award through the DHS is based on a term of years, and is not altered based on the number of clients in its facility or types of mental diseases that afflict its clients. (Forte Aff, ¶ 5). Therefore, it does not

22

matter what diagnosis plaintiff receives, or where he is ultimately placed as BRC's contract award to run and manage the Jack Ryan Residence was set on the date of the award, February 18, 2011. (Forte Aff, Exhibit 2). There is no rational argument that the DHS would conspire with Defendants to incorrectly diagnose Plaintiff so that it could increase BRC's funding. Since there are no facts to support a finding of "joint action," this claim must fail.

### 3.     BRC does not perform a Public Function

To satisfy the state action requirement under the "public function" test, the private entity must "perform a function that is 'traditionally the exclusive prerogative of the state.'" *Archer v. Economic Opportunity Comm'n*, 30 F.Supp.2d 600, 606 (E.D.N.Y.1998) (*quoting Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). Although it is not asserted, Plaintiff's complaint could be viewed to argue that it is a state function to provide security and housing for mentally disabled persons. However, the Second Circuit has explicitly rejected such an argument in a similar case involving an entity which provides group home facilities and support programs to mentally challenged individuals. *See Sybalski*, 546 F.3d at 260. (Plaintiffs' Section 1983 claims were dismissed for failure to demonstrate state action). Since the Second Circuit held in *Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255 (2d Cir. 2008), that it could not "conclude that care of the ... mentally disabled, was a function 'traditionally' and 'exclusively' reserved by the state." *Id.* at 260. Plaintiff has failed to plead circumstances here sufficient to satisfy the public function test.

Moreover, BRC is a private entity, albeit partially funded by state agencies, it does not hold itself out to the public arena as "open to all comers." *See Barrett v. United Hospital,* 376 F. Supp. at 799 (finding that a private hospital is not analogous to a sidewalk, elections, or municipal park).

23

BRC does not support the New York community as a whole, it supports individuals who have been selected by DHS as needing assistance with overcoming poverty, addiction, physical and mental illness, homelessness and unemployment. (*Forte Aff ¶ 5*) Therefore, there is no argument that BRC provides service that is "traditionally governmental in function." *Id.*

As Plaintiff does not allege facts sufficient to find BRC performs a "public function," his claim fails on this ground as well.

### 4.  BRC does not act under the power of the State

Finally, under the "state compulsion" test, a finding of state action requires that the private entity "acts pursuant to the 'coercive power' of the state or is 'controlled' by the state." *Forziano v. Independent* Group Home Living Program, Inc., 13-cv-0370, 2014 WL 1277912, *11 (E.D.NY, March 26, 2014). In order to find state action under this test there must be evidence of coercion or encouragement by the state in the complained of conduct. *Id.*

In this instance, Plaintiff does not allege, nor is there any factual support for a claim that any State agency coerced BRC to diagnose plaintiff with mental illness, that any State agency was involved in any alleged crimes against Plaintiff while Plaintiff was a client at a BRC facility, or that the State had anything to do with the theft of his computer, or his alleged lack of access to his medical records. Plaintiff's complaints regarding his lost laptop computer and medical records, are the result of his own carelessness with his personal property, and his own refusal to obtain his records. (*Forte ¶ 21, Shilson ¶ 6*).

**C.     PLAINTIFF'S 42 U.S.C. § 1985 CLAIM FAILS AS PLAINTIFF HAS NOT PLED ANY FACTS TO SUPPORT THE EXISTENCE OF A CONSPIRACY, ACTS IN FURTHERANCE OF THAT CONSPIRACY, OR THAT SUCH A CONSPIRACY WAS MOTIVATED BY INVIDIOUS DISCRIMINATORY AMICUS**

Section 1985 provides in relevant part that, "[i]f two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws. *See United Bhd. of Carpenters of Am., Local 610 v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). A conspiracy claim under § 1985 requires a showing of: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action. *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted). "[A] plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999). This includes particularized allegations that "establish the existence of an agreement among the defendants to deprive [the plaintiff] of his constitutional

25

rights." *Id.* Furthermore, the "'conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir. 2006); *Reynolds v. Barrett,* 685 F.3d 193, 201–02 (2d Cir. 2012) (Section 1985 and 1986 claims require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").

