## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **HICHAM AZKOUR**, <br><br> *Plaintiff,* <br><br> *v.* <br><br> **BOWERY RESIDENTS COMMITTEE, INC.,** LAWRENCE a/k/a MUZZY **ROSENBLATT, JANET FORTE, KEVIN MARTIN, TEREEN LLEWELYN-MILLER, ANGELA KEDZIOR, JOHN DOE 1-5, AND JANE DOE 1-5,** <br><br> *Defendants.* | <br><br><br><br> <u>**Civil Action No.**</u> <br><br> <u>**JURY TRIAL DEMANDED**</u> |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RULE 56(d) REQUEST AND HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

HICHAM AZKOUR, pro se

93 Pitt Street, Apt. 3B

New York, New York 10002


Email: hicham.azkour@gmail.com

1

Under Rule 56(d)[1] of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), **HICHAM AZKOUR**, pro se plaintiff (hereinafter referred to as "Plaintiff") respectfully submits this memorandum of law in support of his request that the Court entirely deny the above-named defendants' (hereinafter referred to as "Defendants") motion to dismiss at Docket Entry No. 27.

Defendants represent that their motion to dismiss is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). However, considering the fact that they selectively and conveniently submitted self-serving, unquestioned discovery material, they also request that their motion may be converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

In the absence of a pre-trial scheduling order, as prescribed by Fed. R. Civ. P. 16(b), and Plaintiff's reasonable opportunity to seek disclosure, gather testimonies, and rebut Defendants' evidence,  Defendants' motion remains distinctively premature.

Plaintiff supports his Rule 56(d) request and his opposition to said motion by his 28 U.S.C. § 1746 declaration[2] ("*Azkour Dec.*"), Docket Entry No. 37, setting forth (1) the facts sought to resist Defendants' motion and how they may be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort he has made to obtain them, and (4) why he was unsuccessful in those efforts.

Plaintiff's also supports his opposition by his answer to Defendant's 56.1 statement, Docket Entry No. 36, setting the facts he disputes or those which, after discovery, he will be able to efficiently support by the weight of the evidence.

---

[1] Fed. R. Civ. P. 56(f) was re-designated as subdivision (d) by amendment effective December 1, 2010 "without substantial change" to its provisions. *See* Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

[2] 28 U.S.C. § 1746 permits an unsworn declaration to be treated as if it were sworn, if the declarant were to: "(1) 'declare (or certify, verify, or state),' (2) 'under penalty of perjury,' (3) that the matter sworn to is 'true and correct.'" *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (quoting 28 U.S.C. § 1746).

## 1.  PROCEDURAL HISTORY

On November 8, 2013, this Court Ordered:

> Under *Valentin* v. *Dinkins,* 121 F.3d 72 (2d Cir. 1997), a *pro se* litigant is entitled to assistance from the district court in identifying a defendant. *Id.* at 76. In the complaint, Plaintiff supplies sufficient information to permit the Bowery Residents Committee, Inc., to identify the John/Jane Doe Defendants. It is therefore ordered that the Bowery Residents Committee, Inc., shall ascertain the identity of the John/Jane Doe Defendants whom Plaintiff seeks to sue here and the addresses where these Defendants may be served. The Bowery Residents Committee, Inc., shall provide this information to Plaintiff and the Court within sixty days of the date of this order." Moreover, the District Judge Ordered that "[w]ithin thirty days of receiving this information, Plaintiff must file an amended complaint naming the John/Jane Doe Defendants. The amended complaint will replace, not supplement, the original complaint. An Amended Complaint form that Plaintiff should complete is attached to this order. Once Plaintiff has filed an amended complaint, the Clerk of Court will, if necessary, send instructions to Plaintiff to effect service on the named John/Jane Doe Defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.

*See* Docket Entry No. 8; *see also Azkour Dec.* at ¶¶ 7-8.

