UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
:
:
HICHAM AZKOUR, :
:
:
Plaintiff, : 13 Civ. 5878 (TPG)
:
v. : **OPINION**
:
BOWERY RESIDENTS' COMMITTEE, INC., *et* :
*al.*, :
:
Defendants. :
:
---------------------------------------------x

Plaintiff Hicham Azkour brings this action, *pro se*, against defendant Bowery Residents' Committee, Inc. ("BRC"), as well as BRC staff members Lawrence a/k/a Muzzy Rosenblatt, Janet Forte, Tereen Llewelyn-Miller, Kevin Martin, Angela Kedzior, and John and Jane Does 1-5 (collectively, "defendants").

In substance, plaintiff alleges that defendants improperly denied him proper housing, public assistance benefits, and the right to his medical records. Plaintiff further alleges that defendants failed to protect his person and property—namely, a laptop and software—from theft by other BRC residents, or even actively participated in such theft. Plaintiff alleges that this treatment was directed at plaintiff because he is an Arab. He asserts claims for deprivation of his constitutional rights under a number of federal statutes: 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 2000d. Plaintiff brings further claims under 42 U.S.C. §§ 3604 and 3617, alleging both intentional discrimination and disparate treatment or impact discrimination. Finally, plaintiff

1

makes claims for gross negligence and negligent infliction of emotional distress under New York state law.

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or, in the alternative, for summary judgment and dismissal under Federal Rule of Civil Procedure 56. (Dkt. No. 27.)

For the reasons discussed below, the court declines to construe defendants' motion as a motion for summary judgment. However, the court grants the motion for judgment on the pleadings on all counts.

## THE COMPLAINT

The allegations in the complaint center on plaintiff's treatment while housed in a number of BRC facilities. BRC is a private non-profit organization that provides housing and nonresidential programming to thousands of New Yorkers. BRC employs over 650 staff, and operates with a budget of over $60 million annually. (Compl. ¶ 25.) Among other facilities, BRC operates the Jack Ryan Residence, a 200-bed homeless shelter funded in part by the New York City Department of Homeless Services ("DHS"). (¶ 27.) The Jack Ryan Residence "serve[s] homeless men and women of all ages who have a history of mental illness and who are seeking to attain or maintain stability in their mental health." (¶ 28 (internal quotation marks omitted).) The Jack Ryan Residence operates pursuant to a BRC contract with DHS, and is licensed by the New York State Office of Temporary and Disability Assistance. (*Id.*)

The named and unnamed individual defendants are all BRC employees working at the Jack Ryan Residence. (¶¶ 31-32.) While the complaint is not entirely clear as to each individual defendant's role, it appears that defendant Rosenblatt supervised the Jack Ryan Residence, and defendant Kedzior worked as a psychiatrist serving BRC residents throughout New York. (¶ 24.)

On June 9, 2011, plaintiff was referred to a BRC shelter called the Boulevard Residence. (¶ 44.) While at the Boulevard Residence, plaintiff was diagnosed "with Post Traumatic Stress Disorder and other mental illnesses." (¶ 45.)

On September 9, 2011, plaintiff was transferred to the Jack Ryan Residence. (¶ 48.) He resided there until July 3, 2013, when he was transferred to another BRC facility called the Los Vecinos Residence. Plaintiff currently lives in the Los Vecinos Residence, which he describes as "a supportive, permanent housing program for the mentally ill and disabled people, which is owned, operated, and managed by BRC." (¶¶ 5, 83.) Plaintiff has thus "spent more than two years in BRC's transitional housing residences because he signed a contract with BRC promising him to be referred to suitable permanent housing." (¶¶ 213, 214.)

