# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Hicham Azkour,

*Plaintiff,*

*v.*

City of New York, New York Police Department, New York Police Department Officers 1 to 20, Detective Yuriy Posternak, Detective Luis Torres, Sergeant Philip Sansone, Special Investigator Patrick Cahill, Sergeant Gaglione, Officer Hugues, Civilian Complaint Review Board, Bowery Residents' Committee, Inc., Lawrence Rosenblatt a/k/a Muzzy Rosenblatt, Janet Forte, Tereen Llewelyn-Miller, Kevin Martin, Kristin Shilson, Kimberly Penater a/k/a Kimberly Swedenberg, Sadiqua Khabir, Angela Kedzior, Abby Stuthers, Krystina de Jacq, Mary Gray, Brittany Nicholson, Jason Thomas, Todd Kelly, John Does 1 to 5, Jane Does 1 to 5, Pitt Street/HDFC, Rubin, Fiorella & Friedman LLP,

*Defendants.[1]*

Civil Action No. <u>1:13-cv-05878-TPG</u>

Jury Trial Demanded

## PLAINTIFF'S REQUEST FOR THE COURT TO DIRECT DEFENDANTS' COUNSEL TO DISCLOSE WRITTEN CONSENT FROM ITS CLIENTS AND ITS INSURANCE COVERAGE

---

[1] The caption in the Courts' Orders after July 20, 2016 do not conform with the caption of Plaintiff's First Amended Complaint and his ulterior filings with this Court. The Court is prayed to change the caption on its Orders and Opinions to reflect the parties involved in this action.

*Pro se* plaintiff, **HICHAM AZKOUR** ("Plaintiff") received a letter dated August 31, 2016 from the Charter Oak Fire Insurance Company ("Travelers"), *see* attached, informing Plaintiff that it has no duty to defend and/or any obligation to indemnify **RUBIN, FIORELLA & FRIEDMAN LLP** ("Law Firm Defendants") in the instant matter.

Therefore, it is evident that the Law Firm Defendants have now a financial interest in the outcome of this matter, including damages, fees, and costs for which they would be liable and incur in defending in this litigation.

Consequently, Plaintiff respectfully requests that the Court, prior to any submission by the BRC Defendants' counsel, direct the latter to produce and file a written consent from his clients authorizing him to represent them in the present matter as prescribed by Rule 1.7(b)(4) of the New York Rules of Professional Conduct, as amended through March 28, 2015.

As counsel to the BRC Defendants, the Law Firm Defendants should also zealously represent the interest of their clients in the present matter. However, by representing these current clients and defending themselves in the same action, where Plaintiff's First Amended Complaint alleges they had been engaging in aiding and abetting breach of fiduciary duty, there is an

actual conflict of interest – not a potential one, as claimed by counsel in his letter to the Court dated July 29, 2016.

Representation of the BRC Defendants will involve the Law Firm Defendants in representing differing interests. Rule 1.7(a)(1)[2]. Moreover, there is a significant risk that the Law Firm Defendants' professional judgment on behalf of the BRC Defendants will be adversely affected by the Law Firm Defendants' own financial and other personal interests. Rule 1.7(a)(2). Furthermore, if the Law Firm Defendants act as their own legal counsel while representing the BRC Defendants, such representation will certainly involve the assertion of claims against their clients. Rule 1.7(b)(3). In addition, any representation will compel the Law Firm Defendants to be witnesses and, thus, divulge confidential information, all in violation of Rule 1.6 and Rule 3.7(b)(2).

