# United States Court of Appeals
## For the First Circuit

———————————

No. 14-2145


UNITED STATES OF AMERICA ex rel. JEFFREY D'AGOSTINO,

Plaintiff, Appellant,

STATE OF CALIFORNIA, ET AL.,

Plaintiffs,

v.

EV3, INC., JOHN HARDIN, MICROTHERAPEUTICS, INC.,

and BRETT WALL,

Defendants, Appellees.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

———————————

Before

Howard, Chief Judge,
Selya and Lipez, Circuit Judges.

———————————


    Daniel R. Miller, with whom Susan Schneider Thomas, Berger &
Montague, P.C., Lynn Weissberg, Jonathan Shapiro, and Stern,
Shapiro, Weissberg & Garin LLP were on brief, for appellant.
    Joshua S. Levy, with whom Mitchell Stromberg, Bryan
Pennington, and Ropes & Gray LLP were on brief, for appellees ev3,
Inc. and Microtherapeutics, Inc.

Stephen G. Huggard, with whom Elizabeth H. Kelly and Locke Lord LLP were on brief, for appellee John Hardin.

Martin F. Murphy, Amanda S. Hainsworth, and Foley Hoag LLP on brief for appellee Brett Wall.

———————————————

September 30, 2015

———————————————

**SELYA**, **Circuit Judge**.   Plaintiff-appellant Jeffrey D'Agostino (the relator) challenges both the dismissal of his qui tam action and the antecedent denial of leave to further amend his complaint.  For obvious reasons, we consider the second challenge first.  That challenge rests in part on a novel interpretation of the 2009 amendments to Rule 15 of the Federal Rules of Civil Procedure.   While we reject that novel interpretation, we nonetheless conclude that the district court appraised the relator's request for leave to amend under the wrong legal standard.  Consequently, we vacate the judgment below and remand for further proceedings.

## I.  BACKGROUND

In October of 2010, the relator filed a qui tam action on behalf of the United States, twenty-five states, and the District of Columbia.  His complaint named his former employer — ev3, Inc. — as the sole defendant and asserted a golconda of claims under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, and analogous state statutes.  The gravamen of these claims was the charge that ev3 had engaged in improper conduct in connection with the manufacturing and marketing of two medical devices (Onyx and Axium) and had knowingly caused health-care providers to submit false claims to various government entities.

The complaint was filed under seal and service was initially suspended.  See id. § 3730(b)(2).  In February of 2011, the relator exercised his unilateral right to file an amended complaint as a matter of course.  See Fed. R. Civ. P. 15(a)(1). The relator thereafter filed second and third amended complaints (in August 2012 and April 2013, respectively), having obtained leave of court in each instance.  These amendments added five defendants and reconfigured the relator's legal theories.

The action remained under seal while the United States looked into the relator's charges.  In October of 2013, the United States decided not to intervene.  See 31 U.S.C. § 3730(b)(4)(B). The court thereafter unsealed the docket and authorized service of process.  The following May, the parties jointly moved to have the district court set a deadline of June 30 for the filing of motions to dismiss and July 25 for the filing of the relator's opposition. The court obliged and, in the process, made clear that it would grant no further extensions of these deadlines.

The defendants timely filed their motions to dismiss. They argued that the court lacked jurisdiction by reason of the FCA's public disclosure bar, see id. § 3730(e)(4), and that the third amended complaint failed either to state a cognizable claim or to plead fraud with sufficient particularity.  About a week later, the court entered a scheduling order pursuant to Federal

Rule of Civil Procedure 16(b), which set forth a series of temporal benchmarks that would take effect after it decided the motions to dismiss. The order did not set a deadline for amendments to the pleadings.

Four days before his opposition to the motions to dismiss was due, the relator filed a fourth amended complaint. This edition of the complaint dropped claims against two defendants, abandoned certain legal theories, and added factual allegations responsive to the motions to dismiss. Instead of requesting leave to amend, the relator filed an accompanying motion asserting that he had an absolute right to amend his complaint under Federal Rule of Civil Procedure 15(a)(1) and asking the district court to set a new briefing schedule.

The defendants moved to strike the fourth amended complaint, arguing that the relator had already exhausted his one amendment as of course. They added that the court should not treat his motion as a request for leave to amend. The court agreed that the relator had used up his one-time right to amend as a matter of course. But the court construed the relator's filings liberally as a request for leave to amend, concluded that Rule 16(b)'s "good cause" standard governed the request, and held that the relator had not established good cause for amending his complaint once again. Accordingly, it granted the motion to strike.

