Index No. 13 Civ. 5878 (TPG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HICHAM AZKOUR,

Plaintiffs,

-against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK POLICE
DEPARTMENT OFFICERS 1 TO 20, DETECTIVE
YURIY POSTERNAK, DETECTIVE LUIS TORRES,
SERGEANT PHILIP SANSONE, SPECIAL
INVESTIGATOR PATRICK CAHILL, SERGEANT
GAGLIONE, OFFICER HUGHES, CIVILIAN
COMPLAINT REVIEW BOARD, BOWERY
RESIDENTS' COMMITTEE, INC., LAWRENCE
ROSENBLATT A/K/A MUZZY ROSENBLATT,
JANET FORTE, TEREEN LLEWELYN-MILLER,
KEVIN MARTIN, KRISTIN SHILSON, KIMBERLY
PENATER A/K/A KIMBERLY SWEDENBERG,
SADIQUA KHABIR, ANGELA KEDZIOR, ABBY
STUTHERS, KRYSTINA DE JACQ, JASON THOMAS,
TODD KELLY, JOHN DOES 1 TO 5, JANE DOES 1
TO 5, PITT STREET/HDFC, RUBIN, FIORELLA &
FRIEDMAN LLP,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(F) AND 12(B)(6)

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Anthony DiSenso*
*Tel: (212) 356-2640*
*Matter #: 2016-0362223*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF RELEVANT FACTS .............................................................. 2

STANDARD OF REVIEW .................................................................................. 6

      A.  Rule 12(f) Standard of Review ........................................................ 6

      B.  Rule 12(b)(6) Standard of Review ................................................... 7

ARGUMENT

    I.   THE COURT SHOULD STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT AS PLED AGAINST THE CITY DEFENDANTS BECAUSE PLAINTIFF VASTLY EXCEEDED THE SCOPE OF THE LEAVE TO AMEND GRANTED BY THE COURT ........................................................................................ 7

    II.  THE VAST MAJORITY OF CLAIMS PLED AGAINST THE CITY DEFENDANTS IN THE FIRST AMENDED COMPLAINT FAIL AS A MATTER OF LAW ............................................................................... 10

      A.  Plaintiff Fails to State a Cognizable Fourth Amendment Claim Against Gaglione Because Probable Cause Existed to Involuntarily Hospitalize Plaintiff Based on the Statements of a Complaining Witness ............................................... 10

      B.  Plaintiff's Failure to Investigate Claims Against Sansone and Cahill Must Be Dismissed Because the Investigators Did Not Have a Duty to Investigate Plaintiff's Claims ........................................ 12

      C.  Plaintiff's Claims Alleging Discrimination Under Equal Protection, 42 U.S.C. 1981, the Americans with Disabilities Act, and 42 U.S.C. 2000d Fail Because the First Amended Complaint Fails to Plausibly Plead That Any of the City Defendants' Actions Were Motivated by Discriminatory Animus ........................................ 13

Page

D. Plaintiff Fails to Plausibly State a Claim for First Amendment Retaliation Against Gaglione ................................. 14

E. Plaintiff Fails to Plead Any Cognizable Claim Under 42 U.S.C. § 1983 Against Hughes............................. 15

F. Plaintiff Fails to State a Plausible *Monell* Claim Against the City.................................................................. 16

G. Gaglione, Cahill, Sansone, and Hughes are Entitled to Qualified Immunity ......................................... 18

    i. Gaglione is entitled to qualified immunity because, at a minimum, he had arguable probable cause to take plaintiff into custody.................................................................. 19

    ii. Sansone, Hughes, and Cahill are entitled to qualified immunity because they did not violate any clearly established right ........................... 20

H. Plaintiff's State Law Claims Against Gaglione, Sansone, Cahill, and Hughes are Barred by His Failure to Comply With Conditions Precedent to Suit.................................................................................. 21

    i. Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress Should Be Dismissed................................................. 22

I. The NYPD and CCRB Should Be Dismissed From this Action as Inappropriate Defendants.................................... 23

J. Plaintiff's Due Process Claim Merges With His False Arrest Claim............................................................. 24

CONCLUSION......................................................................................... 25

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                     <u>Pages</u>

*Abreu v. City of New York*,
    657 F. Supp. 2d 357 (E.D.N.Y. 2009) ..................................................................17

*Ackerson v. City of White Plains*,
    702 F.3d 15 (2d Cir. 2012) ..................................................................10

*Anthony v City of New York*,
    339 F.3d (2d Cir. 2003) ..................................................................10, 13, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................7, 14

*Baker v. Latham Sparrowbush Assoc.*,
    808 F. Supp. 992 (S.D.N.Y. 1992) ..................................................................8

*Batista v. Rodriguez*,
    702 F.2d 393 (2d Cir. 1983) ..................................................................17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................7, 14

*Bernard v. United States*,
    25 F.3d 98 (2d Cir. 1994) ..................................................................11

*Biswas v. City of N.Y.*,
    973 F. Supp. 2d 504 (S.D.N.Y. 2013) ..................................................................10

*Bizouati v. City of New York*,
    05 Civ. 4133 (RJD) (MDG); 2008 U.S. Dist. LEXIS 21769 (E.D.N.Y. 2008)..................10

*Bouche v. City of Mt. Vernon*,
    11 Civ. 5246 (SAS), 2013 U.S. Dist. LEXIS 11424 (S.D.N.Y. Jan. 28, 2013)..................19

*Brodeur v. City of New York*,
    99 Civ. 661, 2002 U.S. Dist. LEXIS 4500 (S.D.N.Y. Mar. 18, 2002) ..................17

*Bryant v. City of N.Y.*,
    590 N.Y.S.2d 913 (N.Y. App. Div. 2d Dep't 1992)..................................................................21

*Bryant v. City of New York*,
    404 F.3d 128 (2d Cir. 2005) ..................................................................24

*Carmody v. City of New York*,
    05 Civ. 8084 (HB), 2006 U.S. Dist. LEXIS 25308 (S.D.N.Y. May 11, 2006) ..................23

**Cases**                                                                 **Pages**

*Castillo v. Iveco Truck Repair,*
    No. 86 Civ. 5155 (WK), 1989 U.S. Dist. LEXIS 16036 (S.D.N.Y. Oct. 3,
    1989) ......................................................................................................................... 6, 9

*Cine SK8, Inc. v. Town of Henrietta,*
    507 F.3d 778 (2d Cir. 2007) ...................................................................................... 14

*City of Canton v. Harris,*
    489 U.S. 378 (1989) ................................................................................................... 16

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1985) ................................................................................................... 16

*Connick v. Thompson,*
    131 S.Ct. 1350 (2011) ................................................................................................ 16

*Curley v. Village of Suffern,*
    268 F.3d 65 (2d Cir. 2001) ........................................................................................ 15

*D'Angelo-Fenton v. Town of Carmel Police Dep't.,*
    470 F. Supp. 2d 387 (S.D.N.Y. Jan. 17, 2007) ......................................................... 22

*Daniels v. City of New York,*
    03 Civ. 0809 (GEL); 2004 U.S. Dist. LEXIS 9361
    (S.D.N.Y. 2004) ......................................................................................................... 11

*In re Dayton,*
    786 F. Supp. 2d 809 (S.D.N.Y. 2011) ...................................................................... 17

*Deronette v. City of New York,*
    05-CV-5275 (SJ), 2007 U.S. Dist. LEXIS 21766 (E.D.N.Y. Mar. 27, 2007) .......... 22

*DeVito v. Barrant,*
    03 Civ. 1927 (DLI) (RLM); 2005 U.S. Dist. LEXIS 22444
    (E.D.N.Y. Aug 23, 2005) ........................................................................................... 23

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010) ........................................................................................ 4

*Dolan v. Connolly,*
    794 F.3d 290 (2d Cir. 2015) ...................................................................................... 13