To establish a conspiracy claim pursuant to 42 U.S.C. § 1985, a plaintiff first must establish an underlying deprivation of a constitutional right. In other words, "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000).). When analyzing due process claims, the Court must evaluate "(1) whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, (2) what process was due before the plaintiff can be deprived of that interest." *Mateo v. Paez,* 10-CV-3568, 2014 Westlaw 1414833 *2 (E.D.N.Y. April 11, 2014*).

Plaintiff bases his Section 1985 claim on the alleged deprivation of his right to due process when "Defendants conspired [with] Tonie Baez, DHS Senior Counsel, and Michael Yorio, Esq., [and] OASAS Patient Advocacy Unit Manager...to deprive...[Plaintiff] of equal protection of the laws (Complaint, ¶ 161), and made "false representations" as to "Plaintiff's rights as a mental health patient..." (Complaint, ¶ 163). Plaintiff also alleges that BRC has engaged in an agreement with the aforementioned individuals to "ge[t] rid of Plaintiff without addressing his complaints," (Complaint, ¶ 165) and that his records, which contain his mental health diagnosis, is evidence of this conspiracy. (Complaint, ¶ 167).

First, it is unclear what due process right (life, liberty, or property) Plaintiff is claiming has

been violated here as he only makes a general reference to "his rights,"(Complaint, ¶ 163), and he does not connect this claimed deprivation of rights to any overt actions in furtherance of the alleged conspiracy between BRC and the aforementioned individuals of the DHS or the OASAS. On these grounds alone, Plaintiff's claims would fail. *See Thomas*, 165 F.3d at 137.   Notwithstanding, Plaintiff claims these individuals conspired to make false representations and that his medical records contain proof of this conspiracy (Complaint, ¶ 167). First, Plaintiff's medical records would not, and cannot constitute the requisite evidence of conspiracy. The "most fundamental aspect of a conspiracy: [is] an agreement." *Gropper v. Fine Arts Housing, Inc.,* 13 Civ. 2820, 2014 WL 1327964 (S.D.N.Y. April 3, 2014).

In *Gropper, supra,* Plaintiff brought an action under the Americans with Disabilities Act alleging violations against Nobu Restaurant as a wheelchair bound patron for a claimed inability to access the premises. *Id.* at *1. Plaintiff also claimed that the restaurant and building owner conspired with each other to deprive him of equal protection of the laws pursuant to 42 U.S.C. § 1985. *Id.* at *3. Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. The Court dismissed Plaintiff's § 1985 claim finding that Plaintiff had failed to plead with sufficient particularity his conspiracy claim. Specifically, Plaintiff had failed to allege the "most fundamental aspect of a conspiracy: an agreement." *Id.* at *6. The Court noted that none of the allegations in the complaint plausibly allege that defendants made an agreement for the purpose of depriving disabled individuals of their civil rights. Further, any references to an "agreement" in the complaint were merely "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id., (citing Iqbal,* 556 U.S. at 678). Nor was the Court willing to accept Plaintiff's argument that there should be an

inference of "the existence of an agreement from the alleged violations of federal, state, and local disability laws." *Id.* at *7. The Court noted that to "accept such an argument would permit every civil rights case to become a civil rights conspiracy case, which the Second Circuit has rejected in analogous contexts." *Id., (citing Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2d Cir.1964) ("Indeed, were we to hold this complaint sufficient, we would be inviting every party to a state proceeding angered at delay to file a complaint in this court reciting the history of his state case and concluding with a general allegation of conspiracy.").

Second, accepting for the moment as true Plaintiff's contention that his medical records, and specifically his "mental health reports" demonstrate an "agreement," Defendants fail to see how a mental health report issued by a BRC employee demonstrates a conspiracy involving two individuals at separate state agencies. Further, Defendants submit that Plaintiff would have no proof of such an "agreement" since he has refused to pick up these very medical records. (*Forte, ¶ 21, Shilson ¶ 6*) Moreover, if Plaintiff in fact believed that the aforementioned individuals were involved in a conspiracy with Defendants, he could have amended his complaint after Defendants named them in response to his request for assistance in naming John Does. (Dkt Entry 18). Plaintiff's choice not to do so, reflects the fact that these allegations are nothing more than speculation.

In addition, Plaintiff alleges no facts to demonstrate that this alleged conspiracy was "motivated" by racial, or otherwise class-based, invidiously discriminatory animus. Plaintiff claims he is an Arab, this fact alone does not demonstrate a motivation to act in conspiracy on the basis of same. (Complaint, ¶ 161).