On January 7, 2014, Defendants' counsel informed the Court that they have no intention to comply with its Order. *See* Docket Entry No. 18; *see also Azkour Dec.* at ¶¶ 9-12. They did not request reconsideration and they did not request certification for interlocutory appeal. Plaintiff objected to Defendants' decision and requested from the Court to hold a contempt hearing. *See* Docket Entry No. 19. On January 29, 2014, Defendants' counsel requested that a conference be held so that the Court may determine "parameters" within which Plaintiff, Defendants, and counsel to Defendants may communicate. *See* Docket Entry No. 21; *see also Azkour Dec.* at ¶¶

23-24. On February 26, 2013, an *informal* conference was held before the Court. *Id.* At the end

of the conference, the Court granted Defendants leave to file a motion to dismiss. On May 7,

2014, Defendants filed their motion to dismiss Plaintiff's claims.


### 2.   JUDGMENT ON THE PLEADINGS IS PREMATURE AND INAPPROPRIATE AT THIS STAGE OF THE ACTION


Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but

early enough not to delay trial — a party may move for judgment on the pleadings." Under Rule

12(c), "a party is entitled to judgment on the pleadings only if it has established that no material

issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of

law." *Bailey v. Pataki*, No. 08 Civ. 8563 (JSR), 2010 WL 234995, at * 1 (S.D.N.Y. Jan. 19,

2010) (quotation marks and citations omitted) (alteration in original). "The standard for granting

a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion

for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126

(2d Cir. 2001) (citations omitted). Thus, while the Court should "accept all factual allegations in

the complaint as true and draw all reasonable inferences" in favor of the non-movant, *Bank of NY

v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (internal quotation marks and

citations omitted), "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient

factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689

F.3d 110, 114 (2d Cir. 2012).

Because "hasty or imprudent use of this summary procedure by the courts violates the policy

in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or

defense," federal courts are "unwilling to grant a motion under Rule 12(c) unless the movant

clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1368 (3d ed.). In considering a Rule 12(c) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In the present matter, no instrument was attached to Plaintiff's only pleading, which his original complaint ("Complaint"). *See Azkour Dec.* at ¶ 1. On the other hand, no instrument was attached to Defendants' only pleading either, which is their answer to the Complaint. Under Fed. R. Civ. P. 7(a), an allowed pleading is defined as (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a cross claim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer. Therefore, any material to which Defendant's motion refers remains material outside the pleadings.

Plaintiff's Complaint, although it has not yet been amended, *see Azkour Dec.* at ¶¶ 7, 12, 16-17, articulates claims that are supported by facts and laws. Due to the fact that any claims articulated by Plaintiff also rely on facts, which, in essence, should be discovered and rebutted through, *inter alia*, interrogatories, depositions, and requests for admission, *see Azkour Dec.* at ¶¶ 15, 25, 29, it is highly likely that the self-serving material provided by Defendants neither supports nor rebuts Plaintiff's allegations. Actually, as we will demonstrate below, such material, including the Affidavit of Jane Forte ("*Forte Aff.*") at Docket Entry No. 28-2 or EXHIBIT A, the Affidavit of Todd Kelley ("*Kelley Aff.*") at Docket Entry No. 28-4 or

EXHIBIT B, and the Affidavit of Jason Thomas ("*Thomas Aff.*") at Docket Entry No. 28-5 or

EXHIBIT C, creates genuine factual disputes. *See Azkour Dec.* at ¶¶ 25-26.

Additionally, Defendants do not support their legal arguments by competent evidence, which leads us to conclude that said arguments, as nakedly advanced, are not applied to the specifics of this case. They are rather artificially tailored and used out of their context. For instance, although Plaintiff has been asserting that he is an Arab and alleging 42 U.S.C. § 1981 discrimination claim on that basis, *see* Complaint at ¶¶ 7-8, 10-11, 53, 109, 111-114, 161, 174-176, 209, 212, Defendants in their memorandum of law, *see* Docket Entry No. 30 at pages 10-11, maintain, based upon doubtful and questionable authorities, that Plaintiff's claim fails because Arab is not a race. As a matter of law, this is wrong because, in *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609, 107 S. Ct. 2022, 2026 (1987), the U.S. Supreme Court held that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. . . If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under 1981." *Id.* at 613.