Plaintiff's "race" is "Arab," his "color" is "white," and his "national origin" is "Moroccan." (¶¶ 174-76.) Plaintiff alleges that defendants—as well as unnamed co-residents in BRC housing—intentionally discriminated against him because he is an Arab. Among other things, plaintiff claims defendants discriminated against him by (1) denying him the benefits of his "contract" with BRC, "on account of his race as Arab" (¶112); (2) failing to refer him to appropriate housing facilities (¶¶ 113, 121); (3) denying him access to medical and other records (¶¶ 114-15); (4) preventing him from complaining about his housing conditions—including the repeated sale of narcotics on site by violent co-residents—to various state or federal agencies (¶118, 230); (5) denying the security of plaintiff's person and property by allowing other residents to access his private locker, and preventing him from reporting the alleged theft of his laptop to the NYPD (¶¶ 52, 66-74, 116-17, 120, 131); and (6) falsely diagnosing him with mental illness for the purpose of securing financial gain. (¶ 122).

3

Plaintiff further claims that, due to his Arab race, defendants conspired with "Tonie Baez, DHS Senior Counsel, and Michael Yorio, Esq., OASAS Patient Advocacy Unit Manager . . . to deprive . . . [plaintiff] of equal protection of the laws" by "getting rid of Plaintiff without addressing his complaints." (¶¶ 78, 161-65.) Defendants allegedly conspired to prematurely move plaintiff from one residence (the Jack Ryan Residence) to another (the Los Vecinos Residence). As a result, plaintiff was "not able to secure prior to his move-out date, as all residents would, his DSS furniture allowance," thus forcing him to sleep "on a bare mattress without any sheets, pillow or blanket." (¶¶ 134-35.) This "premature" removal of plaintiff from the Jack Ryan Residence also denied plaintiff "full participation in any investigation as to the theft of his property," including the stolen laptop referenced above. (¶¶ 199-201.) Plaintiff claims that defendants transferred him from the Jack Ryan Residence in "retaliation" for his insistence on an investigation into the laptop theft, which was encouraged by defendants with their "knowledge and connivance." (¶¶ 131-32; 198-99.)

Although defendants "own, operate, and manage more suitable buildings than the one to which Plaintiff was removed," and "suitable assisted housing apartments remained available to other renters of a different protected class," plaintiff claims that he was "denied every opportunity to interview for suitable housing." (¶¶ 213, 214, 218, 221.) Defendants allegedly "intentionally" excluded plaintiff "in participation from [and] denied him the benefits of . . . their programs or activities receiving federal assistance" on account of his race (Arab), color (white) and national origin (Moroccan). (¶¶ 174-77.)

On account of the treatment outlined above, plaintiff seeks "injunctive relief, declaratory relief, compensatory damages, punitive damages, treble damages where applicable, liquidated

4

damages where applicable, and any other, further, just, and equitable relief by this Court." (¶ 17.)

## LEGAL STANDARDS

I. <u>Legal Standard for Judgment on the Pleadings</u>

Under Rule 12(c) of the Federal Rules of Civil Procedure, a defendant who has already filed an answer to a complaint may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). In deciding a Fed. R. Civ. P. 12(c) motion the court applies the same standard as it would in deciding a Rule 12(b) motion. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). In both postures, the court must accept all allegations in the complaint as true, drawing all reasonable inferences in the non-moving party's favor, and must decide whether the plaintiff has pled sufficient facts to state a claim for relief that is plausible on its face. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle plaintiff to relief. *Patel*, 259 F.3d at 126. In deciding such a motion, the court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns Inc. v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal citation omitted).

Where, as here, a plaintiff is proceeding *pro se*, that plaintiff "is entitled to a particularly liberal reading" of the complaint. *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Nevertheless, "to survive a motion to

dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark,* No. 11 Civ. 8955, 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012). Judgment on the pleadings is therefore proper where the court is satisfied that the complaint cannot state any set of facts that would entitle the non-moving party to relief.

II.  Conversion of Motion for Judgment on the Pleadings to Motion for Summary Judgment

Under Federal Rule of Civil Procedure 12(c), the court may consider, in its discretion and upon notice to all parties, materials outside the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988). However, Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Ordinarily, "this means that a district court must give notice to the parties *before* converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." *Sahu v. Union Carbide Corp.,* 548 F.3d 59, 67 (2d Cir. 2008) (internal citations and quotation marks omitted). The "'essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Id.* (quoting *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir. 1985)).