In his First Amended Complaint, Plaintiff brought claims against the Law Firm Defendants. These claims are based on facts arising when they, *as aiders and abettors*, committed an independent tort requiring them to make a conscious decision to participate in tortious activity for the purpose of

---

[2] *See* New York Rules of Professional Conduct as amended through March 28, 2015.

assisting the BRC Defendants in performing a wrongful act. *See, e.g.,* ¶¶ 238, 251, 253-254, 341, 360, 549-558, 599-620, and 728-746 of the First Amended Complaint. One participates in a breach of fiduciary duty to a third party if he or she affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed. *See Newberger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1074 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Brock v. Gerace,* 635 F.Supp. 563, 567 (D.N.J.1986) (act or omission which furthers or completes the breach). *See also Halberstam v. Welch,* 705 F.2d 472, 478 (D.C.Cir.1983) (advice or encouragement to act operates as moral support and has same effect on liability as participation or physical assistance).

In clear terms, the First Amended Complaint alleges that the Law Firm Defendants acted in bad faith and in concert with their clients. In other words, they conspired in their efforts to intimidate and coerce Plaintiff by (1) attempting twice to civilly commit him to a psychiatric hospital; (2) by dispatching two rogue NYPD detectives to his dwelling; and (3) by creating a hostile housing environment. And, as a matter of fact, while this action is pending, Plaintiff is still being subjected to the unlawful acts of the BRC Defendants and a severely hostile housing environment.

In this aiding and abetting context, the First Amended Complaint

alleges that the Law Firm Defendants' assistance in the unlawful conduct proximately caused the harm on which the liability is predicated. *Diduck v. Kaszycki & Sons Contractors*, 974 F.2d 270, 284 (2d Cir. 1992). The First Amended Complaint unambiguously alleges more than but-for causation. It also alleges that Plaintiff's injury was "a direct or reasonably foreseeable result of the conduct." *Id.* Therefore, Plaintiff's causes of action against the Law Firm Defendants satisfy the three requirements for a defendant's participation in a breach of fiduciary duty, as articulated in *Diduck,* 974 F.2d at 280-281. The Second Circuit held that the elements of a cause of action for participation in a breach of fiduciary duty are: (1) breach by a fiduciary of a duty owed to plaintiff; (2) defendant's knowing participation in the breach; and (3) damages. *Id.*

This being said, one may confidently conclude that the Law Firm Defendants owed a duty to Plaintiff as a third party by properly advising their clients to cease and desist from furthering their unlawful acts while represented before this Court. Instead, they intelligently participated in the furtherance of said acts, which harmed Plaintiff and caused him substantial material and emotional damages. They cannot now claim that they are not liable to Plaintiff or immune from suit. In this respect, the Supreme Court of the United States held that an attorney may be subject to liability for a

5

breach of a duty to a third party even though there is no attorney-client relationship between them. *See Moore v. Weinberg,* 383 S.C. 583, 588, 681 S.E.2d 875, 878 (2009) (recognizing a duty under the facts of the case that arose "from an attorney's role as an escrow agent and is independent of an attorney's status as a lawyer and distinct from duties that arise out of the attorney/client relationship"). In a different opinion, the Supreme Court also held:

> A number of jurisdictions recognize that an attorney may be held liable where he acts in bad faith or for his own personal motivations. *See generally Annotation* 97 ALR 3rd 688 (attorney's liability for abuse of process); *Annotation* 46 ALR 4th 249 (attorney's liability for malicious prosecution). *See also* RESTATEMENT (SECOND) OF TORTS § 674, comment d (attorney who acts without probable cause for an improper purpose is subject to same liability for the wrongful use of civil proceedings as any other person). Moreover, several courts have held that an attorney may be held liable arising out of a conspiracy with his client. *See e.g., Wolfrich Corp. v. U.S. Automobile Assn.,* 149 Cal. App.3d 1206, 197 Cal.Rptr. 446 (1983) (attorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy); *Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 260 Cal.Rptr. 183, 775 P.2d 508 (1989); *Fraidin v. Weitzman,* 93 Md.App. 168, 611 A.2d 1046 (1992) (attorney liable for conspiracy if actively involved in wrongful conduct). Additionally, attorneys have been held liable for fraud and conversion in conjunction with their representation of clients. *See, e.g., L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372 (Minn.1989) (attorney who makes affirmative misrepresentations to an adversary or