The relator subsequently filed his opposition to the motions to dismiss,[1] which included a short section conditionally requesting leave to amend the complaint further should the court determine that any claims were subject to dismissal. Counsel reiterated that request several times at the ensuing hearing on the motions to dismiss. The district court reserved decision and subsequently dismissed the case with prejudice. In its written rescript, the court concluded that the FCA's public disclosure bar deprived it of jurisdiction over certain allegations. See United States ex rel. D'Agostino v. ev3, Inc., No. 10-11822, 2014 WL 4926369, at *5-6 (D. Mass. Sept. 30, 2014). As to the remaining allegations, the court ruled that the third amended complaint failed to identify any false claims with the specificity demanded by Federal Rule of Civil Procedure 9(b) and also failed to state a cognizable claim. See id. at *6-9. The court's rescript did not address the relator's conditional request for leave to amend.

## II.  ANALYSIS

On appeal, the relator advances two basic claims of error. First, he contends that the district court improperly thwarted his efforts to amend his complaint. Second, he challenges

---

[1] By a separate filing, the relator voluntarily dismissed his claims against the two defendants whom he had dropped in the proposed fourth amended complaint.

the court's dismissal of his complaint and the subsidiary legal determinations undergirding that dismissal.  We start — and end — with the first claim of error.

We review the grant or denial of leave to amend for abuse of discretion.  See Nikitine v. Wilmington Trust Co., 715 F.3d 388, 389 (1st Cir. 2013).  In conducting this tamisage, we defer in substantial measure to the trial court's hands-on judgment and, thus, we will affirm "so long as the record evinces an arguably adequate basis for the court's decision."  Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001). This deference, though, is not boundless.  A trial court may abuse its discretion when, among other things, it adopts and applies the wrong legal rule.  See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir. 2000).

To put the relator's assignment of error in perspective, we rehearse the applicable procedural framework.  Requests to amend a complaint are typically evaluated under Rule 15, which provides that

> [a] party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  Once a party has exhausted its one-time right to amend as a matter of course, it may make further amendments only with the opposing party's consent or with leave of court.  See id. 15(a)(2).  The rule cautions, however, that the court should "freely give" leave to amend where the interests of justice so require.  Id.

At a certain point, this amendment-friendly regime may cease to govern.  Rule 16 directs a district court to issue a scheduling order charting the anticipated course of the litigation.  See id. 16(b)(1).  One customary element of such an order is a deadline for amending the pleadings.  See id. 16(b)(3)(A).  Such a deadline, like other deadlines contained in a scheduling order, may be modified only upon a showing of "good cause."  Id. 16(b)(4).  Thus, when a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order, Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard.  See, e.g., Cruz v. Bristol-Myers Squibb Co., P.R., Inc., 699 F.3d 563, 569 (1st Cir. 2012); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008).

Against this backdrop, we turn to the relator's assignment of error.  To begin, he hypothesizes that Rule 15(a)(1) granted him an absolute right to file the fourth amended complaint

without first obtaining leave of court.  This hypothesis is nothing more than wishful thinking.

Rule 15(a)(1) explicitly states that a party is entitled to amend "<u>once</u> as a matter of course."  Fed. R. Civ. P. 15(a)(1) (emphasis supplied); <u>see</u> <u>United States ex rel. Poteet</u> v. <u>Bahler Med., Inc.</u>, 619 F.3d 104, 116 (1st Cir. 2010).  The relator took advantage of this one-time opportunity in February of 2011 when he filed his first amended complaint.  Absent the defendants' consent — never obtained here — the relator was therefore obligated to secure leave of court before any further amendments to his complaint could be effected.