*Fezzani v. Bear, Stearns & Co., Inc.,*
    99 Civ. 0793 (RCC); 2005 U.S. Dist. LEXIS 3266 (S.D.N.Y. Mar. 1, 2005) .......... 9

| Cases | Pages |
|---|---|

*Fincher v. County of Westchester,*
979 F. Supp. 989 (S.D.N.Y. 1997) ........................................................21

*Fouche v. St. Charles Hosp.,*
64 F. Supp. 3d 452 (E.D.N.Y. 2014) ......................................................13

*Garcia v. Doe,*
779 F.3d 84 (2d Cir. 2014) (as amended Feb 23, 2015)...................18, 20

*George v. Burton,*
00 Civ. 143, 2001 U.S. Dist. LEXIS 24 (S.D.N.Y. Jan. 4, 2001)............17

*Gonzalez v. City of Schenectady,*
728 F.3d 149 (2d Cir. 2013) ...................................................................18

*Harris v. Mills,*
572 F.3d 66 (2d Cir. 2009) .......................................................................7

*Heller v. Bedford Cent. Sch. Dist.*
15-cv-705 (KBF), 2015 U.S. Dist. LEXIS 155060 (S.D.N.Y. Nov. 17, 2015) ...............10

*Holland v. City of Poughkeepsie,*
935 N.Y.S.2d 583 (App. Div. 2011)........................................................10

*Hunter v. Bryant,*
502 U.S. 224 (1991)................................................................................18

*Index Fund v. Hagopian,*
107 F.R.D. 95 (S.D.N.Y. 1985) ............................................................7, 9

*Jenkins v. City of New York,*
478 F.3d 76 (2d Cir. 2007) .....................................................................23

*Johnson v. Myers,*
10-CV-1964 (JS)(WDW), 2011 U.S. Dist. LEXIS 141098
(E.D.N.Y. Dec. 6, 2011)..........................................................................20

*Jones v. City of New York,*
988 F. Supp.2d 305 (E.D.N.Y. Dec. 20, 2013)........................................22

*Joyner-El v. Giammarella,*
09 Civ. 3731 (NRB); 2010 U.S. Dist. LEXIS 40417
(S.D.N.Y. Apr. 15, 2010).........................................................................13

*Kuntz v. N.Y. State Bd. of Elections,*
924 F. Supp. 364 (N.D.N.Y. 1996).......................................................6, 8

**Cases**                                                                                    **Pages**

*Lauer v. City of New York*,
    240 A.D.2d 543 (2d Dep't 1997)................................................................22

*Lipsky v. Corn. United Corp.*,
    551 F.2d 887 (2d. Cir. 1976) ..................................................................6

*Missel v. County of Monroe*,
    351 Fed. Appx. 543 (2d Cir. 2009)..........................................................17

*Monell v. New York City Dept. of Social Servs.*,
    436 U.S. 658 (1978)...............................................................16, 17, 18

*Montes v. King*,
    2002 U.S. Dist. LEXIS 4412 (S.D.N.Y. Mar. 19, 2002) .............................24

*Murphy v. Pizarrio*,
    94 Civ. 471 (JFK), 1995 U.S. Dist. LEXIS 13920 (S.D.N.Y. Sept. 22, 1995) .....................15

*Ohuche v. Merck & Co.*,
    11 Civ. 2385 (SAS), 2011 U.S. Dist. LEXIS 73904 (S.D.N.Y. July 7, 2011) .........................7

*Okin v. Vill. of Cornwall-On-Hudson*,
    577 F.3d 415 (2d Cir. 2009) .................................................................18

*Olivier v. Robert L. Yeager Mental Health Ctr.*,
    398 F.3d 183 (2d Cir. 2005) .................................................................19

*Pane v. Town of Greenburgh*,
    07 Civ. 3216, 2012 U.S. Dist. LEXIS 193860 (S.D.N.Y. Jan. 10, 2012)................................20

*Pelt v. City of New York*,
    11 Civ. 5633 (KAM) (CLP); 2013 U.S. Dist. LEXIS 122848
    (E.D.N.Y. Aug. 28, 2013).....................................................................15

*Pembaur v. Cincinnati*,
    475 U.S. 469 (1986)............................................................................16

*Pender v. United States*,
    No. 97 Civ. 6917 (LAK) (HBP), 2000 U.S. Dist. LEXIS 20916
    (S.D.N.Y. Aug. 3, 2000)......................................................................13

*Powell v. Bucci*,
    04 Civ. 1192 (TJM) (DEP); 2005 U.S. Dist. LEXIS 40890.................................18

**Cases**                                                                      **Pages**

*Regeda v. City of New York*,
    09 Civ. 5427 (KAM) (VVP), 2012 U.S. Dist. LEXIS 186256
    (E.D.N.Y. Sept. 7, 2012) ................................................................23

*Richardson v. N.Y. City Health & Hosps. Corp.*,
    05 Civ. 6278 (RJS); 2009 U.S. LEXIS 25247
    (S.D.N.Y. Mar. 25, 2009) ..............................................................15

*Russo v. City of Bridgeport*,
    479 F.3d 196 (2d Cir. 2007) ......................................................18, 20

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) .............................................................6

*Salzmann v. Prudential Securities, Inc.*,
    91 Civ. 4253 (KTD), 1994 U.S. Dist. LEXIS 6377 (S.D.N.Y. 1994) .....................6

*Saucier v. Katz*,
    533 U.S. 194 (2001) ....................................................................19

*Shenko v. FBI*,
    6:14-CV-01595, 2016 U.S. Dist. LEXIS 25362 (N.D.N.Y Feb. 29, 2016) ...............12

*Silver v. Kuehbeck*,
    05 Civ. 35 (RPP); 2005 U.S. Dist. LEXIS 26956 (S.D.N.Y. 2005) .....................12

*Swan v. Bd. of Higher Educ.*,
    319 F.2d 56 (2d Cir. 1963) .............................................................9

*Troy v. City of New York*,
    13-CV-5082 (AJN), 2014 U.S. Dist. LEXIS 136339
    (S.D.N.Y. Sept. 25, 2014, aff'd, 614 Fed. Appx. 32 (2d Cir. 2015) ..................20

*Urena v. City of New York*,
    633 N.Y.S.2d 391 (N.Y. App. Div. 2d Dep't 1992) ..................................21

*Vassallo v. Lando*,
    591 F. Supp. 2d 172 (E.D.N.Y. 2008) ...............................................14

*Weyant v. Okst*,
    101 F.3d 845 (2d Cir. 1996) ..........................................................11

*Wingate v. N.Y.C. Dep't of Corr. Comm'r Horn*,
    No. 05-Civ.-2001 (LTS)(HBP), 2007 U.S. Dist. LEXIS 203
    (S.D.N.Y. Jan. 4, 2007), aff'd, 2009 U.S. App. LEXIS 2539 (2d Cir. 2009)..........13

**Cases**     **Pages**

*Wray v. City of New York,*
   340 F. Supp. 2d 291 (E.D.N.Y. 2004) .................................................. 23

**Statutes**

42 U.S.C. 1981 ...................................................................................... 13

42 U.S.C. 2000d ............................................................................... 13, 14

42 U.S.C. § 1981 ........................................................................ 1, 2, 13, 14

42 U.S.C. § 1983 ............................................................ 8, 12, 15, 16, 18

42 U.S.C. § 2000d ................................................................................ 2, 14

Fed. R. Civ. P. 8 .................................................................................... 7

Fed. R. Civ. Pro. 12(b) ........................................................................ 8

Fed. R. Civ. Pro. 12(b)(6) .......................................................... 4, 6, 7, 10

Fed. R. Civ. Pro. 12(e) ........................................................................ 8

Fed. R. Civ. Pro. 12(f) ...................................................................... 6, 8