Lastly, with regard to the reference that Defendants allowed Plaintiff to be "attacked and robbed on a daily basis by drug-addicted residents," (Complaint, ¶ 164); if this is in fact the due

process violation that Plaintiff is alleging, this also will not qualify. Plaintiff presents no facts which support that aforementioned individuals of DHS or the OASAS had any involvement with alleged acts of violence perpetrated against him or that Defendants had any authority to enforce his bodily protection. Again, BRC does not contract with the NYPD to provide law enforcement services, nor does it have employees empowered with police powers. (*Forte Aff, ¶ 13*) BRC employs methods of diplomacy and mediation to resolve disputes among its clients. (*Forte Aff, ¶ 13*). Furthermore, the law does not impose a duty to control the conduct of third persons to prevent them from harming others, even where, as a practical matter, the defendant could have exercised such control (*see Purdy v. Public Adm'r of County of Westchester*, 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 526 N.E.2d 4; *D'Amico v. Christie*, 71 N.Y.2d 76, 88, 524 N.Y.S.2d 1, 518 N.E.2d 896).[16] In this case, BRC does not and cannot exercise control over the interactions that clients may have with each other, nor does BRC have any obligation to provide personal protection to Plaintiff.

In light of the foregoing, Plaintiff's 42 U.S.C. § 1985 claim must be dismissed.

**D.     PLAINTIFF'S 42 U.S.C. § 1986 CLAIM FAILS AS PLAINTIFF HAS NOT PLED THE REQUISITE FACTS TO SUPPORT IT**

Plaintiff also argues that the Defendants "having the power to prevent or aid in preventing the commission of the same, have heretofore refused to do so" which has deprived him of his rights in violation of § 1986. (Complaint, ¶ 169). There are no facts to support what plaintiff is referring

---

[16] The exception to this general rule premised upon a special relationship between the defendant and the plaintiff, requiring the defendant to protect the plaintiff from the conduct of others, does not apply here since there is no special relationship between BRC and plaintiff (*see Purdy v Public Adm'r of County of Westchester, supra* at 8, 530 N.Y.S.2d 513, 526 N.E.2d 4) (examples of special relationships include employers and employees, parents and children, and common carriers and their patrons).

to when he states "the commission of same." Therefore, defendants are left to speculate what conspiratorial act has been committed which forms the basis for this claim. On this basis alone, Plaintiff's § 1986 claim should dismissed for lack of factual support. *Ashcroft v. Iqbal*, 129 S.Ct. at 1949-50.

Further, §1986 provides a cause of action for negligent failure to prevent a § 1985 conspiracy. Section 1985 liability is a necessary predicate to § 1986 liability, and because Plaintiff has not established a § 1985 conspiracy claim, Defendants respectfully requests that the Court dismiss Plaintiff's § 1986 claim. *See Traylor v. Steward*, 486 F. App'x 948, 949 (2d Cir.2012) ( "Because his § 1985 claim fails, so too does his claim under 42 U.S.C. § 1986." (*citing Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir.2000))); *White v. St. Joseph's Hosp.,* 369 F. App'x 225, 226 (2d Cir.2010) ("Insofar as [plaintiff] sought to state a claim under 42 U.S.C. § 1986, this claim necessarily failed because she failed to state a claim under § 1985." (citation omitted)); *Allen v. Cnty. of Nassau,* No. 09–CV–1520, 2013 WL 6795732, at *3 (E.D.N.Y. Dec. 23, 2013) (dismissing § 1986 claim along with § 1985 claim because "[s]ection 1985 liability is a necessary predicate to a Section 1986 claim" *Foster v. Diop,* No. 11–CV–4731, 2013 WL 1339408, at *14 (E.D.N.Y. Mar. 31, 2013) ("Because plaintiff has failed to state a § 1985 conspiracy claim, his derivative § 1986 claim necessarily fails as well." (citations omitted)).

**E.   PLAINTIFF'S 42 U.S.C. 2000d CLAIM FAILS AS PLAINTIFF HAS PLED THE REQUISITE FACTS TO SUPPORT IT**

42 U.S.C. 2000d provides in relevant part: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance."

Section 2000d prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance. Like all of the prior Title VI claims asserted, Plaintiff must again plead that a BRC discriminated against him on the basis of race and that the discrimination was intentional and a substantial or motivating factor. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001). A plaintiff alleging racial or gender discrimination must do more than recite conclusory assertions ... the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F.Supp.2d 522, 532 (S.D.N.Y.2013) (*citing Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir.1994)). Similar to Plaintiff's § 1986 claim, Plaintiff has offered no evidence to suggest that discrimination was a "substantial or motivating factor" in any of Defendants' decisions or action with respect to Plaintiff.