Applying an erroneous test and ignoring their own evidence, Defendants contend in their memorandum of law, Docket Entry No. 30 at pages 13-24, that defendant Bowery Residents' Committee, Inc. ("BRC") has not engaged in state action and is not a state actor with respect to the alleged violations. The Complaint, however, refers to BRC as a private not-for-profit organization which directly contracted the operation and management of a homeless shelter, namely the Jack Ryan Residence, from the New York City Department of Homeless Services,

which is a public corporation within the meaning of Section 42.5 of the New York Social

Services Law ("N.Y. Soc. Ser. L."). *See* Complaint at ¶¶ 2, 110, 139, 142. The latter provides:

> "Public corporation" shall mean a municipal corporation, a district corporation, or a public benefit corporation.

*See* N.Y. Soc. Ser. L. § 42.5. On the other hand, BRC is a private, not-for-profit organization as

prescribed by § 42.4:

> "Not-for-profit corporation" and "charitable organization" shall mean entities established pursuant to the not-for-profit corporation law or otherwise established pursuant to law.

*See* N.Y. Soc. Ser. L. § 42.4. As such, BRC should comply with all federal and state laws in

contracting a homeless project as defined by N.Y. Soc. Ser. L. § 42.1. The latter provides:

> "Homeless project" shall mean a specific facility, including lands, buildings and improvements acquired, constructed, renovated or rehabilitated and operated by a not-for-profit corporation, charitable organization, wholly owned subsidiary of a not-for-profit corporation or of a charitable organization, public corporation or a municipality to increase the availability of housing for homeless persons, which may include other non-housing services such as but not limited to dining, recreational, sanitary, social, medical and mental health services as may be deemed by the commissioner to be essential to such a project.

*See* N.Y. Soc. Ser. L. § 42.1. Moreover, to be eligible for and establish a homeless project, a not-

for-profit organization, such as BRC, is mandated by law to comply with all the requirements set forth

below, pursuant to N.Y. Soc. Ser. L. § 43.4:

> The commissioner shall require that, in order to receive funds pursuant to this article, the municipality, not-for-profit corporation or subsidiary thereof, public corporation or

charitable organization  or subsidiary  thereof must  submit  an  operating  plan.  Such
plan shall include:

   (a)  the manner in which the operating expenses of the project shall be met;
   (b)  the services that will be provided to homeless persons,  including procedures for
        intake, referral and outreach;
   (c)  the  responsibilities  of  the  municipality  and  social  services  district  for  the
        operation of the project;
   (d)  the specific population that will be served by the project and how the project will
        address the population's special needs;
   (e)  the category of facility proposed to be established; and
   (f)  evidence demonstrating that such project complies or  will  comply with existing
        local, state and federal laws and regulations.

*See* N.Y. Soc. Ser. L. § 43.4. This being said, a not-for-profit organization, such as BRC, cannot
continue to receive state financial assistance and, hence,  federal financial assistance, unless it complies
with existing local, state, and federal laws and regulations, including the equal protection of the laws
clause of the Fourteenth Amendment to the United Constitution:

        The commissioner  shall  require  that  all  homeless  projects  that  received  financial
        assistance pursuant to this article shall comply with all regulations applicable to projects
        of this type promulgated by the department, by the division of housing and community
        renewal and other municipal, state and federal regulations and laws. The commissioner
        may terminate  any  contract  upon a finding that a substantial violation of such
        regulations or laws has  remained  uncorrected  for  a  substantial period of time.

*See* N.Y. Soc. Ser. L. § 44.5

        "In certain instances the actions of private entities may be considered to be infused with

'state action' if those private parties are performing a function public or governmental in nature

and which would have to be performed by the Government but for the activities of the private

parties." *Kia P. v. McIntyre,* 235 F.3d 749, 756 (2d Cir.2000). In order to determine whether or

not a corporate entity, such as BRC, qualifies as a state actor, the following standard is used:

        only if (1) the government created the corporate entity by special law, (2) the government
        created the entity to further governmental objectives, and (3) the government retains
        'permanent authority to appoint a majority the directors of the corporation' will the

> corporation be deemed a government entity for the purpose of the state action requirement.

*Hack v. President & Fellows of Yale Coll.,* 237 F.3d 81, 84 (2d Cir.2000) (quoting *Lebron v.*

*National Railroad Passenger Corp.,* 513 U.S. 374, 400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1999)).