Defendants urge the court to convert the pending motion to a motion for summary judgment. The court declines to do so. While a close call, the facts and circumstances of this case do not merit a conversion to summary judgment. It is true that both parties submitted

matters outside the pleadings, and plaintiff may have been on notice of a possible conversion. For example, defendants' notice of motion—duly served on plaintiff—indicates that defendants seek an order granting "judgment on the pleadings or, in the alternative, granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure." (Dkt. No. 27.) Plaintiff filed five memoranda and declarations in response,[1] and submitted a number of exhibits outside the original pleadings. (See Dkt No. 38:1-7.) Plaintiff's opposition papers also indicate that he has, at minimum, some understanding of the differences between summary judgment and a Rule 12 motion. (Dkt. No. 38:1 at 11-13.)

Nevertheless, mindful of plaintiff's *pro se* status, the court declines to convert the motion at this juncture. *See generally Sledge v. Kooi*, 564 F.3d 105, 109-110 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements); *Tracy v. Freshwater*, 623 F.3d 90, 101-03 (2d Cir. 2010) (holding that *pro se* plaintiff's "voluminous motion practice, even if coupled with some degree of demonstrated competence in prior filings, is insufficient" to justify the withdrawal of the "special solicitude" normally applied to *pro se* parties). Plaintiff's *pro se* status is especially relevant because he asserts Section 1983 claims, and "a court should be particularly solicitous of *pro se* litigants who assert civil rights claims." *Tracy*, 623 F.3d at 102 (citing *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003)).[2]

---

[1] Plaintiff filed (1) Plaintiff's Answer to Defendant's Rule 56.1 Statement in Support of Their Motion to Dismiss Plaintiff's Complaint (Dkt. No. 36); (2) Plaintiff's Declaration in Support of His Rule 56(d) Request and His Opposition to Defendant's Motion to Dismiss (Dkt. No. 37); (3) Plaintiff's Memorandum of Law in Support of His Rule 56(d) Request and His Opposition to Defendant's Motion to Dismiss (Dkt. No. 38); (4) Plaintiff's Declaration In Support of His Opposition to Defendant's Reply at Docket Entries Nos. 46 and 47 (Dkt. No. 48); and (5) Plaintiff's Opposition to Defendant's Reply at Docket Entries Nos. 46 and 47 (Dkt. No. 49).

[2] The court notes that plaintiff has a history of sophisticated litigation in this district. *See Azkour v. Haouzi et al.*, No. 11 Civ. 5780; *Azkour v. Little Rest. Twelve*, No. 10 Civ. 4132. However, plaintiff was represented by counsel for

Because the court declines to convert the motion into one for summary judgment, the court is considering only the pleadings themselves in ruling on the present motion.

## DISCUSSION

### I. Counts I-VII: Sections 1983, 1981, 2000d, 1985, and 1986

Plaintiff brings claims for constitutional violations under 42 U.S.C. §§ 1983, 1981, 2000d, 1985, and 1986.

Plaintiff's claims all fail for a common reason: the complaint does not adequately plead facts that, if true, would entitle plaintiff to relief under any of these statutes.

#### i. Section 1983

In order to state a claim under Section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants; and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999).

##### a. The Corporate Defendant: BRC

Even reading the complaint liberally in light of plaintiff's *pro se* status, judgment on the pleadings is warranted in BRC's favor for the Section 1983 claim brought against the corporate entity. The complaint does not adequately plead that BRC—a private, non-profit entity—acted under color of state law or otherwise satisfies the "state action" requirement for Section 1983 claims. *See Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action"); *George v. Pathways to Hous., Inc.,* No. 10 CIV. 9505 ER, 2012 WL

---

parts of those cases. In any event, the court finds that plaintiff's litigation experience is not sufficient to justify converting the motion at this time.