conspires with his or her client may be held liable for fraud); *Pew v. First National Bank,* 827 F.2d 1488 (11th Cir.1987); *Bongard v. Winter,* 516 So.2d 27 (Fla.App.1987); *Guilleabeau v. Jenkins,* 182 Ga.App. 225, 355 S.E.2d 453 (1987) (implying that an attorney may be sued by an adversary for fraud); *LaBarre v. Gold,* 520 So.2d 1327 (Miss.1987) (attorney liable for conversion for improperly paying real estate proceeds only to his client).

Consistent with *Gaar* and the above cited cases, we find that an attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client. Accordingly, we hold that the trial court erred in dismissing the complaint on the basis that *Gaar* provides absolute immunity to an attorney under any and all circumstances.

*See Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995).

Consequently, the Court's Order dated August 1, 2016, <u>Docket Entry No. 78</u>, appears to ignore that the Law Firm Defendants may be liable to Plaintiff. It is thus not consistent with the Supreme Court's aforementioned decisions in *Stiles* and *Moore.* By allowing the Law Firm Defendants to answer or seek dismissal of the First Amended Complaint on behalf of their clients without (1) first obtaining their written consents and (2) demonstrating to this Court that they will have no financial interest in the outcome of the present matter, one may easily and fairly conclude that said Order does not serve the interest of justice.

**WHEREFORE**, Plaintiff respectfully request that the Court:

1. Order counsel to the BRC Defendants to file with the Court written consents from his or its clients authorizing RUBIN, FIORELLA & FRIEDMAN LLP to represent them in the instant matter;

2. Order the Law Firm Defendants to disclose, if any, their insurance coverage; and

3. Order the Law Firm Defendants to demonstrate to this Court that, in the absence of any coverage, their financial interest in the outcome of this case will not affect their representation of the BRC Defendants and further delay this litigation.

Respectfully submitted on September 12, 2016,

By:   Hicham Azkour, *pro se*

_____





**Robert Koloski**

(631) 577-7409
(866) 889-8376 (fax)

P.O. Box 430
Buffalo, NY 14240-0430

August 31, 2016

Rubin, Fiorella & Friedman LLP
630 3rd Ave, Floor 3
New York, NY 10017
Attn: Kenneth S. Fiorella

RE:   Hicham Azkour,
Plaintiff, v.
City of New York, New York Police
Department, New York Police Department
Officers 1 to 20, Detective Yuriy Posternak,
Detective Luis Torres, Sergeant Philip
Sansone, Special Investigator Patrick Cahill,
Sergeant Gaglione, Officer Hugues, Civilian
Complaint Review Board, Bowery Residents'
Committee, Inc., Lawrence Rosenblatt a/k/a
Muzzy Rosenblatt, Janet Forte, Tereen
Llewelyn-Miller, Kevin Martin, Kristin
Shilson, Kimberly Penater a/k/a Kimberly
Swedenberg, Sadiqua Khabir, Angela Kedzior,
Abby Stuthers, Krystina de Jacq, Jason
Thomas, Todd Kelly, John Does 1 to 5, Jane
Does 1 to 5, Pitt Street/HDFC, Rubin, Fiorella
& Friedman LLP,
Defendants.