The relator demurs.  He reasons that, pursuant to the 2009 revisions to Rule 15, amendment as a matter of course may be made "within . . . 21 days after service of" a defendant's answer or responsive motion, Fed. R. Civ. P. 15(a)(1)(B), so such amendments may be made whenever such an action has occurred.  Under this construction, his right to amend as a matter of course renewed each time the defendants filed a responsive pleading (either an answer or a responsive motion) to a particular version of the complaint.[2]

---

[2] At oral argument, the relator's counsel disclaimed any reliance on a theory that service of the complaint is required to

This tortured interpretation of Rule 15 not only defies common sense but also runs contrary to the historic structure of Rule 15 and to the stated purpose of the 2009 amendments to the Rule. Prior to those amendments, Rule 15(a)(1) stated:

> A party may amend its pleading once as a matter of course:
>
> (A) before being served with a responsive pleading; or
>
> (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

Fed. R. Civ. P. 15(a)(1) (2009). This language made plain that a plaintiff is allowed to amend as a matter of course at any time between filing his complaint and receiving the defendant's answer. But the 2009 revisions did not purpose to alter the time at which a plaintiff can first amend as a matter of course. The absence of such a change is understandable: those revisions were intended primarily to remedy inefficiencies created by granting plaintiffs the unconditional right to amend as a matter of course at any time before an answer was filed (regardless of how much litigation and discovery activity had occurred in the interim). See 6 Charles Alan Wright et al., Federal Practice and Procedure, § 1483 (3d ed.

---

trigger the right to amend as of course under Rule 15(a)(1)(A). Accordingly, we take no view on that theory.

2010).  To that end, the drafters made "three changes in the time allowed to make one amendment as a matter of course."  Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment.

Two of these changes are arguably relevant here.[3]  The Rule was revised so that "the right to amend once as a matter of course [now] terminates 21 days after service of a motion under Rule 12(b)" and "is no longer terminated by service of a responsive pleading."  Id.  The advisory committee's focus on the time at which the right to amend terminates and its concomitant silence concerning changes to when such an amendment may first be made makes abundantly clear that, in this context, the word "within" merely specifies the point at which the right expires.

Nothing else in either the text of Rule 15 or in the advisory committee's notes evinces an intent to confine amendments as a matter of course under Rule 15(a)(1)(B) to a narrow window following service of an answer or responsive motion.  Nor do these materials evince any intent to rescind the historic limitation of amendment as a matter of course to one such amendment per plaintiff per case.  The Rule's traditional restriction of amendments as a

---

[3] The third change addressed the amendment of pleadings to which no responsive pleading is required.  That provision is not implicated here.

matter of course to one per plaintiff per case was not modified.
Had the drafters intended so dramatic a change in long-settled
procedure, they surely would have chosen language indicating as
much and explained this change in the commentary.  Here, however,
the advisory committee's notes imply the contrary; they discuss
changes only to the time at which the right to amend as a matter
of course terminates.

    To say more on this point would be supererogatory.  We
hold, without serious question, that a plaintiff may amend a
complaint only once as a matter of course under Rule 15(a)(1).  It
follows that the district court did not err in concluding that the
relator exhausted his one-time right to amend as a matter of course
when he filed his first amended complaint in February of 2011.

    This brings us to the relator's claim that even if he
did not have an unfettered right to amend his complaint in July of
2014, the district court abused its discretion by appraising the
proposed amendment under the wrong legal standard.  While the
district court might have struck the fourth amended complaint on
the ground that the relator filed it without requesting leave to
amend, that is not what happened.  Instead, the court construed
the relator's filing as an implicit request for leave to amend.
We defer to this reasonable construction of the relator's filing.
Cf. Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d

57, 71 (1st Cir. 2001) (construing new argument raised in opposition to motion for judgment as a matter of law as a request for leave to amend).

Having decided that the question of leave to amend was properly before it, the court proceeded to answer that question by applying Rule 16(b)'s good cause standard.  In the circumstances of this case, that was error.  Cf. Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (per curiam) (holding that the good cause standard, rather than the leave freely given standard, applies when a scheduling order sets a deadline for amending the pleadings).

As we previously explained, requests for leave to amend are normally evaluated under Rule 15(a)'s leave freely given standard.  When made in derogation of a scheduling order, however, Rule 16(b)'s more stringent good cause standard takes precedence. See id.  But in this case the district court's scheduling order did not specify any deadline for amending the pleadings and, thus, the gears of Rule 16(b) were not engaged.

Notwithstanding this omission in the scheduling order, the court applied Rule 16(b).  It reasoned that use of the good cause standard was an appropriate way to sanction the relator for requesting leave to amend within a matter of days before his

opposition to the dismissal motions was due.   This reasoning is unpersuasive.