Fed. R. Civ. Pro. 15 ............................................................................ 9

Fed. R. Civ. Pro. 15(a) ........................................................................ 9

Fed. R. Civ. Pro. 15(a)(1) ................................................................ 8, 9

Fed. R. Civ. Pro. 15(a)(2) .............................................................. 8, 10

M.H.L. § 9.39 ...................................................................................... 19

M.H.L. § 9.41 ...................................................... 11, 12, 14, 15, 16, 20, 24

N.Y. Gen. Mun. L. 50-i ...................................................................... 21

N.Y. Gen. Mun. L. 50-e ...................................................................... 21

N.Y. Gen. Mun. L. 50-e(1)(a) ........................................................ 21, 22

New York City Charter § 396 .......................................................... 23

New York Penal Law § 240.26 .......................................................... 16

## PRELIMINARY STATEMENT

This action has been pending against non-City related defendants since August 20, 2013 and has already been dismissed once by this Court.  Docket Report, at Dkt. No. 2, annexed as "Ex. A" to the Declaration of Anthony DiSenso In Support of Defendants' Motion to Dismiss dated February 3, 2017 (hereinafter "DiSenso Decl.").  Following the Court's Order dismissing the complaint on March 25, 2015 (the "March 25th Order"), the Second Circuit vacated the judgment in part and remanded solely to allow plaintiff, *pro se*, Hicham Azkour, an opportunity to amend his complaint on two claims against the non-City defendants (the "Second Circuit Order").  Summary Order, at p. 4, annexed as "Ex. B" to the DiSenso Decl. ("Accordingly, we vacate and remand with instructions to allow Azkour to amend his complaint as to these claims.").  Pursuant to the Second Circuit Order, this Court granted plaintiff leave to amend his initial complaint as to his claims under 42 U.S.C. § 1981 and the Fair Housing Act as they had been pled against the Bowery Residents' Committee, Inc., Lawrence a/k/a Muzzy Rosenblatt, Janet Forte, Kevin Martin, Tereen Llewelyn-Miller, Angela Kedzior, John Doe 1-5, and Jane Doe 1-5 (collectively, the "non-City defendants").  Memorandum Opinion & Order, at p. 2, annexed as "Ex. C" to the DiSenso Decl. ("The court therefore . . . grants leave for plaintiff to amend his complaint as to his claims under 42 U.S.C. § 1981 and the Fair Housing Act.").

Notwithstanding the Second Circuit's and this Court's unambiguous directives making clear the two claims which plaintiff was free to amend, on July 20, 2016, plaintiff filed an amended complaint which vastly exceeded the scope of those orders and which sought to add, among other things, a slew of additional claims against new defendants regarding incidents occurring long after this action was initially filed.  *See* Proposed First Amended Complaint dated July 20, 2016 ("First Amended Complaint" or "FAC"), annexed as "Ex. D" to the DiSenso Decl.  In particular, plaintiff added the New York City Police Department ("NYPD"), the Civilian

Complaint Review Board ("CCRB"), Officer Thomas Gaglione ("Gaglione"), Officer Kelly Hughes ("Hughes"), Detective Yuriy Posternak ("Posternak"), Detective Luis Torres ("Torres"), Sergeant Phillip Sansone ("Sansone"), and Special Investigator Patrick Cahill ("Cahill") (collectively, the "City defendants") as defendants.   Against these new City defendants plaintiff purports to bring claims of: (i) false arrest; (ii) illegal entry and search; (iii) failure to investigate; (iv) discrimination under 42 U.S.C. § 2000d, 42 U.S.C. § 1981, and the Fourteenth Amendment Equal Protection Clause; (v) disability discrimination under Title II of the Americans with Disabilities Act ("ADA"); (vi) First Amendment retaliation; (vii) violations to substantive and procedural due process; (viii) intentional and negligent infliction of emotional distress; and (ix) municipal liability.

As discussed more fully below, plaintiff did not have leave to file an amended complaint adding new claims against new defendants.   Accordingly, the First Amended Complaint as pled against the City defendants is a nullity which should be stricken.   Setting aside the validity of the First Amended Complaint, the vast majority of his claims as pled against the City defendants also fail as a matter of law.

## STATEMENT OF RELEVANT FACTS

According to the First Amended Complaint, plaintiff is a formerly homeless man who resides at Los Vecinos Single Occupancy Rooms owned and/or operated by Bowery Residents Committee, Inc. ("BRC").   FAC, Ex. D, at ¶¶ 7-10, 13.   Los Vecinos are "dwelling units . . . *strictly* for the accommodation of persons with disabilities and development disabilities," *id.* at ¶ 15, and "constitute a supportive living residence . . . providing practice in independent living under supervision . . . ."   *Id.* at 21 (emphasis in original).   According to plaintiff, the "BRC Defendants," including clinical staff at plaintiff's residence, "have always misperceived

plaintiff's homelessness and complaints as a mental disability." *Id.* at ¶ 116. "To create a record of mental disability, they purposefully interpreted his complaints as threats, hallucinations, paranoia, delusions, and an utter disconnect from reality." *Id.* at ¶ 115.

On August 27, 2012, plaintiff alleges that the BRC Defendants "compelled [him] to visit with defendant Mary Gray," *id.* at 130, who is a registered nurse. *Id.* at 28. Gray allegedly diagnosed plaintiff with "alcohol dependence and major depressive disorder with psychotic features." *Id.* at ¶ 132. She further "recommended that Plaintiff be prescribed anti-psychotic medication to treat "paranoid & delusional preoccupations." *Id.* at ¶ 134. According to plaintiff, the "psychiatric evaluations generated by defendant BRC's practitioners had no other purpose but to create a record of disability enabling them to place plaintiff, at any cost, in a supportive housing, such as Los Vecinos." *Id.* at ¶ 141.

With respect to plaintiff's interactions with the City defendants, the First Amended Complaint appears to focus on four separate incidents and plaintiff's interaction with various investigators. The first of these incidents occurred on June 6, 2014 when "plaintiff was surprised by the visit of two NYPD Officers investigating his alleged acts of assault and battery against defendants Shilson and defendant Penater." *Id.* at ¶ 218. According to plaintiff, the officers informed him that Shilson and Penater had accused him of "being emotionally disturbed, of threatening Los Vecinos residents with acts of violence, of 'threatening them with his religion,' and of trying to cut himself with a razor." *Id.* at ¶ 219. Penater also allegedly told the officers that plaintiff suffered from chronic paranoid schizophrenia. *Id.* at ¶ 222. Plaintiff was not taken into custody at that time after the officers allegedly reviewed video footage. *Id.* at ¶ 236.

Later that same day, plaintiff alleges that he was approached on the street by defendant Angela Kedzior, a licensed psychiatrist and director of BRC clinical staff, *id.* at ¶ 25, who

requested that he speak to her about the incident earlier in the day. *Id.* at ¶ 240. After refusing to speak to her, plaintiff alleges that Kedzior began to pull at his arm and he responded by calling 9-1-1, running away, and heading to the 7th NYPD Precinct. *Id.* at ¶¶ 242-45. Apparently, Kedzior also went to the precinct, from which plaintiff was ultimately taken by officers to Bellevue Hospital after Kedzior advised them that plaintiff "felt 'persecuted by the world,'" was "suffering from chronic paranoid schizophrenia," and was a "violent individual," who had assaulted Kedzior a few minutes ago and a pregnant woman that morning. *Id.* at ¶¶ 247, 255, 258-59.