In support of Plaintiff's § 2000d claim, he alleges many of the same factual allegations as alleged with respect to the prior claims. However, in this instance he also claims that Defendants "intentionally" excluded him "in participation from, denied him the benefits of... their programs or activities receiving federal financial assistance" (Complaint, ¶ 174-177), on account not only of his race (Arab) as previously alleged, but also on account of color (White) and national origin (Moroccan). (Complaint, ¶ 177).

To this end, in support of his claim plaintiff alleges that Defendants: (1)"denied Plaintiff immediate access to NYPD to report his stolen property" (Complaint, ¶ 181); (2) "denied Plaintiff any participation in a police investigation,"(Complaint, ¶ 182); (3) "denied Plaintiff access to competent agencies in order for him to report violations and criminal activity...(Complaint, ¶ 183);

31

(4) "denied Plaintiff their referral services to the type of permanent housing suiting his needs as a mentally balanced individual,"(Complaint, ¶ 181); (5) fraudulently diagnosed Plaintiff for the "purpose of securing financial gain," (Complaint, ¶ 187); (6) allowed "residents to unlawfully access Plaintiff's locker and steal his property (Complaint, ¶ 189); (7) "prematurely removed Plaintiff to another residence so that they may deny him full participation in any investigation as to the theft of his property,"(Complaint, ¶ 199), and a result of his premature move "[p]laintiff was not able to secure, as all residents do prior to their move-out date, any furniture allowance from the New York City Department of Social Services. (Complaint, ¶ 201).

With respect to Plaintiff's allegations regarding the NYPD investigation, Defendants have already demonstrated in their argument for dismissal of Plaintiff's § 1983 claims that Defendants took no action with respect to this incident motivated by an animus towards plaintiff's race, and the same would be true of his religion or national origin. Plaintiff points to no conduct or comment which demonstrates the NYPD declined to conduct any investigation when they learned that Plaintiff had left the laptop out in the common area of the dorm. (Thomas Aff, ¶ 5) Therefore, BRC did not prevent Plaintiff from participating in a NYPD investigation, there was none. Moreover, Plaintiff did participate in BRC's investigation which consisted of questioning the individuals he named as potentially involved. (Thomas Aff, ¶ 3 - 4, Kelley ¶ 4) reviewing the surveillance tapes (Thomas Aff, ¶ 6). However, neither route revealed anyone with knowledge of the laptop's whereabouts.

Further Plaintiff cannot not plausibly argue he has been denied access to competent agencies in order for him to report violations and criminal activity...(Complaint, ¶ 183), when he was clearly informed of his rights to redress grievances in the documents he signed with Defendants, (Forte Aff, Exhibits 4 and 6), and has filed for such redress (Halber Decl, Exhibit F). Defendants cannot disern

32

what criminal acitivity Plaintiff is referring to specifically (Complaint ¶ 183), but assuming it concerns the theft of his laptop then Defendants informed Plaintiff that he had the right to report it to the NYPD, and he did. (Thomas Aff, ¶ 4-5). There was no denial of access or due process.

With regard to Plaintiff's claimed denial of benefits, again, Defendants do not control the decisions to grant or deny benefits to Plaintiff (Forte, ¶ 9, Shilson, ¶ 4). Nor do Defendants control the type of supportive housing that is selected for Plaintiff (Forte ¶ 7). These decisions are within the exclusive power of the agencies that grant these benefits; in this case largely the DHS and the HRA.

Although not mentioned with respect to this claim, but assuming for the sake of argument that the name calling[17] Plaintiff claims occurred with BRC employees as witnesses, also would not support a § 2000d claim. To hold Defendants liable for deliberate indifference, "harassment must be 'severe, pervasive, and objectively offensive." *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 665 (2d Cir. 2012). Plaintiff comes nowhere near meeting this threshold, and any BRC employees failure to respond to these comments, if they were in fact there, does not constitute deliberate indifference. *See Gant ex rel. Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 142 (2d Cir.1999) (Defendant's failure to take "direct responsive action" to a single instance of race-based name calling does not constitute deliberate indifference).