In the instant case, the State of New York legislature created BRC by enacting the Social Services Law. *See* N.Y. Soc. Ser. L. §§ 20-c and 42.4; *see also Forte Aff.* at ¶ 5. The purpose of such legislative enactment in creating an entity, such as BRC, is to further governmental objectives in funding capital programs sponsored by not-for-profit corporations, charitable organizations, wholly owned subsidiaries of not-for-profit corporations or of charitable organizations, public corporations and municipalities that will expand and improve the supply of shelter and other housing arrangements for homeless persons. *Id.; see also* N.Y. Soc. Ser. L. § 41. In addition to this legislative purpose, BRC, as a contracting not-for-profit organization, is required to provide protections under Sections 1 and 4 of Article XVII of the New York State Constitution as directed by the court in *Callahan v. Carey,* 307 A.D.2d 150, 762 N.Y.S.2d 349, 351 (1st Dept.2003). Also, BRC, as mandated by N.Y. Soc. Ser. L. § 44.5, is subject to regulation under the United States Bill of Rights, including the First, Fifth and Fourteenth Amendments, which prohibit the federal and state governments from violating certain rights and freedoms. Moreover, there is no doubt that the New York State government, through New York City, which is a municipal corporation as defined by N.Y. Soc. Ser. L. § 42.5, retains permanent authority to control the appointment or removal of the majority of the directors of a BRC by requiring that, as a contractor, it shall not employ a person or permit a person to serve as a member of the Board of Directors or as an officer BRC if such employment or service would violate Chapter 68 of the New York City Charter. *See* EXHIBIT D,

9

*see also* General [3] Provisions Governing Contracts for Consultants, Professional, Technical, Human and Client Services attached hereto as <u>EXHIBIT E</u>.

Another test to determine state actor or state action is whether a private entity's actions are fairly attributable to a State in such a way that there is a close nexus between the State and the challenged action of the entity, as though the "action of the latter may be fairly treated as that of the State itself." *United States v. Stein,* <u>541 F.3d 130, 146 (2d Cir.2008)</u> .

Plaintiff also argues that the BRC's contract and the resulting State use of the BRC's Jack Ryan Residence for provision of mental health services shows that state action has occurred under the delegation of public function theory under which private actors are deemed to undertake state action when they provide services under contract which the State bears "an affirmative obligation to provide," *West v. Atkins,* <u>487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)</u>, or exercise a power which has been "traditionally *exclusively* reserved to the State," *Jackson v. Metropolitan Edison Co.,* <u>419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)</u> (emphasis added).

---

[3] Section 2.02(A) of this document states:

> The Contractor represents and warrants that neither it nor any of its directors, officers, members, partners or employees, has any interest nor shall they acquire any interest, directly or indirectly, which conflicts in any manner or degree with the performance of this Agreement. The Contractor further represents and warrants that no person having such interest or possible interest shall be employed by or connected with the Contractor in the performance of this Agreement.

Moreover, Section 2.02(C) states:

> The Contractor shall not employ a person or permit a person to serve as a member of the Board of Directors or as an officer of the Contractor if such employment or service would violate Chapter 68 of the Charter.

Evidently, as this Court is aware, *there is not a single test to identify state action and state actors*. The Court, however, must first determine whether there is a deprivation of a constitutional right or federal right alleged in the Complaint that would support a § 1983 action. And this cannot be determined unless Plaintiff participates in the discovery process to compel Defendants to disclose evidence supporting constitutional violations.

It is clear that BRC is a state actor and, thus, has been heretofore engaging in state action as regards Plaintiff's allegations that, under the color of a statute, an ordinance, a regulation, a custom, or a usage, of the State New York, BRC deprived him of rights, privileges, or immunities secured by the Constitution and laws. *See* 42 U.S.C. § 1983.