8

2512964, at \*4 (S.D.N.Y. June 29, 2012) (holding that *pro se* plaintiff could not bring a Section 1983 claim against a private supportive housing provider "because they are private actors and Plaintiff has not alleged that they were acting under color of state law or that there was otherwise state involvement related to his claims"); *Reaves v. Dep't of Veterans Affairs*, No. 08–CV–1624 (RJD), 2008 WL 2853255, at \*2 (E.D.N.Y. July 22, 2008) (Section 1983 claim involving claim of unfair treatment with respect to public housing could not be brought against the Salvation Army because a private organization and its staff members are not state actors).

Plaintiff argues that BRC satisfies the "state action" requirement under the "public function" exception, or because it receives government funding and is subject to extensive state regulation. But "government funding of a private entity . . . no matter how extensive, is insufficient to transform otherwise private conduct into state action," and "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the state." *Young v. Halle Hous. Associates, L.P.*, 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001); *see also Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-59 (2d Cir. 2008). Contrary to plaintiff's claims, it is "well established that the provision of low-cost supportive housing is not a 'public function' within the meaning of section 1983, because 'the provision of housing, for the poor or for anyone else, has never been the exclusive preserve [of] the state.'" *George*, 2012 WL at 2512964, at \*4 (quoting *Young*, 152 F. Supp. 2d at 365). As a matter of law, the facts adduced by plaintiff fail to demonstrate that any challenged policy or act by BRC is the product of state action.

9

> b. The Individual Defendants: Lawrence a/k/a Muzzy Rosenblatt, Janet Forte, Tereen Llewelyn-Miller, Kevin Martin, Angela Kedzior, and John and Jane Does 1-5

As with the claims against BRC, plaintiff has failed to plead a plausible Section 1983 claim against any of the individual defendants.

Plaintiff claims that the individual defendants, "individually and in their official capacity, engaged in conducts under the color of New York State law," and are liable under Section 1983 because "they are a municipality's contractors and are supervisory officer or employees who were personally involved in the events underlying the present action." (¶¶ 1-2.) But in a 258-paragraph complaint, plaintiff mentions specific individual defendants in less than 10 paragraphs. (*E.g.*, Compl. ¶¶ 24, 45, 74, 78, 103, 105, 167.) Plaintiff claims that defendants Rosenblatt, Forte, Martin, and Llewelyn-Miller denied his request for BRC's files regarding its own investigation of his laptop theft, (Compl. ¶ 74), and that these same individuals conspired with counsel at DHS to dissuade plaintiff from filing claims against BRC for abuses or differential treatment. (Compl. ¶ 78.) He further claims that Kedzior, the BRC psychiatrist, "hyped" his diagnosis of mental illness, and that Rosenblatt enforced a policy obligating BRC's mental health staff to misdiagnose patients "so that BRC may financially benefit from the funds allocated to its mental health program by state and local agencies, as matched by federal funds." (Compl. ¶¶ 103, 105, 167.) Finally, plaintiff claims that Kedzior ignored his complaints about other residents' drug use and attacks on plaintiff, and refused to call him an ambulance when he complained of severe emotional distress. (Compl. ¶¶ 252-53.)

These allegations fail to state a claim under Section 1983. As with the corporate defendant, plaintiff has not alleged that defendants Rosenblatt, Forte, Llewelyn-Miller, Martin, Kedzior, or the unnamed "John Doe" defendants engaged in "state action." And, to the extent

10

plaintiff has alleged any "state action" by BRC, he has failed to show that any of the individual defendants were personally involved in the events giving rise to his claims. *See Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983"). Plaintiff's conclusory allegation that defendants "are supervisory officers or employees who were personally involved in the events underlying the present action" merely restates the law, but does not provide sufficient facts to state a claim. In sum, plaintiff "has not demonstrated that these private parties participated at all in the alleged constitutional torts, much less that they acted under color of state law." *See Traylor,* 486 F. App'x at 949-50 (citing *Reynolds v. Barrett,* 685 F.3d 193, 204 (2d Cir. 2012)).