United States District Court For the Southern District of New York

| | |
|---|---|
| Policyholder: | Rubin, Fiorella & Friedman LLP |
| Plaintiff: | Hichan Azkour |
| D/L: | (from December 08, 2010, Plaintiff's date of eviction for apartment) |
| Our Claim #: | E7E5045 |
| Primary Policy #: | 680-97K16175, July 13, 2010 through July 13, 2016 |
| Excess Policy#: | CUP-4050Y406, July 13, 2010 through July 13, 2016 |

Dear Mr. Fiorella:

This letter will serve to acknowledge receipt of the above captioned United States District Court, Southern District of New York, Proposed First Amended Complaint, Civil Action No. 1:13-cv-05878-TPG matter and will advise you of The Charter Oak Fire Insurance Company (hereinafter "Travelers") determination that it has no duty to defend and or any obligation to indemnify, Rubin, Fiorella & Friedman LLP in this matter. This decision is pursuant to the Commercial General Liability policies issued by Travelers to Rubin, Fiorella & Friedman LLP, policies numbered, 680-97K16175, July 13, 2010 through July 13, 2016 and Excess policies numbered, CUP-4050Y406, July 13, 2010 through July 13, 2016, (the policies).

In regards to this matter, the complainant, Hicham Azkour has charged Rubin, Fiorella & Friedman LLP with unlawful discrimination actions regarding the Americans with Disabilities Act, the New York City Human Rights Laws and New York State Human Rights Laws.

G. CAUSES OF ACTION

IV. Unlawful Discrimination in Violation of 42 U.S.C. 1981 as to the BRC Defendants and the City Defendants

V. Unlawful Retaliation in Violation of 42 U.S.C. 1981 as to the BRC Defendants

VI. Unlawful Discrimination in Violation of 42 U.S.C. 3604 as to the BRC Defendants

VII. Unlawful Intimidation, Coercion, Threats, and Interference in Violation of 42 U.S.C. 3617 as to the BRC Defendants and the Law Firm Defendants

VIII. Unlawful Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973

IX. Unlawful Discrimination in Violation of 42 U.S.C. 12132 (Title II of the Americans with Disabilities Act)

X. Violation of Plaintiff's Rights Under the First Amendment to the United States Constitution as to the BRC Defendants, the City Defendants, and the Law Firm Defendants

XIII. False Arrest as to the BRC Defendants and the City Defendants

XIV. False Imprisonment as to the BRC Defendants and the City Defendants

XV. Medical Malpractice as to the BRC Defendants

XVI. Fraudulent Concealment as to the BRC Defendants

XVII. Gross Negligence as to the BRC Defendants

XVIII. Negligent Infliction of Emotional Distress as to all Defendants

XIX. Intentional Infliction of Emotional Distress as to all Defendants

The complaints filed by Hicham Azkour reflects intentional conduct and intentional acts.

The recitation above does not imply that Travelers accepts the allegations as true, but only provides a basis for the coverage evaluation.

In accordance with policy provisions and case law, coverage does not apply to punitive damages, treble damages, exemplary damages, fines or penalties alleged or recoverable in the captioned matter, or for costs associated with injunctive, enjoinment, equitable, or declaratory relief.

We refer you to the applicable section of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01** and its amendment **NEW YORK CHANGES COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG F2 63 08 11** contains the following Insuring Agreement which provides, in relevant part:

### SECTION I-COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

                 \*             \*             \*

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period;

                 \*             \*             \*

The policies provide the applicable definitions as follows:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

\*    \*    \*

The following exclusions, set forth in Section I., A, 2. of the policy, serve to preclude coverage in the instant matter and provide, in relevant part:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

The claims against Rubin, Fiorella & Friedman LLP do not result from an "occurrence," as defined by the policies. As a general matter, a policy of insurance is considered to cover fortuitous or accidental events. There is no indication that any of the plaintiff's complaints of acts or conduct by Rubin, Fiorella & Friedman LLP were fortuitous or accidental in nature. Any claims against Rubin, Fiorella & Friedman LLP alleging deliberate, willful or intentional acts or conduct or awards based upon such claims are not covered under the policy. In addition, the damages, which are claimed by the claimant are not damages because of "bodily injury" or "property damage" as defined in the policy.

Should it be determined that the plaintiff's claims for damages constitute compensatory damages, because of "bodily injury" or "property damage" caused by an "occurrence" which Travelers expressly denies, then such damages recovered by the plaintiff constitute "bodily

injury" or "property damage" expected or intended by Rubin, Fiorella & Friedman LLP, and are expressly excluded by Exclusion a. of the policies.