   When a litigant seeks leave to amend in defiance of a deadline delineated in a scheduling order, the rationale for applying an elevated good cause standard is both obvious and pragmatic.   Were a district court powerless to enforce such deadlines, scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient.   See O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004).   Properly deployed, the elevated good cause standard puts teeth into Rule 16(b) scheduling orders and "preserves the integrity and effectiveness of [such] scheduling orders."   Id.   In other words, the specter of Rule 16(b)'s less amendment-friendly standard acts as one of the sticks through which compliance with a scheduling order is enforced.

   Deployment of the good cause standard was not warranted here.  Since the scheduling order in this case did not even mention amendments to the pleadings, let alone impose any deadlines for the filing of amended pleadings, moving to amend did not show any disrespect for court orders.   Moreover, the relator had neither notice that an elevated standard would be applied to his motion nor any reason to expect that it would.   Basic notions of due process counsel that litigants are entitled to rely on established

procedural rules — and those rules cannot be altered at a court's whim.  Cf. Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.").

The fact that the relator sought to amend only a few days before his opposition to the dismissal motions was due does not justify a different result.  At any rate, Rule 15(a)'s leave freely given standard typically applies even where a party requests leave to amend after a motion to dismiss has been fully briefed. See, e.g., Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  If the court concluded that the relator was attempting to torpedo its briefing schedule, that conclusion could be a proper factor in its Rule 15(a)(2) calculus, see Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517-18 (1st Cir. 1989), but it could not be a permissible ground for employing a more stringent standard.

The defendants contend that the court's failure to specify a deadline for amending the pleadings is irrelevant because the court must have thought — based on the travel of the case — that there would be no further amendments to the complaint when it issued its scheduling order.  But nothing of this sort is apparent

from the record, and the relator could not be expected to divine from the district court's silence that future amendments were either off limits or would be subjected to a more stringent standard of review. See Weisburgh v. Fidelity Magellan Fund (In re Fidelity/Micron Sec. Litig.), 167 F.3d 735, 737 n.1 (1st Cir. 1999). We hold, therefore, that the district court erred in applying Rule 16(b)'s good cause standard to the relator's proposed fourth amended complaint.

The matter of remedy remains. Ordinarily, a district court's application of an erroneous legal standard is a per se abuse of discretion, which necessitates remand. See In re Grand Jury Subpoena, 138 F.3d 442, 444, 445-46 (1st Cir. 1998). There is, however, a narrow exception for instances in which application of the correct legal standard can lead to only one result. See id. at 446. Where uncertainty lurks, remand is the appropriate course. See United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733-34 (1st Cir. 2007).

We cannot say with certainty that the district court would not have allowed the fourth amended complaint if it had applied the appropriate legal standard. Rules 15(a) and 16(b) engender different inquiries. See O'Connell, 357 F.3d at 155. Here, the district court made no findings sufficient to permit us

to predict confidently how it would have ruled under the Rule 15(a) standard.[4]

Let us be perfectly clear.  We do not suggest that the district court will be compelled to grant the motion to amend on remand.  After all, there are myriad reasons that might justify the denial of a motion for leave to amend, including undue delay, repeated failure to cure deficiencies, or futility.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  "The number and nature of prior amendments to a complaint" are also relevant considerations.  ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 56 (1st Cir. 2008).  The rub, however, is that the district court did not address these factors in any meaningful way, and none of them appears to mandate the denial of leave to amend.  In the last analysis, the matter is one committed to the sound discretion of the district court, and the relator is entitled to have the district court exercise that discretion under the proper legal standard.

---

[4] To be sure, the district court's order denying leave to amend alludes conclusorily to prejudice to the defendants.  However, that order provides no detail; and the possibility that the defendants will be seriously prejudiced by allowing amendment at this relatively early stage of the litigation seems sufficiently remote to warrant remanding the matter to the district court for further consideration.

III.  CONCLUSION

        We need go no further.[5]  For the reasons elucidated above, the judgment below is vacated and the case is remanded for further proceedings consistent with this opinion.  All parties shall bear their own costs.


**Vacated and remanded.**

_____

    [5] Because we are uncertain of what result the district court will reach when it applies the correct legal standard to the relator's request to file the fourth amended complaint, we take no view of the substantive issues briefed by the parties. There is simply too great a risk that any decision concerning those issues will turn out to be purely advisory. See United States v. Tyerman, 641 F.3d 936, 936 n.2 (8th Cir. 2011) (declining to address additional issues raised on appeal where it was "unknown if and how th[e] case w[ould] proceed on remand").