Thereafter, on January 6, 2015, plaintiff claims that Gaglione, along with other NYPD officers, knocked on his door and advised him that he would be transported to a psychiatric hospital. *Id.* at ¶ 303. BRC staff allegedly provided Gaglione with a "report and certification" that plaintiff threatened violence and physical harm to staff and residents. *Id.* at ¶ 99. BRC staff allegedly also advised Gaglione that plaintiff had harassed residents by filming them. *Id.* at ¶ 319. Moreover, as can be seen in the video cited by plaintiff in the complaint, the "medical director" handed Gaglione what is apparently a letter from plaintiff's doctor while stating that the doctor is very concerned about plaintiff because he hasn't been sleeping for days. Video, at 1:40-2:00, annexed as "Ex. E" to the DiSenso Decl.[1] Gaglione can also be heard stating, in sum and substance, that "they want [plaintiff] to go see a doctor." *Id.* at 2:16-2:22. Moreover, plaintiff alleges that BRC staff made a "false report" to the NYPD, FAC, Ex. D, at ¶ 696, on January 6, 2015 that plaintiff suffered from chronic paranoid schizophrenia. *Id.* at 678.

---

[1] Both videos cited to herein were explicitly referenced by plaintiff in his First Amendment Complaint. (FAC, Ex. D, at p. 59 n.9; p. 89 n.10; 90 n.11; 93 n.14; 94 n.16). Accordingly, they were incorporated into the pleading by reference and may be considered by the Court on instant 12(b)(6) motion. *See, e.g. DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (In deciding a motion pursuant to Rule 12(b)(6) "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .").

Following an incident with NYPD detectives on December 15, 2015,[2] *id.* at ¶¶ 342-79, 412-33, 436-43, plaintiff alleges that his constitutional rights were violated when, after filing formal complaints with Sansone of IAB and Cahill of the Department of Investigations ("DOI"), they failed to investigate the December 15th incident and claims of the NYPD's unlawful selective law enforcement and spying programs. *Id.* at ¶¶ 387-89, 392-94, 451-53.

Finally, on June 3, 2016 at 93 Pitt Street, plaintiff alleges that he was "peacefully requesting that his room be provided with air conditioning," *id.* at ¶ 396, when, after consulting with defendant Penater, *id.* at ¶ 397-98, a member of the BRC staff placed a 9-1-1 call to complain that plaintiff was harassing her. *Id.* at ¶ 396. In response, as can be seen in the video cited by plaintiff in the complaint, Hughes and her partner arrived to investigate the BRC staff member's complaints. FAC, Ex. D, at ¶ 399. Hughes can be heard stating to plaintiff, in sum and substance, that he cannot knock on doors and follow people around. Video, at 1:50-2:20, annexed as "Ex. F" to the DiSenso Decl. Thereafter, plaintiff alleges that the BRC staff member "took defendant Hughes aside and maliciously, falsely stated to her that Plaintiff had a 'medical history.'" FAC, Ex. D, at ¶ 400. Hughes can then be heard informing plaintiff, in sum and substance that the staff was filing a report against him for harassment. Ex. F at 3:40-3:50. She then can be heard saying, "this has been going on for a couple of hours now, I want you to leave, you can go back to your apartment, those are your options." *Id.* at 4:12-4:45. Hughes further advised plaintiff that if the officers were called back to the location, he would be taken to the hospital based on his "medical history." *Id.* at 5:19-5:32; *see also* FAC, Ex. D, at ¶ 401.

---

[2] On December 15, 2015 at 93 Pitt Street, plaintiff alleges, *inter alia*, that, based on the non-City defendants' false anonymous report that plaintiff was involved in terroristic activities, Posternak and Torres illegally entered his apartment and interrogated plaintiff about his religion and activities (the "December 15th incident"). FAC, Ex. D, at ¶¶ 342-79, 412-33, 436-43.

## STANDARD OF REVIEW

City defendants bring concurrent motions to strike plaintiff's First Amended Complaint as pled against them pursuant to Federal Rule of Civil Procedure 12(f) and, alternatively, to dismiss the First Amended Complaint in part for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Rule 12(f) Standard of Review

Pursuant to Rule 12(f), "the court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). On its own initiative or in response to a motion by a defendant, the court has discretion to strike any allegations it deems immaterial to the causes of actions pled. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial."); *see also Salzmann v. Prudential Securities, Inc.*, 91 Civ. 4253 (KTD), 1994 U.S. Dist. LEXIS 6377, at \*13 (S.D.N.Y. 1994) ("A court may strike a pleading when it appears beyond peradventure that it is . . . devoid of factual basis.").

Although motions to strike are generally disfavored, *see Lipsky v. Corn. United Corp.*, 551 F.2d 887, 893 (2d. Cir. 1976), they are appropriate where, as here, a plaintiff has exceeded the scope of his leave to amend. *See, e.g. Kuntz v. N.Y. State Bd. of Elections*, 924 F. Supp. 364, 367 (N.D.N.Y. 1996) (striking portions of plaintiff's amended complaint where "plaintiff [took] the Court's leave to amend two of the three causes of action in his initial, three-page Complaint and used it to expand his claims into five causes of action asserted in a seventeen-page Amended Complaint."); *Castillo v. Iveco Truck Repair*, No. 86 Civ. 5155 (WK), 1989 U.S. Dist. LEXIS 16036, at \*6 (S.D.N.Y. Oct. 3, 1989) (striking plaintiff's unauthorized amended complaint where

the putative amendment substantially changed the nature of the action); *Index Fund v. Hagopian*, 107 F.R.D. 95, 98 (S.D.N.Y. 1985) ("In light of the fact that the plaintiff did not request or receive permission to assert a claim for punitive damages in its amended complaint, the Court grants the defendants' motion to strike that claim.").

### B. Rule 12(b)(6) Standard of Review

A motion to dismiss should be granted where a complaint pleads insufficient facts to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations of the complaint must be more than speculative, and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions*." Id.* at 1950 (citing Fed. R. Civ. P. 8). Furthermore, while courts are "obligated to construe *pro se* complaints liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), regardless of any leniency afforded to such complaints, "the *Twombly-Iqbal* standard applies equally to *pro se* litigants." *Ohuche v. Merck & Co.*, 11 Civ. 2385 (SAS), 2011 U.S. Dist. LEXIS 73904, at *4 (S.D.N.Y. July 7, 2011).

## ARGUMENT

### I.  THE COURT SHOULD STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT AS PLED AGAINST THE CITY DEFENDANTS BECAUSE PLAINTIFF VASTLY EXCEEDED THE SCOPE OF THE LEAVE TO AMEND GRANTED BY THE COURT

As an initial matter, the First Amended Complaint vastly exceeds the scope of the leave to amend granted by the Court essentially pleading an entirely novel and distinct action against

new defendants. For this reason alone, the Court should strike all of plaintiff's claims against the City defendants as they were pled without authorization and are without legal effect.

Under Federal Rules of Civil Procedure 15(a)(1), a party may amend its pleading once as of right within: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *See* Fed. R. Civ. P. 15(a)(1). In all other cases, Federal Rules of Civil Procedure 15(a)(2) is in effect and the party seeking to amend the pleading must either obtain leave of court or the consent of the opposing party. *See Baker v. Latham Sparrowbush Assoc.*, 808 F. Supp. 992, 997 (S.D.N.Y. 1992) ("This court's order [] specifically granted plaintiff leave to replead only her state law claims that were not specifically pled in the original complaint. Plaintiff did not obtain or request leave to amend the complaint with respect to the dismissed claims. Plaintiff's repleading of these claims in the amended complaint was therefore improper. . . ."). In such an event, when an amended complaint exceeds the scope of the leave given, the Court may strike the amended pleading. *See, e.g. Kuntz*, 924 F. Supp. at 367 (striking portions of plaintiff's amended complaint where "plaintiff [took] the Court's leave to amend two of the three causes of action in his initial, three-page Complaint and used it to expand his claims into five causes of action asserted in a seventeen-page Amended Complaint."); *Castillo*, No. 86 Civ. 5155 (WK), 1989 U.S. Dist. LEXIS 16036, at *6 (striking plaintiff's unauthorized amended complaint where the putative amendment substantially changed the nature of the action); *Hagopian*, 107 F.R.D. at 98 ("In light of the fact that the plaintiff did not request or receive permission to assert a claim for punitive damages in its amended complaint, the Court grants the defendants' motion to strike that claim.").