Further, Plaintiffs' failure to notify Defendants of the alleged discrimination is fatal to his Title VI claim. *See Manolov v. Borough of Manhattan Cmty. Coll.,* 952 F.Supp.2d 522, 527 n. 1 (S.D.N.Y. 2013) ("[E]ven if Plaintiff adequately had pleaded discrimination, his apparent failure to

---

[17] Plaintiff's claims that other clients called him "Taliban," "Bin Laden" and "Camel Jockey." (Complaint, ¶ 53).

notify [Defendant educational institution] officials of the alleged discrimination would be fatal to this Title VI .... claims."), *Aoutif v. City Univ. of New York,* 2005 WL 3334277 (E.D.N.Y. Dec.8, 2005), *see also DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 (2d Cir. 2009). Plaintiff does not allege that he notified Defendants of the comments, or when the comments were made such that they could be a "motivating factor" for any other subsequent action. Thus, there is no plausible inference that Plaintiff was discriminated against on the basis of his race, color, and national origin.

**F.   PLAINTIFF'S 42 U.S.C. § 3604 CLAIMS FAIL SINCE PLAINTIFF IS NOT A MEMBER OF A RACIAL MINORITY NOR HAS HE ALLEGED ANY FACTS WHICH  DEMONSTRATE DEFENDANTS' TOOK ANY ADVERSE ACTION WITH RESPECT TO HIS HOUSING WITH AN INTENTION TO DISCRIMINATE**

The FHA makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, 42 U.S.C. § 3604(f)(1)(A), or to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person.§ 3604(f)(2)(A); *Taylor v. Harbour Pointe Homeowners Ass'n,* 690 F.3d 44, 49 (2d Cir. 2012), cert. denied, 568 U.S. 133 S.Ct. 1280, 185 L.Ed.2d 186 (2013). The FHA defines "handicap" as "1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment," excluding individuals with addictions to controlled substances. § 3602(h).[18]

---

[18] Defendants are assuming for the sake of this motion that Plaintiff will be able to prove he suffers from a mental impairment which substantially limits one or more of his major life activities, despite the fact that Plaintiff also claims he is not mental impaired and should not be in housing with support programs for the mentally impaired. (Complaint, ¶ 121).

### 1.    Plaintiff is not a member of a protected class

To state a claim for intentional discrimination under § 3604(f)(2), a plaintiff must establish that: (1) he is a member of the protected class; (2) that defendants took adverse action against him; and (3) that the adverse action took place under circumstances giving rise to an inference of discrimination. *Mazzocchi v. Windsor Owners Corp.,* No. 11-CV-7913, 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012) (*citing Petrillo v. Schultz Props., Inc.,* No. 11-CV-6483T, 2011 WL 4899963, at *2 (W.D.N.Y. Oct.13, 2011).

First, this claim fails for the same reason that Plaintiff's § 1981 claim fails: Plaintiff's race is "White" and thus, this statute does not apply. Plaintiff is not a member of a protected class, and his claim fails on this ground alone.

### 2.    Defendants do not control Plaintiff's supportive housing determination

Second, this claim fails for the same reason that Plaintiff's § 1983 claim fails: Defendants in this instance could not have taken any adverse action with respect to Plaintiff's housing because Defendants do not make those determinations. (Forte, ¶ 7) Again, BRC is not involved in the decision as to where Plaintiff will be placed in supportive housing and to which benefits Plaintiff will be entitled. These decisions are made by the HRA and the DHS and then communicated to BRC (Forte ¶ 9). While BRC does provide temporary housing and social programs for the health, mental health, addiction treatment, vocational assistance and elder care of its clients, BRC does not determine which individuals, regardless of their race, color, or ethnicity, get to live in its facilities or receive its treatment. DHS makes that determination. (Forte, ¶ 6)  The only role BRC plays in the process is to assist the client in filling out the forms accurately and truthfully and to assist the client

in obtaining the necessary benefits and documentation for DHS to make that placement.  (Forte ¶ 7)

To the extent that Plaintiff has a grievance with the housing which was selected for him, he needs

to address that issue with the DHS.


### 3.    Plaintiff does not allege disparate treatment or disparate impact

Plaintiff also asserts a claim under 42 U.S.C. § 3604 (b).  The FHA also prohibits

discrimination "against any person in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection therewith, because of race, color,

religion, sex, familial status, or national origin." § 3604(b). In addition, the Fair Housing Act also

prohibits retaliation against individuals who engage in protected activity under the statute. See 42

U.S.C. § 3617 (shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the

exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right granted or

protected by the statute.).