### 3.   PLAINTIFF'S RULE 56(d) REQUEST FOR DISCLOSURE IS LEGITIMATE BECAUSE THERE ARE FACTUAL DISPUTES AND DEFENDANTS' ARGUMENTS ARE NOT SUPPORTED BY ANY ADMISSIBLE EVIDENCE

In this opposition, which rather addresses procedural deficiency in granting Defendants leave to file their aforementioned motion, we will not discuss any further Defendants' manipulative use of legal arguments or the lack of substance characterizing such arguments. Rather, on the procedural deficiency ground, we may assert and argue again that on a 12(c) motion, a court generally considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir.2009). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the

complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)). *See* Fed. R. Civ. P. 10(c) ("a copy of a written instrument that is an exhibit to a pleading is a *part of* the pleading for all purposes") (emphasis added). All the material presented by Defendants was not "integral" to Plaintiff's Complaint. *See Sira,* 380 F.3d at 67 (document not expressly cited in complaint was "incorporated into the pleading because [it] was integral to [plaintiff's] ability to pursue" his cause of action); *Chambers,* 282 F.3d at 153 (document "integral" to complaint where complaint "relie[d] heavily upon its terms and effect") (quotation marks omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (necessity of translating motion into one under Rule 56 "largely dissipated" where plaintiff had "actual notice" of information in documents and "relied upon [them] in framing the complaint"). "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a12(b)(6)] motion." *Cortec,* 949 F.2d at 44. For these reasons, the Court should deny Defendants' motion for judgment on the pleadings and should not convert it into a motion for summary judgment.

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord,* 2006 WL 2794421, at *3 (W.D.N.Y. August 1, 2006) (quoting *Salahuddin v. Coughlin,* 999 F. Supp. 526, 535 (S.D.N.Y. 1998)), *aff'd,* 2008 WL 5083122 (2d Cir. 2008); *see also McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual

12

requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>Cole v. Artuz,</u> 1999 <u>WL 983876, at *3 (S.D.N.Y. October 28, 1999)</u> (citing cases).

Here, Plaintiff submits both his declaration and his answer to Defendants' statement in support of his opposition to their motion. Plaintiff contends that there are genuine factual disputes. Based on his declaration, his answer, and the reasons articulated herein, Plaintiff asserts that Defendants did not disclose all the unprivileged evidence they are required to disclose per Fed. R. Civ. P. 26. Moreover, Plaintiff was not allowed to duly present his factual contentions, which have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Plaintiff was not afforded due process and, in blatant violation to this Court's Order, was not provided with the identities of John Does 1-5 and Jane Does 1-5 so that he may able to add parties and amend his Complaint. *See* <u>Azkour Dec.</u> at ¶¶ 7-11. Plaintiff, in the absence of a Rule 16 pre-trial scheduling order, was not afforded the opportunity to discover facts by submitting interrogatories, requests for admission, by examining witnesses, and so forth. *See* <u>Azkour Dec.</u> at ¶ 13-15, 18. For these reasons, Plaintiff respectfully requests that the Court afford him due process per Fed. Rule Civ. P. 56(d). The latter provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

*See* Fed. Rule Civ. P. 56(d).

To obtain relief under this rule, the non-moving party's affidavit or declaration must show: "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, LLP.,* 321 F.3d 292, 303 (2d Cir.), *cert. denied,* 540 U.S. 823 (2003), *quoted in Javier H. v. Garcia-Botello,* 2011 WL 4344045, at *7 (W.D.N.Y. Sept. 14, 2011). The grant of relief pursuant to Rule 56(d) is within the discretion of the district court. *See United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 995 F.2d 375 (2d Cir. 1993); *see also Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir. 2001).

In this case, Defendants have heretofore refused to abide by this Court Order dated November 8, 2013, Docket Entry No. 8, which is basically an order pertaining to Rule 26 mandate, directing them to disclose the unidentified defendants who committed and participated in the unlawful acts alleged in Plaintiff's Complaint. Also, as Plaintiff demonstrated to this Court in his request for time extension, Docket Entry No. 35, Defendants' version of the facts is contradicted and controverted by the existence of a police report and by the facts narrated therein. *See Azkour Dec.* at ¶¶ 25-26. Further, as this Court has been informed, Defendants are still under investigation by the United States Department of Health and Human Services for Plaintiff's claim that they violated his privacy rights and discriminated against him under the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Docket Entry No. 36 at ¶ 22.