### ii. Sections 1981 and 2000d

A plaintiff alleging a violation of Section 1981 must establish that: (1) he is a member of a racial minority group; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute, such as making and enforcing contracts. *Brown v. City of Oneonta, New York,* 221 F.3d 329, 339 (2d Cir. 2000). A plaintiff must make a similar showing of intentional discrimination to adequately allege a violation of Section 2000d.

#### a. The Corporate Defendant: BRC

Unlike Section 1983, Section 1981 does permit actions alleging discriminatory conduct against wholly private organizations. But the Section 1981 claim fails because, as discussed more fully below with reference to the individual defendants, the complaint does not include any non-conclusory allegation of discriminatory conduct or intent. Without more, the court cannot sustain a Section 1981 claim against BRC. *See George,* 2012 WL 2512964, at *7 (noting that

"conclusory allegations of racially motivated animus are insufficient") (internal citations omitted). Nor can the claim under Section 2000d claim survive without a plausible showing of intentional discrimination.

### b. The Individual Defendants

For similar reasons, the complaint does not state a claim under Section 1981 against any of the individual defendants. Plaintiff has not sufficiently alleged that the individual defendants intended to discriminate against plaintiff on the basis of race or that discrimination was a "substantial or motivating factor" for the defendants' actions, as is required to state a claim under Section 1981. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69-70 (2d Cir. 2001). The complaint is simply devoid of facts indicating that any of these defendants participated in any violation of plaintiff's constitutional rights on the basis of his race. Plaintiff's pleadings outline, at most, one specific instance of unnamed BRC employees refusing to intervene when *other residents*—not the individual defendants—verbally insulted plaintiff. This is not sufficient to state a 1981 claim or a claim under Section 2000d. *See Tolbert*, 242 F.3d at 69-70 (holding that under both Section 1981 and Section 2000d, a plaintiff must allege that defendant intentionally discriminated against him on the basis of race); *Hardin v. Meridien Foods,* No. 98–CV–2268, 2001 WL 1150344, *8, (S.D.N.Y. Sept. 27, 2001) ("Naked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory ...." (internal quotation marks omitted)).

Plaintiff's allegations regarding the personal involvement of defendants Rosenblatt and Kedzior in a supposed scheme to misdiagnose patients are somewhat more detailed. But plaintiff specifically claims that this alleged scheme was motivated by BRC's desire to "financially benefit from the funds allocated to its mental health program" by government agencies—*not* by

animus toward plaintiff because he is an Arab. (Compl. ¶ 103). Such actions, even if true, are not an actionable basis for claims under Sections 1981 or 2000d.

### iii. Sections 1985 and 1986

To state a claim under Section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. Section 1986 subjects a party to liability if he knew of acts conspired to be done under Section 1985 and could have—but failed to—prevent those acts. *Traylor v. Steward*, 486 F. App'x 948, 949-50 (2d Cir. 2012).

Plaintiff has not alleged any facts to support a claim that defendants Rosenblatt, Forte, Llewelyn-Miller, Martin, Kedzior, or the unnamed "John Doe" defendants conspired with others to deprive him of his constitutional rights. Most significantly, the complaint simply fails to "provide some factual basis supporting a meeting of the minds such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Arar v. Ashcroft*, 585 F. 3d 559, 569 (2d Cir. 2009) (internal quotation marks and citations omitted). Without adequately pleading the existence of an agreement involving any of the defendants, plaintiff cannot state a 1985 or 1986 claim. *See Emmerling v. Town of Richmond*, No. 10 Civ. 3246, 2011 WL 2315167, at *2 (2d Cir. 2011) (affirming dismissal of plaintiff's Section 1985 claim because plaintiff "provided only vague and conclusory allegations of conspiracy"); *see also Gropper v. Fine Arts Hous., Inc.*, No. 13 Civ. 2820, 2014 WL 1327964, at *6-7 (S.D.N.Y. Apr. 3, 2014) (accord).