Section I, B. of the Commercial General Liability Coverage Form of the policy contains the following Insuring Agreement which provides, in relevant part:

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

*        *        *

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*        *        *

The policy provides the following applicable definitions:

14.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

*        *        *

The following exclusions, set forth in Section I., B, 2. of the policy, serve to preclude coverage in the instant matter and provide, in relevant part:

**2. Exclusions**

This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**d. Criminal Acts**
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

In addition, please refer to Endorsement CG D1 42 01 99, **EXCLUSION DISCRIMINATION**, attached to the policy modifies the insurance provided under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** and provides, in relevant part:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

PROVISIONS

1. **COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY-**
   Is amended by adding the following additional exclusion:

   (This insurance does not apply to: )

   "Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

2. **COVERAGE B- PERSONAL AND ADVERTISING INJURY LIABILITY-**
   Is amended by adding the following additional exclusion:

   (This insurance does not apply to:)

   "Personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

In addition to the previously cited exclusionary language which serves to bar coverage in the instant matter, the above referenced endorsement which is added to the policy further serves to preclude coverage. The Complainant charges that Rubin, Fiorella & Friedman LLP, have committed unlawful discriminatory practices because of discrimination. This insurance does not apply to "bodily injury" or "personal injury" resulting from or as a consequence of discrimination, as outlined in the above endorsement.

We now refer you to endorsement CG D3 37 02 05 and UM 04 23 02 05, **PROFESSIONAL SERVICES EXCLUSION- LEGAL SERVICES**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2.
Exclusions of Section I –Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2. Exclusions of Section I-Coverage B- Personal and Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of

1. The rendering of or failure to render any professional legal services by or on behalf of any insured;
2. The service by any person as a member of a disciplinary, standards review, peer review, ethics review or equivalent professional board or committee or member in any professional organization or committee.

This exclusion applies even if the claim against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

We understand that you provided legal services representing Bowery Residents Committee, Inc. (BRC) in the initial complaint brought by Hicham Azkour. As such, the above exclusionary endorsement serves to preclude coverage for this action because it arises out of your professional services.

Consequently, Travelers has no duty to defend and/or any obligation to indemnify Rubin, Fiorella & Friedman LLP in this matter under the Commercial Insurance, General Liability policy and will take no further action.

Also, Travelers issued you a Commercial Excess Liability (Umbrella) Insurance policy referenced above, which is excess over your primary Commercial General Liability Policy, for the same policy period (the "Excess policies"). The Insuring Agreement of the Excess policy provides that Travelers will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies. Travelers is not liable under the Excess policy to pay for the "ultimate net loss" until the insured's liability is established by court decision or by written agreement between all parties in interest and the amount of the "applicable underlying limit" is paid by the insured. Travelers is not aware of any information and has not been provided documentation substantiating that the referenced claim has, in fact, exceeded the "applicable underlying limit" of the Excess policy or that liability has been established against you**,** by verdict or written agreement. Moreover, coverage is not afforded under the Excess policy for

those reasons noted above regarding the underlying primary Commercial General Liability Policy.

The above is based upon the information available to us. If this information is incorrect or if there is additional factual information of which you are aware, we invite you to bring it to our attention for consideration.

Travelers reserves the right to supplement its declination and will review any additional information not currently known that could change our current position regarding this matter.

If you have any information that you feel affects this coverage position, Travelers will certainly review the information and revisit this coverage determination. If you need clarification, disagree with this coverage position, or have any other questions please contact the undersigned at 631-577-7409.


Sincerely,


Robert Koloski



c.c.

Hicham Azkour
93 Pitt Street, Apt. 3B
New York, NY 10002


Alliant Ins Services Inc
320 W 57th Street
New York, NY 10019