Here, plaintiff unambiguously lost any right to amend under Rule 15(a)(1) when the Court granted the non-City defendants' motion to dismiss. *See Swan v. Bd. of Higher Educ.*, 319 F.2d 56, 60-61 (2d Cir. 1963) ("The law is clear that once [a] judgment dismissing the original complaint has been entered, the right granted to plaintiff by Rule 15(a) . . . to amend his complaint once as a matter of course [is] at an end."); *Fezzani v. Bear, Stearns & Co., Inc.*, 99 Civ. 0793 (RCC); 2005 U.S. Dist. LEXIS 3266, at *5 (S.D.N.Y. Mar. 1, 2005) ("Plaintiffs lost the right to amend the complaint as a matter of course when this Court granted the motion to dismiss.").

Therefore, when the Second Circuit's Order granted plaintiff leave to amend his initial complaint for the limited purpose of curing deficiencies with two claims brought against non-City defendants, plaintiff was required to seek leave of court once more or seek consent from non-City defendants to add claims against the City defendants and there is nothing that appears on the docket sheet to suggest plaintiff did either.

Where, as here, a plaintiff fails to comply with the Rule 15 requirement for amending the pleadings, the putative amendment is without legal effect and is properly stricken. *See Bizouati v. City of New York*, 05 Civ. 4133 (RJD) (MDG), 2008 U.S. Dist. LEXIS 21769, at *2 (E.D.N.Y. 2008) (granting defendant's motion to strike because "plaintiff failed to comply with Rule 15(a)(2) of the Federal Rules of Civil Procedure by simply filing the Second Amended Complaint without approval of the Court.").

Accordingly, this Court should strike the First Amended Complaint because it is a nullity as pled against the City defendants without legal effect.

## II.   THE VAST MAJORITY OF CLAIMS PLED AGAINST THE CITY DEFENDANTS IN THE FIRST AMENDED COMPLAINT FAIL AS A MATTER OF LAW

Assuming, *arguendo*, that the Court chooses to accept plaintiff's putative First Amended Complaint as operative against the City defendants, the majority of the claims pled against the City defendants should nevertheless be dismissed for failure to state a claim pursuant to Rule 12(b)(6) as explained more fully below.[3]

### a.   Plaintiff Fails to State a Cognizable Fourth Amendment Claim Against Gaglione Because Probable Cause Existed to Involuntarily Hospitalize Plaintiff Based on the Statements of a Complaining Witness

Plaintiff's false arrest and false imprisonment claims[4] asserted against Gaglione, FAC, Ex. D, at ¶¶ 649-75, fail as a matter of law because probable cause supported plaintiff's involuntary hospitalization.  Probable cause is a complete defense to a warrantless seizure for the purpose of involuntary hospitalization.  *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause 'is a complete defense to an action for false arrest.'") (internal citation omitted); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'").  *See also Anthony v. City of N.Y.*, 339 F.3d 129, 137 (2d Cir. 2003) ("A warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause." (internal quotations omitted)); *Heller v. Bedford Cent. Sch. Dist.*, 15-cv-705 (KBF), 2015 U.S. Dist. LEXIS 155060, at *53-57 (S.D.N.Y.

---

[3] To the extent the First Amended Complaint can be read to assert claims of false arrest, unlawful search, and First Amendment retaliation claims against Posternak and Torres, City defendants do not move to dismiss those claims herein pursuant to Rule 12(b)(6), however, those claims are, nevertheless, without legal effect and should be struck as discussed *supra* at Point I.

[4] Plaintiff's false arrest and false imprisonment claims are essentially the same claim with same elements and are routinely analyzed together in this Circuit.  *See, e.g. Biswas v. City of N.Y.*, 973 F. Supp. 2d 504, 514-15 (S.D.N.Y. 2013) ("In New York, false arrest and false imprisonment 'are two names for the same tort.'") (quoting *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d 583, 589 (App. Div. 2011)).

Nov. 17, 2015) (report from anonymous friend alleging plaintiff was in danger of hurting himself coupled with attendant circumstances established probable cause to seize plaintiff for further evaluation).

Under New York Mental Hygiene Law § 9.41 ("M.H.L. § 9.41"), "a police officer . . . may take into custody any person who appears to be mentally ill and is conducting herself in a manner which is likely to result in serious harm to the person or *others*."   M.H.L. § 9.41 (emphasis added).

Here, probable cause existed to justify plaintiff's removal under M.H.L. § 9.41.   For example, plaintiff readily admits in the First Amended Complaint that clinical staff allegedly provided Gaglione with a "report and certification" that plaintiff threatened violence and physical harm to both staff and residents.   FAC, Ex. D, at ¶ 99.   Clinical staff also allegedly informed Gaglione that plaintiff harassed residents by filming them.   *Id.* at ¶ 319.   Moreover, as can be seen in the video cited by plaintiff in the complaint, the "medical director" handed Gaglione what is apparently a letter from plaintiff's doctor and also states that the doctor is very concerned about plaintiff because he hasn't been sleeping for days.   Ex. E, at 1:40-2:00. Gaglione can also be heard stating, in sum and substance, that "they want [plaintiff] to go see a doctor." *Id.* at 2:16-2:22.   Moreover, the First Amended Complaint also alleges, in sum and substance that clinical staff made a "false report" to the NYPD, FAC, Ex. D, at ¶ 696, on January 6, 2015 that plaintiff suffered from chronic paranoid schizophrenia. *Id.* at 678.

Although plaintiff alleges that the clinical staff's complaints and statements on January 6, 2015 were fraudulent and deliberately designed to have him institutionalized, *see, e.g. id.* at ¶¶ 104, 696, that does not vitiate probable cause here. *See Daniels v. City of New York*, 03 Civ. 0809 (GEL); 2004 U.S. Dist. LEXIS 9361, at *5-*6 (S.D.N.Y. 2004) (finding that, if a

complaint contains no allegations of any facts known to the officers at the time of plaintiff's arrest that would cast any doubt on the victim's allegations or her general veracity, the complaint on its face establishes that the officers had probable cause to arrest the plaintiff even if plaintiff alleges that the victim was lying to police); *Silver v. Kuehbeck*, 05 Civ. 35 (RPP); 2005 U.S. Dist. LEXIS 26956, at \*54 (S.D.N.Y. 2005) (granting Defendant's motion to dismiss because "the Complaint does not allege that [the officer] had any reason to question [the alleged victim's] veracity.").

Accordingly, in light of all of the above, Gaglione had formed sufficient probable cause to believe that plaintiff was acting in a manner that would result in serious harm to others justifying the involuntary hospitalization.[5]

> **b.  Plaintiff's Failure to Investigate Claims Against Sansone and Cahill Must Be Dismissed Because the Investigators' Did Not Have a Duty to Investigate Plaintiff's Claims**

To the extent plaintiff alleges that defendants Sansone and Cahill failed to investigate his complaints that the NYPD was engaging in religious and racial profiling, FAC, Ex. D, at ¶¶ 394, 450-452, this claim fails as a matter of law because neither Sansone nor Cahill had a duty to investigate.