A plaintiff may establish a Section 3604(b) violation under two theories disparate treatment

or disparate impact. *See LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995); *Milhouse*

*v. Renaissance Men's Residence,* 2013 WL 1811332, at *2 (E.D.N.Y. Apr. 29, 2013).

Plaintiffs asserting disparate treatment-based FHA claims must allege they were treated

differently from similarly situated persons or groups because of race, color, religion, sex, familial

status, or national origin. *See Boykin v. KeyCorp,* 521 F.3d 202, 214–15 (2d Cir. 2008).

Under a disparate impact theory, "the plaintiff must show (1) the occurrence of certain

outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons

of a particular type produced by the defendant's facially neutral acts or practices." *Tsombanidis v.*

*W. Haven Fire Dep't,* 352 F.3d 565, 574–75 (2d Cir. 2003).

In support of this claim, Plaintiff alleges that he: (1) "spent more than two years in BRC's transitional housing residences because he signed a contract with BRC promising him to be referred to suitable permanent housing," (Complaint, ¶ 213); (2) was "denied every opportunity to interview for suitable housing," (Complaint, ¶ 214); (3) that "[d]efendants own, operate, and manage more suitable buildings than the one to which Plaintiff was removed," (Complaint, ¶ 218); and (4) that "suitable assisted housing apartments remained available to other renters of a different protected class." (Complaint, ¶ 221).

First, under the disparate treatment theory, Plaintiff does not allege that Defendants treated similarly situated persons or groups differently, or any facts to support such a claim. The fact that other assisted housing apartments may have been available to other renters does not demonstrate disparate treatment against Plaintiff. Moreover, assuming the "renters" Plaintiff mentions are BRC clients, Defendants have demonstrated that all BRC clients are subject to the same housing selection process. (Forte, ¶ 6, 7)).

Plaintiff's disparate impact theory fares no better. Again, Defendants do not control the housing requirements or the supportive housing designation process. Therefore, Defendants has no control over how long Plaintiff is in the system, the selection of interviews, or the ultimate supportive housing selected for Plaintiff. Furthermore, one cannot reasonably infer that Plaintiff's race, color, religion, sex, familial status, or national origin was a factor at all for why it took more than two years for the DHS to place him, or that this process has a disparate impact on racial minorities.

37

**G. PLAINTIFF'S 42 U.S.C. § 3617 CLAIMS FAIL SINCE PLAINTIFF HAS NOT ALLEGED ENGAGEMENT IN A PROTECTED ACTIVITY, THAT DEFENDANTS WERE AWARE OF THAT ACTIVITY, THAT DEFENDANTS TOOK ADVERSE ACTION AGAINST PLAINTIFF, AND THAT THERE IS A CASUAL CONNECTION BETWEEN THE ACTIVITY AND THE ADVERSE ACTION**

42 U.S.C. § 3617, makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act.

To prevail under § 3617, Plaintiff need not prove that he was disabled within the meaning of the FHA. *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009). To state a retaliation claim, Plaintiff must show that: (1) he engaged in protected activity, (2) that Defendants were aware of that activity (3) that Defendants took adverse action against Plaintiff, and (4) there is a causal connection between the protected activity and the adverse action. *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002).

The first element in a § 3617 claim requires proof of a protected activity. Plaintiff does not allege what protected activity he has engaged in with respect to this claim, nor can Defendants make an educated guess. As a condition of acceptance into Defendant's program Plaintiff agreed to the rules and regulations set forth by DHS. (Forte Aff, ¶ 7). The client's responsibilities that  must be undertaken to receive the benefits and services provided by BRC are clearly detailed in the form of

an Intake Agreement. This Agreement, which is provided to all clients and requires their signature, sets forth the terms, rules and guidelines for shelter at BRC's Jack Ryan Residence. (Forte Aff, ¶ 7 and Exhibit 5).  These forms are signed pursuant to the DHS directives, which also include the client's obligation and agreement to: (i) apply for supportive or appropriate housing; (ii) accept housing referrals; (iii) keep appointments; (iv) accept the first suitable housing offer; and (v) adhere to the program requirements and the client's service plan. (Forte Aff, ¶ 7 and Exhibit 6 and Exhibit 7).