As Plaintiff stated in his request for time extension at Docket Entry No. 35, Defendants appear to give much importance to Plaintiff's stolen laptop computer in their request for dismissal, despite its unimportance in Plaintiff's overall allegations of discrimination and

violation of his constitutional rights. Defendants presented the three aforementioned perjurious affidavits to deny any liability as to the reported theft. *See* EXHIBIT A, EXHIBIT B, and EXHIBIT C. However, as clearly indicated by the New York Police Department ("NYPD") Report No. 2013-013-05111, attached hereto as EXHIBIT F, there is a genuine issue of fact as to whether defendant BRC, on June 26, 2013, allowed the investigating officers to access its video recordings. *See Azkour Dec.* at ¶¶ 25-26. The NYPD Report states that *no video was available* for review by the officers. In fact, the investigating police officers and detectives stated to Plaintiff, during the investigation, that defendant BRC did not allow them access to the video recordings for privacy reasons. Nonetheless, BRC witnesses, including defendant Janet Forte, falsely claim that the police officers declined to review the video because they learned from Plaintiff that he had plugged in his laptop computer to an outlet and left it unattended in the dormitory and, in violation of the shelter's internal rules, he was unauthorized to do so. *See Thomas Aff.* at ¶ 5; *see also Kelley Aff.* at ¶ 3. This testimony is not credible because even if, *arguendo*, Plaintiff left his computer laptop unattended in an open area of the dormitory, John Doe and Jane Doe, who were monitoring the 9th floor, would have unplugged, removed the laptop from the unattended area, placed it in their office, and issued a warning to Plaintiff. Defendants have heretofore refused to reveal the identities of John Doe and Jane Doe.

Both Mr. Jason Thomas and Mr. Todd Kelley declare under the penalty of perjury that they have direct knowledge of the facts pertaining to the incident Plaintiff reported to NYPD. *See* Docket Entries Nos. 28-4 and 28-5. However, Plaintiff, on June 26, 2013, never complained to them *directly* about the theft of his laptop for the simple reason that (1) they work night shifts; (2) they were not present in the shelter's 9th floor during the time of the reported theft, (3) Plaintiff

initially reported the theft to John Doe and Jane Doe who were, during Plaintiff's brief absence, monitoring and supervising the 9th floor; and (4) Plaintiff complained *directly* to defendant Tereen Llewelyn-Miller, Assistant Director, and non-party Taheera Emanuel, Independent Living Specialist, at approximately 1:30 PM. Defendant Llewelyn –Miller  did not conduct its sham investigation until approximately 5:00 PM. For such reasons, Plaintiff reported the theft to NYPD at approximately 21:10 PM.

In addition, Mr. Thomas falsely asserts that (1) a police report was not issued in connection with the theft, *see Thomas Aff.* at ¶ 5; (2) the NYPD officers declined to review the camera footage, *see Thomas Aff.* at ¶ 5; and (3) that the officers learned that Plaintiff had left his laptop plugged in an unattended area, *see Thomas Aff.* at ¶ 5; *see also Kelley Aff.* at ¶ 3. The investigating officers' narrative in the attached NYPD Report, *see* EXHIBIT F, contradicts both Mr. Thomas's and Mr. Kelley's statements. The NYPD Report states that Plaintiff complained and stated to the investigating officer that, on June 26, 2013, at or about 1:30 PM, he noticed that his laptop computer was removed from his locker without authority or permission to do so.

In addition to these contradictions, defendant Janet Forte falsely states that Plaintiff has never requested any documents as to their investigation regarding the theft of Plaintiff's property. *Forte Aff.* at ¶ 12. This is contradicted by the email that was sent by Plaintiff to the defendants on July 16, 2013.  *See* EXHIBIT G.

## 4.  **CONCLUSION**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1.  Entirely deny Defendants' motion to dismiss his Complaint;

2.  Order Defendants to provide Plaintiff with the identities of John Doe 1-5 and Jane Doe 1-5 so that he may effectuate service upon them as per this Court Order at <u>Docket Entry No. 8</u>;

3.  Issue an a pre-scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure;

4.  Grant Plaintiff leave to add parties and amend his Complaint;

5.  Afford Plaintiff the right to due process by allowing him to engage in discovery and obtain evidence upon which he may support his claims;

6.  Appoint pro bono attorney to represent him in the present matter; and

7.  Order a psychiatric evaluation of Plaintiff as per Rule 35 of the Federal Rules of Civil Procedure.

Respectfully submitted on this 21st day of May, 2014


By:       HICHAM AZKOUR, pro se


_____