Moreover, to the extent the complaint specifies a motive for any alleged conspiracy, it lists "financial gain and petty political considerations[.]" (*See* Compl. ¶¶ 161, 163, 169). Plaintiff has not pleaded a non-conclusory basis for finding that these events were the result of a common agreement to discriminate against him and deprive him of his constitutional rights. *See Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (holding that conclusory allegations of conspiracy are insufficient to plead claim for relief). And because plaintiff's Section 1985 claim fails, so too does his claim under Section 1986. *Traylor*, 486 F. App'x at 950 (affirming dismissal of Section 1986 claim when the related Section 1985 claim is inadequately pleaded).

## II. Counts VIII-IX: Sections 3604 and 3617

Plaintiff also brings claims under 42 U.S.C. § 3604 and § 3617, alleging both intentional discrimination and disparate treatment or impact discrimination.

Section 3604 (the Fair Housing Act) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [inter alia] . . . Section 3604." 42 U.S.C. § 3617. The implementing regulations interpret Section 3617 to cover "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons." 24 C.F.R. § 100.400(c)(2).

The complaint does not state a claim for violations of Section 3604. Like the other claims discussed above, these claims are conclusory and must be denied. As an initial matter, it appears that other agencies—not BRC or any of the individual defendants—controlled the specific type of supportive housing and other benefits available to plaintiff. In any event, plaintiff has not adequately pleaded that defendants treated similarly situated residents differently, or adequately connected plaintiff's Arab, Muslim or handicapped status with any supposed decision to move him "prematurely" to a different residence or to deny him alternative housing.

Nor does the complaint state a claim for violations of Sections 3617. Again, the allegations here are merely conclusory. The complaint does not include any facts sufficient to support any inference that there is a causal connection between plaintiff's complaints to BRC or his race or handicap on the one hand, and any adverse action taken against him by defendants on the other.

For all of the reasons discussed above, plaintiff's federal claims are dismissed against all defendants.

### Counts X-XI: New York State Claims

Plaintiff's complaint includes claims for gross negligence and negligent infliction of emotional distress under New York state law. However, having dismissed plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims. *See Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2d Cir. 2003).[3]

---

[3] Plaintiff claims that defendants have refused to comply with this court's November 8, 2013 order directing defendants "to provide identities of John/Jane Doe Defendant whom Plaintiff seeks to sue here and the addresses where these Defendants may be served" within sixty days. (Dkt. No. 8.) Plaintiff requests a contempt hearing regarding defendants' alleged refusal to comply with this order. (Dkt. Nos. 19, 20.) Defendants respond that, despite due diligence, they were unable to ascertain the names or addresses of the John/Jane Doe defendants, and

## LEAVE TO AMEND

While in general, *pro se* complaints should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives some indication that a valid claim might be stated, leave to amend is not necessary when it would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2012) (finding leave to replead would be futile when the complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe"). The problem with plaintiff's case is substantive—among other deficiencies, there is no state action at issue, and there is no reason to believe that any of the alleged actions taken by defendants were discriminatory. In these circumstances, leave to replead is not justified.

---

that it would be frivolous to name any BRC residents without substantiation. (Dkt. No. 21.) The court notes that plaintiff admits the "unimportance" of the laptop theft in "Plaintiff's overall allegations of discrimination and violation of his constitutional rights." (Dkt. No. 38 at 14-15.) And, these unnamed defendants were allegedly involved only in the theft of plaintiff's laptop—which constitutes the basis of only a state law claim, not a federal one. Because the court declines to exercise supplemental jurisdiction over plaintiff's state law claims, the court need not hold any such hearing, and denies plaintiff's request.

16

## CONCLUSION

For the reasons discussed above, defendants' motion for judgment on the pleadings is granted, and the case is dismissed with prejudice.

This opinion resolves the motion listed as item 27 on the docket. The Clerk of the Court is directed to terminate the motion and to close the case.

SO ORDERED.

Dated: New York, New York
March 23, 2015

THOMAS P. GRIESA
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/15