The failure to investigate alleged misconduct does not state a claim under §1983. *See Shenko v. FBI*, 6:14-CV-01595 (LEK/TWD), 2016 U.S. Dist. LEXIS 25362, at \*19-\*20

---

[5] To the extent plaintiff alleges false arrest and false imprisonment claims against John Doe officers for the June 6, 2014 incident that claim fails for the same reasons as plaintiff's claim against Gaglione. There, the officers clearly had probable cause to arrest him pursuant to M.H.L. § 9.41 because Kedzior allegedly told them he was a violent individual, had assaulted her, had assaulted another person earlier in the day, and suffered from chronic paranoid schizophrenia. *Id.* at ¶¶ 247, 255, 258-59. Accordingly, it is respectfully suggested that the Court *sua sponte* dismiss false arrest and false imprisonment claims against the John Doe officers related to the June 6, 2014 incident.

Additionally, because the John Doe officers had probable cause to arrest plaintiff, it is further respectfully suggested that the Court *sua sponte* dismiss any First Amendment claims against them for the reasons outlined *infra* at Point II(d).

(N.D.N.Y Feb. 29, 2016) (finding that the "mere failure to investigate" complaints of writing false reports and issuing false traffic tickets does not provide a basis for finding liability under §1983); *Wingate v. N.Y.C. Dep't of Corr. Comm'r Horn*, No. 05-Civ.-2001 (LTS)(HBP), 2007 U.S. Dist. LEXIS 203, at \*19 (S.D.N.Y. Jan. 4, 2007), aff'd, 2009 U.S. App. LEXIS 2539 (2d Cir. 2009) ("It is well-settled that failure to investigate alleged unconstitutional action does not state a claim under Section 1983."); *Pender v. United States*, No. 97 Civ. 6917 (LAK) (HBP), 2000 U.S. Dist. LEXIS 20916, at \*13-\*14 (S.D.N.Y. Aug. 3, 2000) ("[E]ven if plaintiff's allegations concerning a failure to investigate were entirely true, they would not state a claim for relief."). Accordingly, plaintiff's claims against Sansone and Cahill fail as a matter of law and must be dismissed.

> c. **Plaintiff's Claims Alleging Discrimination Under Equal Protection, 42 U.S.C. 1981, the Americans with Disabilities Act, and 42 U.S.C. 2000d Fail Because the First Amended Complaint Fails to Plausibly Plead That Any of the City Defendants' Actions Were Motivated by Discriminatory Animus**

The Court should dismiss plaintiff's claims against the City defendants alleging violations under the Fourteenth Amendment Equal Protection Clause, 42 U.S.C. § 1981, Title II of the Americans with Disabilities Act, and 42 U.S.C. 2000d, FAC, Ex. D, at ¶¶ 59, 444-62, 484-93, 572-98, 620, 630-39, because plaintiff has failed to plausibly plead that any of the City defendants' actions were motivated by discriminatory animus. *See Dolan v. Connolly,* 794 F.3d 290, 296 (2d Cir. 2015) (holding that for an equal protection claim to survive, "it must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."); *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) ("Naked assertions of race discrimination, without any supporting facts, are insufficient to state a Section 1981 claim."); *Anthony v City of New York*, 339 F.3d, 129, 140-141 (2d Cir. 2003) (affirming

dismissal of ADA claim due to dearth of facts that hospitalization was motivated by disability discrimination); *See Joyner-El v. Giammarella*, 09 Civ. 3731 (NRB); 2010 U.S. Dist. LEXIS 40417, at *10-*11 (S.D.N.Y. Apr. 15, 2010) (dismissing plaintiff's 2000d claims for failing to allege facts that would plausibly infer purported misconduct by the defendants that were motivated by the plaintiff's race, color, or national origin).[6]

Here, plaintiff's First Amended Complaint alleges that the City defendants violated the Fourteenth Amendment Equal Protection Clause, 42 U.S.C. § 1981, Title II of the Americans with Disabilities Act, and 42 U.S.C. 2000d by discriminating against plaintiff on the basis of race, religion, and mental health.  FAC, Ex. D, at ¶¶ 315; 321; 433; 444-62; 448; 483-93; 572-98; 637-38.  However, the First Amended Complaint fails to provide any factual detail that would plausibly establish that the City defendants' actions were motivated by some sort of discriminatory animus.    Accordingly, his claims alleging violations under the Fourteenth Amendment Equal Protection Clause, 42 U.S.C. § 1981, Title II of the Americans with Disabilities Act, and 42 U.S.C. 2000d should be dismissed pursuant to *Twombly* and *Iqbal*.

### d.  Plaintiff Fails to Plausibly State a Claim for First Amendment Retaliation Against Gaglione

To the extent plaintiff alleges a First Amendment retaliation claim against Gaglione and the "City defendants" as it relates to his June 6, 2015 seizure pursuant to M.H.L. § 9.41, it must be dismissed against City defendants under the *Iqbal* and *Twombly* standards.  FAC, Ex. D, at ¶¶

---

[6] To the extent the First Amended Complaint can be read to allege a selective enforcement claim against any City defendant, it also fails as a matter of law.  To succeed on a selective enforcement claim, plaintiff must plead facts that, if accepted as true, show that: 1) he was treated differently than other similarly situated individuals; and 2) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007).  In order to establish that another is similarly situated, plaintiff must allege facts that, if true, establish he is similarly situated to other individuals "in all material respects." *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008).  Here, plaintiff has failed to identify any comparators treated differently who were similarly situated in all material respects.

404-05, 407, 490, 618.  A plaintiff alleging a claim of retaliation under the First Amendment must show "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right*." Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  However, it is well established that a plaintiff may not maintain a First Amendment retaliation claim where probable cause existed to arrest him or her.  *See id.* at 73 ("[B]ecause defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken."); *see also Richardson v. N.Y. City Health & Hosps. Corp.*, 05 Civ. 6278 (RJS); 2009 U.S. LEXIS 25247, at *55-*56 (S.D.N.Y. Mar. 25, 2009) ("Plaintiff cannot maintain a First Amendment retaliation claim as a private citizen challenging the grounds for her [valid] arrest.").

Accordingly, plaintiff's claim to the extent it pleads a First Amendment retaliation claim must be dismissed because Gaglione had probable cause to take plaintiff into custody pursuant to M.H.L. § 9.41 as discussed *supra* at Point II(a).

### e. Plaintiff Fails to Plead Any Cognizable Claim Under 42 U.S.C. § 1983 Against Hughes

Plaintiff's lone allegation that Hughes threatened him with arrest "based on an alleged 'medical history,'" FAC, Ex. D, at ¶ 409, is insufficient to support a cognizable constitutional violation under § 1983.  *See Murphy v. Pizarrio*, 94 Civ. 471 (JFK), 1995 U.S. Dist. LEXIS 13920, at *8  (S.D.N.Y. Sept. 22, 1995) (alteration in original) (internal quotation marks and citation omitted) ("[M]ere verbal abuse is not a § 1983 violation, insofar as the [m]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."); *see also Pelt v. City of New York*, 11 Civ. 5633 (KAM) (CLP); 2013 U.S. Dist. LEXIS 122848, at *48-*50 (E.D.N.Y. Aug. 28, 2013) (dismissing the plaintiff's

claims for failing to sufficiently plead a constitutional violation under § 1983 on the sole allegation that NYPD officers used threatening language). Accordingly, plaintiff's claims to the extent that they are based solely on Hughes' alleged threats must be dismissed as non-actionable.[7]

### f.   Plaintiff Fails to State a Plausible *Monell* Claim Against the City

Plaintiff's municipal liability claim fails as a matter of law. FAC, Ex. D, at ¶¶ 463-82. The law is well settled that a municipality can only be held liable under § 1983 if a plaintiff can establish that the governmental body <u>itself</u> subjected or caused a deprivation of his rights. *See Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). Municipalities are responsible only for "their <u>own</u> illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis added).