As previously mentioned, in this case Plaintiff's placement was delayed, in part, by his failure to complete documentation to secure benefits required by the DHS and other supportive housing facilities, and in part because the HRA deemed plaintiff ineligible for supportive housing on more than one occasion. (Forte Aff, ¶ 9, and Exhibit 11). Since BRC does not control this process, there can be no argument that Defendants took adverse action. Accordingly, there is no causal connection between any protected activity and any adverse action. Plaintiff's claims based on 42 U.S.C. 3617 should be dismissed.

## POINT II

### WHERE ALL OF PLAINTIFF'S CONSTITUTIONAL LAW CLAIMS FAIL, THIS COURT MAY DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER HIS REMAINING STATE LAW CLAIMS

If this Court finds that Plaintiff's constitutional claims fail as a matter of law, then there is no longer any independent basis for federal jurisdiction in the within action. Thus, the Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining Gross Negligence and Emotional Distress claims. See 28 U.S.C. § 1367(c) (3) ("The district courts may decline to exercise

39

supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir.1998) ("[The Second Circuit] and the Supreme Court have held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" ).

In light of the foregoing, Defendants respectfully request that Plaintiff's Gross Negligence and Emotional Distress claims be similarly dismissed. In the alternative, if the Court elects to weigh the merits of these claims, Defendants respectfully submit that Plaintiff has no grounds to assert either of these claims against Defendants.

### 1.    Plaintiff has no claim for Negligent Infliction of Emotional Distress

Under New York law, a cause of action for negligent infliction of emotional distress is premised upon a breach of duty which unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for her safety. *Santoro ex rel. Santoro v. Donnelly*, 340 F.Supp.2d 464 (S.D.N.Y., 2004). Axiomatic to any negligent infliction of emotional distress claim is a finding of duty.

As stated previously, the law does not impose a duty to control the conduct of third persons to prevent them from harming others, even where, as a practical matter, the defendant could have exercised such control. *See Purdy v. Public Adm'r of County of Westchester*, 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 526 N.E.2d 4 (1988); *Edwards v. Mercy Home for Children and Adults, Inc,* 303 A.D.2d 543 755 N.Y.S.2d 732 (2d. Dep't 2003) (holding that hospital which employed nurse did not owe a duty of care to nurse who allegedly was attacked at hospital by patient while she attempted to insert a medical device into his arm).

Accordingly, Defendants are not liable for the alleged crimes against Plaintiff, or the theft of his laptop. (Complaint, ¶ 231, 239).

### 2.    Plaintiff has no claim for Gross Negligence

Gross negligence "differs in kind, not only degree, from claims of ordinary negligence" *Colnaghi, U.S.A. v. Jewelers Protection Servs.,* 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993). To constitute gross negligence, a party's conduct must " 'smack[ ] of intentional wrongdoing'" or "evince[ ] a reckless indifference to the rights of others." (*Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992), *quoting Kalisch-Jarcho, Inc. v. City of New York,* 58 N.Y.2d 377, 385, 461 N.Y.S.2d 746, 448 N.E.2d 413(2011). Here, Plaintiffs does not allege, nor is there proof of, the existence of a special relationship between the parties. Rather, the Plaintiff's sole claim was that the Defendants were grossly negligent by failing to protect Plaintiff and his property. (Complaint, ¶¶ 236, 239). First, as stated above, there can be no negligence where there is no duty, and in this case Defendants owed no duty to Plaintiff to protect his person or property from harm by others *See Pirdy, 72 N.Y.2d at 8.* Nor would the theft of plaintiff's laptop or verbal comments by other clients rise to the level of evincing a reckless indifference to the rights of others. *See Everett v. Loretto Adult Community, Inc.,* 32 A.D.3d 1273, 822 N.Y.S.2d 681 (4th Dep't 2006) (Despite Plaintiff's claim that Defendants intentionally starved decedent and improperly dosed her medication, the Court found there was no conduct that could be viewed as so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others ).

41

## CONCLUSION

For the reasons set forth herein, it is respectfully requested that the Court grant Defendants

motion for an order pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure for judgment

upon the pleadings or, in the alternative, granting summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure to BRC and BRC Defendants (collectively "Defendants")

dismissing Plaintiff, Hicham Azkour's (hereinafter "Plaintiff")  complaint.

New York, New York
May 7, 2014

Respectfully submitted,
RUBIN, FIORELLA & FRIEDMAN LLP
*Attorneys for BRC and BRC Defendants*


By:  _____
Shelley R. Halber (SH-4739)
Mandie R. Forman (MF-2328)