Accordingly, in order to proceed with a claim that a municipality subjected an individual to a deprivation of rights, a plaintiff must demonstrate a causal connection between his alleged injury and one of the following: (1) a formal policy, officially promulgated by the municipality, *id.* at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483-84; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

---

[7] Even assuming, *arguendo*, that Hughes' threat of arrest could ever form the basis for a First Amendment claim, the allegations made by BRC staff that plaintiff was harassing people, banging on doors for hours, following people around, and had a "medical history" established probable cause to arrest plaintiff under New York Penal Law § 240.26 as well as pursuant to M.H.L. § 9.41. Accordingly, any First Amendment claim against Hughes fails for the same reasons discussed *supra* at Part II(d).

In the context of a motion to dismiss, the mere assertion that a municipality has such a policy or practice is insufficient. *Missel v. County of Monroe*, 351 Fed. Appx. 543, 545 (2d Cir. 2009) (summary order) (affirming dismissal of *Monell* claim where plaintiff "made no factual allegations that would support a plausible inference that the [defendant]'s 'policies' or 'customs' caused . . . violations of [plaintiff]'s rights.").

Plaintiff, however, fails to articulate *any* specific non-conclusory factual allegations to plausibly establish the existence of a policy or practice and accordingly, his *Monell* claim fails. *See In re Dayton*, 786 F. Supp. 2d 809, 822-23 (S.D.N.Y. 2011) (dismissing *Monell* claim where factual assertions in complaint were "too conclusory" and constituted a "boilerplate recitation of the elements of a *Monell* claim."); *Abreu v. City of New York*, 657 F. Supp. 2d 357, 360-61 (E.D.N.Y. 2009) ("[The plaintiff's] complaint succinctly states one of the core legal concepts animating *Monell* liability.  But it does absolutely nothing else."); *Brodeur v. City of New York*, 99 Civ. 661, 2002 U.S. Dist. LEXIS 4500, at *16 (S.D.N.Y. Mar. 18, 2002) (dismissing complaint against City where complaint "flatly asserts" a policy but contains no factual allegations sufficient to establish a municipal policy or custom.); *George v. Burton*, 00 Civ. 143, 2001 U.S. Dist. LEXIS 24, at *5-*6 (S.D.N.Y. Jan. 4, 2001) (dismissing complaint with prejudice where plaintiff "failed to proffer any facts in his complaint from which we can infer such a pattern or practice.").

Even assuming *arguendo* that plaintiff could establish the existence of municipal practice, policy, or custom, plaintiff fails to establish an affirmative link—in other words, plaintiff cannot establish that his constitutional rights were violated as a result of such practice, policy, or custom. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell*

prohibits a finding of liability against the City."); *Powell v. Bucci*, 04 Civ. 1192 (TJM) (DEP); 2005 U.S. Dist. LEXIS 40890, at *17 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") (internal quotation marks and citation omitted).

Accordingly, plaintiff's *Monell* claim also fails as a matter of law.

### g.   Gaglione, Cahill, Sansone, and Hughes are Entitled to Qualified Immunity

Even if plaintiff had stated a plausible claim against Gaglione Cahill, Sansone, and Hughes, they are all nevertheless entitled to qualified immunity.   In situations where the defendants' alleged actions "'did not violate any clearly established law'" or where "'it was objectively reasonable for the defendant[s] to believe that [their] action[s] did not violate such law,'" public officials are immune from liability under § 1983. *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014) (as amended Feb 23, 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007).   The Supreme Court and Second Circuit have repeatedly affirmed that qualified immunity protects "all but the plainly incompetent or those that knowingly violate the law" from suit. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments . . . ."); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013) ("While we expect police officers to be familiar with black-letter law applicable to commonly encountered situations, they cannot be subjected to personal liability under § 1983 based on anything less.").

Where the Court determines that the right at issue was not clearly established at the time of the incident, the official is entitled to qualified immunity as a matter of law. *See Garcia v. Doe*, 779 F.3d at 92.   When determining whether a right was clearly established, the Court looks to "'Supreme Court and Second Circuit precedent existing at the time of the alleged violation.'"

*Id.* (quoting *Okin v. Vill. of Cornwall-On-Hudson*, 577 F.3d 415, 433 (2d Cir. 2009)).  Moreover, the right must be defined "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In the context of false arrest claims, where reasonable officials could disagree as to whether there was probable cause for plaintiff's arrest and prosecution—in other words, where there is arguable probable cause—defendant officials are entitled to qualified immunity.  *See, e.g. Bouche v. City of Mt. Vernon*, 11 Civ. 5246 (SAS), 2013 U.S. Dist. LEXIS 11424, at *29 (S.D.N.Y. Jan. 28, 2013) ("As it has been established that defendants had at least arguable probable cause to arrest [plaintiff], defendants are also entitled to qualified immunity as to both the false arrest and malicious prosecution claims.").

> i.   *Gaglione is entitled to qualified immunity because, at a minimum, he had arguable probable cause to take plaintiff into custody*

Viewing the facts alleged as discussed *supra* at Part II(a) in the light most favorable to plaintiff, it was still objectively reasonable for Gaglione to believe that plaintiff was a danger to others and that his actions were lawful at the time of the alleged conduct.  The Second Circuit has held that New York's overall statutory scheme governing involuntary commitments is constitutional, both substantively and procedurally. *See Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 188 (2d Cir. 2005) (construing M.H.L. §9.39).  M.H.L. § 9.41, along with M.H.L. § 9.39, allow a police officer to take individuals into custody who appear mentally ill and likely to harm themselves.  Gaglione received information from staff at plaintiff's residence that plaintiff threatened violence and physical harm to both staff and residents.  FAC, Ex. D, at ¶ 99.  Moreover, as can be seen in the video cited by plaintiff in the complaint, the "medical director" handed Gaglione what is apparently a letter from plaintiff's doctor and also states that the doctor is very concerned about plaintiff because he hasn't been sleeping for

days.  Ex. E, at 1:40-2:00.  Gaglione can also be heard stating, in sum and substance, that "they want [plaintiff] to go see a doctor." *Id.* at 2:16-2:22.

As such, it was objectively reasonable under M.H.L. § 9.41 for Gaglione to hospitalize plaintiff. *See Anthony*, 339 F.3d at 137-138 (finding that officers were entitled to qualified immunity for involuntary hospitalization of plaintiff because, although Plaintiff was "calm and quiet," the officers were responding to a 911 call from a woman who claimed to be "at risk of immediate physical injury"); *Johnson v. Myers*, 10-CV-1964 (JS)(WDW), 2011 U.S. Dist. LEXIS 141098, at *15 (E.D.N.Y. Dec. 6, 2011) (dismissing involuntary hospitalization claim under qualified immunity following anonymous complaint subsequently corroborated).[8]

> ii.  *Sansone, Hughes, and Cahill are entitled to qualified immunity because they did not violate any clearly established right*

With respect to Sansone, Hughes and Cahill, plaintiff cannot point to any clearly established right recognized in this circuit that was violated by their actions or inactions. *Cf. Troy v. City of New York*, 13-CV-5082 (AJN), 2014 U.S. Dist. LEXIS 136339, at *15 (S.D.N.Y. Sept. 25, 2014), aff'd, 614 Fed. Appx. 32 (2d Cir. 2015) (holding there is no constitutional right to an investigation by government officials); *see also Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014) (as amended Feb. 23, 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (explaining that where the defendants' alleged actions "'did not violate any clearly established law'" or where "'it was objectively reasonable for the defendant[s] to believe that [their] action[s] did not violate such law,'" public officials are immune from liability under § 1983).  Accordingly, Sansone, Hughes, and Cahill are entitled to qualified immunity.

---

[8] Officers are also entitled to qualified immunity under New York State law for false imprisonment claims where there conduct was objectively reasonable. *See Pane v. Town of Greenburgh*, 07 Civ. 3216, 2012 U.S. Dist. LEXIS 193860, at *43-*44 (S.D.N.Y. Jan. 10, 2012).

### h. Plaintiff's State Law Claims Against Gaglione, Sansone, Cahill, and Hughes are Barred by His Failure to Comply With Conditions Precedent to Suit

To the extent plaintiff includes New York state law claims against Gaglione, Sansone, Cahill, and Hughes, such claims must be dismissed for failure to comply with conditions precedent to suit pursuant to N.Y. Gen. Mun. L. 50-e, and 50-i. Specifically, Gen. Mun. L. 50-e and 50-i require that a plaintiff who is asserting state law tort claims against a municipal entity or its employees acting in the scope of employment must: (i) file a notice of claim within ninety (90) days after the incident giving rise to the claim, N.Y. Gen. Mun. L. 50-e(1)(a); and (ii) commence the action within a year and ninety days from the date on which the cause of action accrues. N.Y. Gen. Mun. L. 50-i(1)(a-c) (McKinney 2009). Courts in this circuit have recognized that a plaintiff alleging a pendent state tort claim must comply with New York's notice of claim rules. *See Fincher v. County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action). The failure to comply with this condition precedent is grounds for dismissal of the action. *Urena v. City of New York*, 633 N.Y.S.2d 391, 391 (N.Y. App. Div. 2d Dep't 1992); *Bryant v. City of N.Y.*, 590 N.Y.S.2d 913, 914 (N.Y. App. Div. 2d Dep't 1992).

Here, plaintiff only filed a notice of claim on March 2, 2016 and that claim only addresses the incidents occurring in July 2014, January 2015, and December 2015. Notice of Claim, at p. 2, annexed as "Ex. G" to the DiSenso Decl. It makes no mention of plaintiff's claims against Sansone, Cahill, or Hughes. *Id.* Further, plaintiff failed to timely file a notice of claim within the ninety (90) day window against Gaglione and failed to file any notice of claim against Sansone, Cahill, or Hughes. Moreover, plaintiff failed to file this action against Gaglione until July 20, 2016, which was more than a year and ninety (90) days after any claim plaintiff

may have had against him accrued.[9]  Accordingly, plaintiff's state law claims against Gaglione,
Sansone, Cahill, and Hughes must be dismissed for failure to comply with the requirements of
New York General Municipal Law 50-e(1)(a).

        i.    *Plaintiff's Claims for Intentional and Negligent Infliction of*
              *Emotional Distress Should Be Dismissed*

Irrespective of the notice of claim requirements, plaintiff's claim for intentional infliction
of emotional distress ("IIED"), FAC, Ex. D, at ¶¶ 738-46, fails as a matter of law against the City
defendants because courts have consistently held that, as a matter of public policy, a municipality
and its employees engaged in official conduct cannot be sued on a theory of IIED.  *See, e.g.,*
*D'Angelo-Fenton v. Town of Carmel Police Dep't.*, 470 F. Supp. 2d 387, 399 (S.D.N.Y. Jan. 17, 2007)
(dismissing plaintiff's claim for IIED against the municipality as a matter of public policy); *Jones v.*
*City of New York*, 988 F. Supp.2d 305, 318 (E.D.N.Y. Dec. 20, 2013) (dismissing the complaint for
failure to state a claim for relief for IIED against the City of New York as a matter of public policy); *see*
*also Lauer v. City of New York*, 240 A.D.2d 543, 544 (2d Dep't 1997) ("It is well settled that public
policy bars claims sounding in intentional infliction of emotional distress against a governmental
entity.").

The same is true of plaintiff's claim for negligent infliction of emotional distress
("NIED"), FAC, Ex. D, at ¶¶ 728-37, which fails as a matter of law against the City defendants.
Similar to IIED, a plaintiff may not recover under NIED if other tort remedies are available.  *See*
*Deronette v. City of New York*, 05-CV-5275 (SJ), 2007 U.S. Dist. LEXIS 21766, at *17
(E.D.N.Y. Mar. 27, 2007) (dismissing with prejudice plaintiff's claims for IIED and NIED
claims because "[t]he conduct complained of. . . is clearly encompassed in Plaintiff's claims for

---

[9] To the extent plaintiff attempts to plead state law claims against John Doe officers for the June 6, 2014 incident, it
is respectfully suggested that the court should *sua sponte* dismiss those claims for the same reasons as articulated
above for Gaglione.

false arrest, false imprisonment, malicious prosecution, abuse of process, and libel and slander."); *see also Regeda v. City of New York*, 09 Civ. 5427 (KAM) (VVP), 2012 U.S. Dist. LEXIS 186256, at *41 (E.D.N.Y. Sept. 7, 2012) (dismissing plaintiff's IIED and NIED claims on the grounds that these claims are "theories of recovery that are to be invoked only where other tort remedies are not available.").

Moreover, a NIED claim should be dismissed when it is based on intentional conduct, such as the arrest of plaintiff. *See Regeda*, 2012 U.S. Dist. LEXIS 186256, at *43 (dismissing NIED claim on the basis that the act complained of—an arrest—was intentional); *DeVito v. Barrant*, 03 Civ. 1927 (DLI) (RLM); 2005 U.S. Dist. LEXIS 22444, at *9 (E.D.N.Y. Aug 23, 2005) (rejecting a claim of negligent infliction of emotional distress on the ground that, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.").

### i. The NYPD and CCRB Should Be Dismissed From this Action as Inappropriate Defendants

The NYPD and the CCRB, FAC, Ex. D, at ¶¶ 47, 54, 390-91, should be dismissed from this action because it is well established that both are non-suable entities. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."); *Carmody v. City of New York*, 05 Civ. 8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *7-*8 (S.D.N.Y. May 11, 2006) (dismissing claims against CCRB because it is a non-suable entity); *Wray v. City of New York*, 340 F. Supp. 2d 291, 303 (E.D.N.Y. 2004) (quoting New York City Charter § 396) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); *See also Montes v. King*, 2002 U.S. Dist. LEXIS 4412, at

*18 (S.D.N.Y. Mar. 19, 2002) (providing that the New York City Police Department is not a suable entity).

### j.   Plaintiff's Due Process Claim Merges With His False Arrest Claim

While plaintiff appears to set forth a due process claim predicated on his involuntary confinement under the M.H.L. § 9.41, FAC, Ex. D, at ¶¶ 479, 631, that claim fails because it is duplicative of his false arrest claim.

Plaintiff cannot pursue a claim for either procedural or substantive due process where, as here, the allegedly unlawful government behavior forming the basis for the claim is contemplated explicitly by other sections of the Constitution. *See, Bryant v. City of New York*, 404 F.3d 128, 135-36 (2d Cir. 2005) ("[T]he Supreme Court has repeatedly held, that 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" (internal citations and quotations omitted)).  Here, plaintiff's due process claim is entirely duplicative of his false arrest claim, and accordingly, should be dismissed because it is not independently cognizable.

[Remainder of page intentionally left blank]

## **CONCLUSION**

For the foregoing reasons, City defendants respectfully request that the Court grant City of New York, Posternak, Torres, Sansone, Cahill, Gaglione, and Hughes' motion to dismiss with prejudice, and grant such further relief the Court deems just.

Dated:      New York, New York
            February 3, 2017

                        ZACHARY W. CARTER
                        Corporation Counsel of the
                          City of New York
                        *Attorney for Defendants City of New York,*
                        *Posternak, Torres, Sansone, Cahill, Gaglione, and*
                        *Hughes*
                        100 Church Street, Room 3-180
                        New York, New York 10007
                        (212) 356-2640

                        By:    _____
                               Anthony M. DiSenso[10]
                               *Senior Counsel*
                               Special Federal Litigation Division

---

[10] Assistant Corporation Counsel Bridgette Nunez is assigned to the defense of these actions and is handling these matters under my supervision pending her admission to the New York State Bar. Ms. Nunez can be contacted at (212) 356-1643 or bnunez@law.nyc.gov.